## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) Case No. 06 CV 3162 |
| v. | ) ) |
| SICILIANO, INC., an Illinois Corporation, K&R PROPERTIES, INC., RICHARD E. LAWRENCE and MARY KIM LAWRENCE. | ) ) ) ) |
| Defendants. | ) ) |

### SAFECO INSURANCE COMPANY OF AMERICA'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The Plaintiff, Safeco Insurance Company of America ("Safeco"), by and through its attorneys, John E. Sebastian and Edward R. Gower of Hinshaw & Culbertson LLP submits this Memorandum in Support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure against Defendants Siciliano, Inc. ("Siciliano"), K&R Properties, Inc. ("K&R"), Richard Lawrence, and Mary Kim Lawrence (the Defendants hereinafter collectively referred to as "Indemnitors" or "Defendants").

### I. INTRODUCTION

This matter stems from the Indemnitors' failure to repay Safeco the costs and expenses Safeco incurred in connection with surety bonds it issued on behalf of Siciliano and the costs and expenses Safeco has incurred in enforcing the terms of the contract between Safeco and the Indemnitors—an indemnity agreement. A surety bond is an instrument by which an obligation owed by one party to another is guaranteed by a third party, the surety. Perhaps the most common example of the surety relationship can be found in the construction setting. Often, contractors, like Siciliano here, are required to obtain a performance bond and a payment bond

1

6310672v1 3670

(types of surety bonds). A performance bond guarantees to the owner of the construction project that the contractor will complete the project as specified in the contract.  A payment bond protects the contractor's subcontractors, laborers, and material suppliers against nonpayment by the contractor.

Here, Safeco issued numerous surety bonds to public owners guaranteeing Siciliano's payment obligations to is subcontractors and suppliers and its performance obligations to the public owners.   As a condition and in exchange for Safeco issuing the bonds, the Indemnitors entered into a General Agreement of Indemnity for Contractors ("Indemnity Agreement"). Safeco issued surety bonds on behalf of the Indemnitors in the total aggregate to Safeco in the amount of $31,791,496.

In 2005, Siciliano's encountered severe financial hardship from its lender taking over $2,000,000 from its operating account and one project owner failing to pay Siciliano over $3,000,000.  As a result of Siciliano's financial hardship, Siciliano was financially unable to complete the projects bonded by Safeco.  Because of Siciliano's financial hardship, Siciliano was unable to pay certain creditors, it failed to maintain the requisite insurance required by the owners on the projects bonded by Safeco, and was unable to maintain an adequate work force to complete the bonded projects.  Due to these issues, Safeco received numerous bond claims.

Despite demands, the Indemnitors failed to indemnify and hold Safeco harmless from the bond claims and to post collateral.   Because of the Indemnitors' breach of the Indemnity Agreement, in accordance with Safeco's rights under the Indemnity Agreement, Safeco arranged for others to complete some of Siciliano's bonded contracts and Safeco paid numerous project vendors of Siciliano in order to discharge Safeco's obligations under the bonds.

2

Pursuant to the Indemnity Agreement and as established by the undisputed facts, the Indemnitors are liable to Safeco for the costs incurred by Safeco to discharge surety bond claims and for Safeco's costs and expenses incurred in defending the bond claims and enforcing the terms of the Indemnity Agreement. Safeco is owed, as of July 10, 2008, $1,523,317.56, plus all accrued interest, for claims it has paid in order to discharge its obligations under the surety bonds it issued on behalf of Siciliano and for attorneys' fees, consulting costs and expenses incurred in relation thereto.

For the purposes of the instant Motion for Summary Judgment, the relevant facts bearing on the Indemnitors' liability under the Indemnity Agreement are not in dispute. Indeed, the Indemnitors have admitted in their Answer the operative facts upon which liability is based.

The undisputed facts establish the Indemnitors' joint and several liability under the Indemnity Agreement. Accordingly, Safeco is entitled to judgment in its favor against the Indemnitors in the initial amount of $1,523,317.56.

## II. UNDISPUTED MATERIAL FACTS

For the purposes of this Motion for Summary Judgment, the relevant facts bearing on the Indemnitors' liability under the Indemnity Agreement are not in dispute.

1.    Safeco initiated the instant action against the Indemnitors on or about July 28, 2006. A copy of Safeco's Complaint is attached hereto as Exhibit A.

2.    The Indemnitors filed their Answer on or about November 3, 2006. A copy of the Indemnitors' Answer is attached hereto as Exhibit B.

3.    Safeco, as a surety, issued numerous payment and performance bonds (collectively, "Bonds") on behalf of Siciliano with respect to the performance of certain improvements to real property on various construction projects in Illinois (collectively,

3                                    6310672v1 3670

"Projects").  Exhibit A, ¶ 8; Exhibit B, ¶ 8.  As set forth in Exhibit 1 to Safeco's Complaint

(Document #1), Safeco issued the following Bonds on behalf of Siciliano:

| Project Name | Bond Number | Penal sum of the Bond |
|---|---|---|
| Camp Lincoln | 6271188 | $9,639,000.00 |
| Sysco Distribution Facility | 6358041 | $844,536.60 |
| Willard Ice | 6271175 | $1,015,000.00 |
| Forsyth Water Sys. Improvement | 6271182 | $1,352,000.00 |
| Heyworth North Pump Mods. | 6271189 | $90,865.00 |
| Chandlerville Road Lift Station | 6271190 | $154,496.00 |
| Butler School | 6271191 | $2,133,000.00 |
| SMSD Spec. Asses. Swr. | 6271210 | $130,523.37 |
| Peoria Road Sanitary Swr. | 6271213 | $53,561.70 |
| 6th Street Swr. Replace | 6271217 | $239,496.50 |
| New Berlin Door Replacement | 6271218 | $57,750.00 |
| Charleston Canopy | 6358039 | $71,019.00 |
| Roof IDOT Dist., 5 | 6358042 | $114,500.00 |

4.      At Siciliano's and the other Defendants' request, Safeco issued the Bonds in favor

of the various Illinois state and municipal entities as Obligees.  Exhibit A, ¶¶ 8-10; Exhibit B,

¶¶ 8-10.

5.      The Bonds were required and issued in accordance with the Illinois Public

Construction Bond Act, 30 ILCS 55/1, 2 et. seq.  Exhibit A, ¶ 9; Exhibit B, ¶ 9.

4

6.       The Bonds, as defined by their terms and the law, secured the obligations of Siciliano to perform the required work and to pay for labor and materials required for the completion of the Projects.  Exhibit A, ¶ 9; Exhibit B, ¶ 9.

7.       In consideration and under the express condition of the issuance of the Bonds, Safeco required the Indemnitors to enter into and to execute the Indemnity Agreement.  Exhibit A, ¶ 11; Exhibit B, ¶ 11.  A copy of the Indemnity Agreement is attached hereto as Exhibit C, the terms of which are hereby incorporated as though stated fully herein.

8.       Pursuant to the Indemnity Agreement, the Indemnitors agreed to pay to Safeco all expenses and losses arising out of Safeco's issuance of the Bonds, including loss payments, attorneys fees, court costs, expenses, and consulting fees.  In pertinent part, the Indemnity Agreement provides as follows:

> INDEMNITY TO SURETY:  Undersigned agrees to pay to Surety upon demand:
>
> 1.       All loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Undersigned to make arrangements for Surety's legal representation), consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under his agreement by any of the Undersigned.
>
>          In addition the Undersigned agrees to pay to Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement;
>
> 2.       An amount sufficient to discharge any claim made against Surety on any bond.  This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any bond;
>
> 3.       Any original, additional or renewal premium due for any bond.

Exhibit C.

5

9.      The Indemnity Agreement defines and sets forth the circumstances under which Siciliano, as the Contractor, is deemed to be in "Default" under the Indemnity Agreement. Specifically, the Indemnity Agreement provides:

> Contractor shall be deemed to be in default under this agreement if the event it:
>
> (1) Is declared to be in default by the Obligee of any Bond;
>
> (2) Actually breaches or abandons any Contract;
>
> (3) Fails to pay, to the extent due in whole or in part, claims, bills or other indebtedness incurred in connection with the performance of any Contract;
>
> (4) Becomes the subject of any agreement or proceeding of liquidation or receivership, or actually becomes insolvent;
>
> (5) If an individual . . .
>
> (6) Breaches, fails to perform, or comply with, any provision of this agreement.

Exhibit C.

10.     In the event of a default by Siciliano, the Indemnity Agreement provides Safeco with certain rights, including, among others, the right to take possession of Siciliano's work or to arrange for completion of the work by other contractors, the right to loan or guarantee a loan to Siciliano, and the right to take such other action as Safeco deemed necessary to fulfill the bonded obligations. Exhibit C.

11.     The Indemnity Agreement also provides that Safeco had the authority to settle or compromise any claim, liability, demand, suit or judgment on the Bonds and that such settlement or compromise would be binding on the Indemnitors. Moreover, the Indemnity Agreement provides that any vouchers or other evidence of payments would constitute *prima facie* evidence of the fact and amount of the Indemnitors' liability to Safeco under the Indemnity Agreement. In pertinent part, the Indemnity Agreement provides as follows:

6

With respect to claims against Surety:

1.    Surety shall have the exclusive right for itself and the undersigned to determine in good faith whether any claim or suit upon any Bond shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed.

2.    Surety may incur such expenses, including reasonable attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims.

3.    Surety's determination in good faith of the foregoing shall be final and conclusive upon the Undersigned.

4.    An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned.

Exhibit C.

12.    Further, the Indemnity Agreement requires the Indemnitors to post collateral upon Safeco's demand to "cover any claim . . . ." Exhibit A, ¶ 12; Exhibit B, ¶ 12; Exhibit C. Specifically, the Indemnity Agreement requires as follows:

2. An amount sufficient to discharge any claim made against Surety on any Bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any bond.

Exhibit C.

13.    The Indemnity Agreement requires the Indemnitors to hold in trust all contract funds Siciliano receives for the use and benefit of Siciliano's vendors which work on the Projects. Exhibit A, ¶ 13; Exhibit B, ¶ 13; Exhibit C. To this end, the Indemnity Agreement provides as follows:

4. Agree that all monies earned by Contractor under any Contract are trust funds, whether in the possession of Contractor or otherwise for the benefit of, and for payment of Contractor's obligations for, labor, material, and supplies furnished to Contractor in performance of such Contract for which Surety would be liable under any Bond on such Contract;

7

6310672v1 3670

Exhibit C.

14.    The contents and terms of the Indemnity Agreement are not in dispute. *See* Exhibit B, ¶¶ 11-13.

15.    The Indemnitors do not dispute that they executed the Indemnity Agreement. *See* Exhibit B, ¶ 11.

16.    Attached hereto as Exhibit D is the Affidavit of Nicholas Hyslop, Assistant Vice-President of Safeco. Mr. Hyslop has personal knowledge concerning Safeco's extensive dealings with Siciliano and the Indemnitors. Exhibit D, ¶ 3. Mr. Hyslop's personal knowledge also includes issues concerning Siciliano's performance on each of the bonded Projects. Exhibit D, ¶¶ 3-4.

17.    Siciliano's bank, Carrollton Bank, applied from Siciliano's operating checking account approximately $2,000,000.00. Exhibit D, ¶ 6.

18.    The State of Illinois Capitol Development Board ("CDB"), declared Siciliano in default of its contract for the Lincoln Museum and Lincoln Library and, as a result of the CDB's declaration of default, the CDB held back payments from Siciliano totaling approximately $3,000,000.00. Exhibit D, ¶ 7.

19.    As a result of Carrollton Bank and the CDB's actions, Siciliano suffered a serve financial hardship and did not have money to pay its insurance premiums, to pay its project vendors, and to maintain the required work force to complete the bonded Projects. Exhibit D, ¶ 8.

20.    Siciliano was in default of the Indemnity Agreement as follows:

8

(a)     As a result of Siciliano's failure to pay all of its subcontractors and creditors and Siciliano's failure to perform on the various Projects, Safeco has been sued and/or received claims against the payment and performance bonds issued for the Projects. Exhibit A, ¶ 14; Exhibit D, ¶¶ 10-17. The Indemnitors do not dispute that Safeco has received claims against the bonds issued for the Projects. *See* Exhibit B, ¶ 14;

(b)     Siciliano defaulted on the following bonded Projects: Sysco, Camp Lincoln, and the Butler School. Exhibit D, ¶ 9. By various correspondence, Siciliano voluntarily waived the owner's right to declare default and Siciliano voluntarily abandoned the contracts and terminated its right to complete the particular contracts. Exhibit D, ¶ 9; and

(c)     Despite demands, the Indemnitors failed to indemnify and hold Safeco harmless from the bond claims. Exhibit A, ¶ 15; Exhibit B, ¶ 15; Exhibit D, ¶ 17.

21.     In order to assist Safeco with bond claims and in enforcing the terms of the Indemnity Agreement, Safeco hired a construction consulting company, Construction Consulting & Disbursement Services, and two law firms, Hinshaw & Culbertson LLP and Leo & Weber, PC. Exhibit D, ¶ 15.

22.     After Siciliano was declared in default under the Indemnity Agreement and on the various bonded Projects, Safeco exercised its rights under the Indemnity Agreement by arranging for other contractors to complete the Sysco, Bulter School, and Camp Lincoln projects. Exhibit D, ¶ 11.

23.     In order to discharge its obligations under the payment bonds, Safeco was required to pay numerous unpaid subcontractors and suppliers of Siciliano. Exhibit D, ¶¶ 10, 12-13, 15-16.

6310672v1 3670

24.     As of July 10, 2008, Safeco has paid the sum of $1,523,317.56, not including accrued interest, to discharge its obligations under the Bond and for covered expenses. <u>Exhibit D, ¶¶ 14, 16</u>.

25.     Assuming no additional claims are asserted against the bonds and Safeco collects certain bonded contract balances, Safeco anticipates a net loss of $1,500,000.00, not including interest at the maximum rate as provided by the Indemnity Agreement, after all due credits, with said amount not including future attorneys' fees and other expenses. <u>Exhibit D, ¶ 16</u>.

26.     Despite demands, the Indemnitors have not reimbursed Safeco nor have the Indemnitors posted the requisite collateral. <u>Exhibit A, ¶ 15</u>; <u>Exhibit B, ¶ 15</u>; <u>Exhibit D, ¶ 17</u>.

### III. LEGAL ARGUMENT.

Safeco is entitled to summary judgment as a matter of law. The undisputed facts show that (a) the Indemnitors agreed, in writing, to indemnify and hold Safeco harmless from any losses it might incur in connection with the Bonds and to post sufficient collateral, (b) Siciliano and the other Indemnitors were and are in default of the Indemnity Agreement, and (c) Safeco incurred costs and expenses that the Indemnitors agreed to repay Safeco pursuant to the terms of the Indemnity Agreement.

### A. SUMMARY JUDGMENT STANDARD OF REVIEW.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). By its very terms, this standard

provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Id.* Disputes over material facts are genuine only if evidence is such that a reasonable jury could return a verdict for the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to its case and on which the party will bear the burden of proof at trial. *Anderson*, 477 U.S. at 252.

Summary judgment is an appropriate method of resolving disputes concerning indemnification agreements. *See, e.g., United States Fidelity & Guaranty Co v. Cler Const. Services, Inc.*, 2003 WL 22508169 (N.D. Ill. 2003); *Amwest Surety Ins. Co. v. Szabo*, 2001 WL 1230643, at *4-5 (N.D. Ill. Oct. 11, 2001).[1] Under Illinois law, it is axiomatic that indemnity agreements are to be construed like any other contract, giving meaning and effect to the intentions of the parties thereto. *See, e.g., Gay v. S. N. Nielson Co.*, 152 N.E.2d 468 (Ill. App. Ct. 1958). This, of course, presents a question of law for resolution by the Court. *Charter Bank v. Eckert*, 585 N.E.2d 1304, 1309-10 (Ill. App. Ct. 1992); *see also Moriarty v. Hills Funeral Home, Ltd.*, 2000 WL 1141437, at *3 (N.D. Ill. 2000).

Given the undisputed facts concerning the existence and contents of the Indemnity Agreement in the instant case, Safeco respectfully urges this Court to strictly construe and

---

[1] *See also United States Fidelity & Guaranty Co. v. Feibus*, 15 F.Supp.2d 579, 581(M.D. Pa. 1998) (citing *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201 (5th Cir. 1996); *Commercial Ins. Co. of Newark v. Pacific-Peru Constr. Corp.*, 558 F.2d 948 (9th Cir. 1977); *Continental Cas. Co. v. American Sec. Corp.*, 443 F.2d 649 (D.C.Cir. 1970))

6310672v1 3670

interpret the Indemnity Agreement and enter summary judgment in Safeco's favor on the basis of the Indemnitors' indemnity liability.

**B. THE INDEMNITORS ARE LIABLE FOR ALL OF SAFECO'S LOSSES, COSTS AND EXPENSES**

The Indemnity Agreement entered into by the parties in this case is valid and enforceable. There is no dispute that the Indemnitors entered into and voluntarily agreed to the terms of the Indemnity Agreement. *See* Exhibit A, ¶ 11; Exhibit B, ¶ 11. The Indemnitors agreed to indemnify Safeco, as surety, and pay Safeco upon demand "all losses, costs and expenses of whatsoever kind and nature including court costs, reasonable attorney fees…consultant fees, investigative costs and any other losses, costs or expense incurred by [Safeco] by reason of having executed any Bond or incurred by it on account of any Default under this agreement by any of the [Indemnitors]." *Id.*; Exhibit C. Likewise, there is no dispute that the Indemnity Agreement further provides that the Indemnitors agreed to, upon demand, deliver to Safeco collateral security acceptable to Safeco to cover any contingent losses and any subsequent increase thereto. *Id.*

Indemnity Agreements are contracts and are to be construed like any other contract. *Sutton Place Development Co. v. Bank of Commerce & Industry*, 149 Ill.App.3d 513, 501 N.E.2d 143, 145 (Ill. App. Ct. 1986). In construing these agreements, the primary focus is to give effect to the intention of the parties. *Gardner v. Padro*, 165 Ill.App.3d 449, 453, 571 N.E.2d 1131, 1133 (Ill. App. Ct. 1987). Moreover, a surety is entitled to stand on the language of the contract. *Fidelity and Deposit Co. v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, (4th Cir. 1983). It is well settled under Illinois law, as well as many other jurisdictions, that indemnity agreements entered into between a principal and surety are valid and enforceable. *See Reliance Ins. Co. v.*

12

*Zeigler,* 938 F.2d 781 (7th Cir. 1991).[2]

The Seventh Circuit has upheld both provisions which require payment of actual damages incurred by the Surety in completing projects as well as provisions requiring posting of collateral for further expenses incurred under the bonds. *Reliance Ins. Co. v. Zeigler,* 938 F.2d 781, 783 (7th Cir. 1991). Courts have also upheld provisions requiring attorneys' fees to be paid by the indemnitor. *John J. Colnan Co. v. Talsma Builders, Inc.,* 77 Ill.App.3d 221, 395 N.E.2d 1076 (Ill. App. Ct. 1979). Moreover, an indemnitee, such as Safeco, has the right to settle claims against it and then sue the indemnitor for reimbursement. *Boston v. Old Orchard Business Dist., Inc.,* 26 Ill.App.2d 324, 168 N.E.2d 52 (Ill. App. Ct. 1960).

Here, Safeco has incurred, as of July 10, 2008, a net un-reimbursed amount of $1,523,317.56 stemming from the investigation of and paying of Siciliano Bond Claims and to enforce the terms of the Indemnity Agreement. Exhibit D, ¶¶ 14, 16. Pursuant to the plain, unambiguous language of the Indemnity Agreement and the law, Safeco is entitled, as a matter of law, to a judgment in its favor for the amount of $1,523,317.56, plus all accrued interest.

### C. THE INDEMNITORS ARE IN DEFAULT OF THE INDEMNITY AGREEMENT.

According to the plain language of the Indemnity Agreement, the undisputed facts show that the Indemnitors are in default of the Indemnity Agreement. The Indemnity Agreement provides that the Indemnitors are in default of the Indemnity Agreement when the following occurs:

> Contractor shall be deemed to be in default under this agreement if the event it:

---

[2] *See also North American Specialty Ins. Co. v. Alexandria Trucking Underground Construction Inc.,* 2003 WL 260709, at *1 (N.D. Ill. Jan. 29, 2003); *Central National Ins. Co. of Omaha v. Whitehall Construction, Inc.,* No. 86 C 7167, 1988 WL 23789, at *9 (N.D. Ill. March 4, 1988); *Hanover Ins. Co. v. Smith,* 137 Ill.2d 304, 561 N.E.2d 14 (Ill. 1990); *Commercial Ins. Co. of Newark, N.J. v. Pacific-Peru Const. Co.,* 558 F.2d 948, 953 (9th Cir. 1977).

6310672v1 3670

(1) Is declared to be in default by the Obligee of any Bond;

(2) Actually breaches or abandons any Contract;

(3) Fails to pay, to the extent due in whole or in part, claims, bills or other indebtedness incurred in connection with the performance of any Contract;

(4) Becomes the subject of any agreement or proceeding of liquidation or receivership, or actually becomes insolvent;

(5) If an individual . . .

(6) Breaches, fails to perform, or comply with, any provision of this agreement.

Exhibit C.

Here, the Indemnitors were and are in default of the Indemnity Agreement for, among other things, (1) its failure to pay the claims, bills and indebtedness incurred in connection with its performance on the Projects; (2) being declared in default by the Obligee(s) of the Bonds; (3) its breaches of the contracts on various Projects; and (4) its failure to perform or comply with Safeco's prior indemnity demand. Exhibit D, ¶¶ 8-11, 17; *see* Exhibit C. In light of the foregoing instances of default on the part of Siciliano, Safeco has demanded that the Indemnitors indemnify it for its losses and expenses expended in discharging Safeco's obligations under the Bonds and in enforcing the terms of the Indemnity Agreement. Exhibit A, ¶ 15; Exhibit B, ¶ 15; Exhibit D, ¶ 17. To date, the Indemnitors have failed to indemnify Safeco. *Id.* Based upon the plain language of the Indemnity Agreement, and the admissions set forth in the Indemnitors' Answer, the Indemnitors, as a matter of law, are in default.

## D. SAFECO EXERCISED ITS RIGHTS IN ACCORDANCE WITH THE INDEMNITY AGREEMENT.

Upon notice by both the bond Obligees and Siciliano of Siciliano's many defaults on its various Projects and the defaults of all Indemnitors under the Indemnity Agreement, Safeco exercised the rights the Indemnitors granted to Safeco under the Indemnity Agreement. In the

14

event of a default, the Indemnity Agreement provides Safeco with certain rights, including, among others, the right to take possession of Siciliano's work or to arrange for completion of the work by other contractors, the right to loan or guarantee a loan to Siciliano, and the right to take such other action as Safeco deemed necessary to fulfill the bonded obligations. Exhibit C.

Here, upon Siciliano's default under the Indemnity Agreement Safeco took possession of Siciliano's work and arranged for completion of that work by others on the Sysco, Butler and Camp Lincoln contracts bonded by Safeco. Exhibit D, ¶ 11. Additionally, in order to discharge its obligations under the bonds, Safeco resolved and paid unpaid subcontractors and suppliers of Siciliano on the bonded projects. Exhibit D, ¶ 13. As of July 10, 2008, Safeco has incurred $1,523,317.56 to discharge Safeco's obligations under the Bonds. Exhibit D, ¶ 16. Safeco's actions were clearly in accord with its rights under the Indemnity Agreement.

### E. THE AFFIDAVIT SUBMITTED BY SAFECO IS PRIMA FACIE EVIDENCE OF THE INDEMNITORS' LIABILITY TO SAFECO.

The Indemnitors agreed that they would be liable for any payments sworn to by Safeco. Exhibit A, ¶ 11; Exhibit B, ¶ 11; Exhibit C. Appended to the instant Motion as Exhibit D is a sworn statement by Nicholas Hyslop, the Assistant Vice-President of Safeco, attesting to the expenses incurred by Safeco in connection with the bonds Safeco issued on behalf of Safeco. Mr. Hyslop has testified that as of July 10, 2008, Safeco's net loss is $1,523,317.56 in the costs and expenses that Safeco has incurred in connection with investigating and resolving Bond claims and in enforcing the terms of the Indemnity Agreement. Exhibit D, ¶ 16. Pursuant to the Indemnity Agreement, Mr. Hyslop's affidavit is *prima facie* evidence of the fact and amount of the Indemnitors' liability to Safeco. Exhibit A, ¶ 11; Exhibit B, ¶ 11; Exhibit C.

6310672v1 3670

Illinois courts and other jurisdictions have held that a *prima facie* evidence provision, which is the same provision contained in the Indemnity Agreement, satisfies the burden of a surety proving its damages and costs. In *U.S. Fidelity and Guar. Co. v. Klein*, 190 Ill.App.3d 250, 258, 558 N.E.2d 1047, 1052 (Ill. App. Ct. 1990), the Illinois Appellate Court affirmed the trial Court's determination of the surety's damages, stating that the evidence produced by the surety was *prima facie* and satisfied the surety's burden of proof for damages. The appellate court affirmed the trial court's finding that, despite the indemnitors' unsupported allegations that the surety acted unreasonably and in bad faith, the surety's vouchers were proof of the fact and amount of the indemnitors' liability to the surety.[3]

In the instant case, the Indemnity Agreement provides that, with respect to claims made against Safeco, the Indemnitors agreed that: "An itemized statement of loss and expense incurred by [Safeco],sworn to by an officer of [Safeco], shall be prima facie evidence of the fact and extent of the liability of [the Indemnitors] to [Safeco] in any claim or suit by [Safeco] against [the Indemnitors]." Exhibit C. As testified to by Mr. Hyslop, Safeco has incurred $1,523,317.56 in un-reimbursed losses and expenses that Safeco expended in investigating and resolving Bond claims and in enforcing the terms of the Indemnity Agreement. Exhibit D, ¶ 16. Pursuant to the

---

[3]  *See also, Fidelity & Deposit Co. v. Refine Constr. Co.*, No. Civ. A 83-6894, 1984 WL 536 (June 27, 1984), *modified*, 1984 WL 19467 (S.D. N.Y Aug. 24, 1984); *American Motorists Ins. Co. v. United Furnace Co.*, 699 F.Supp. 46, 49 (S.D.N.Y. 1988), *rev'd on other grounds*, 876 F.2d 293 (2d Cir. 1989); *Int'l Fidelity Ins. Co. v. United Constr. Inc.*, No. Civ. A 912-361, 1992 WL 111368 (E.D. Pa. May 15, 1992); *Curtis T. Bedwell & Sons Inc. v. Int'l Fidelity Ins. Co.*, No. Civ. A 83-5733, 1989 WL 55388 (E.D. Pa. May 23, 1989); *Fidelity & Deposit Co. v. Wu*, 552 A.2d 1196 (Vt. 1988); *Fidelity & Deposit Co. v. Fowler*, No. Civ. A 86-2142, 1986 WL 13147 (E.D. La. Nov. 10, 1986); *Amwest Surety Ins. Co. v. Szabo*, 2003 WL 21789033 (N.D. Ill. July 23, 2003); *Project Update 1995: Illustrative Provisions of a General Indemnity Agreement Taken in Connection with Contract Surety Bonds,* International Association of Defense Counsel, 62 Def.Couns.J. 259, 270-71 (1995).

Indemnity Agreement, as a matter of law, Mr. Hyslop's affidavit is *prima facie* evidence of the amount of the Indemnitors' liability to Safeco. Exhibit C. As a matter of law, based upon the terms of the Indemnity Agreement and Mr. Hyslop's affidavit, the Indemnitors are liable to Safeco in the amount of $1,523,317.56, plus all accrued interest.

## F. THE INDEMNITORS' DEFENSES ARE INSUFFICIENT TO OVERCOME SAFECO'S RIGHT TO INDEMNITY.

The Indemnitors assert several Affirmative Defenses in response to Safeco's Complaint in the instant litigation. It is primarily noteworthy that the Indemnitors, through their Answer, admit the necessary elements of Safeco's prima facie case for indemnity in accordance with the Indemnity Agreement. Without denying Safeco's allegations, the Indemnitors seek to avoid a judgment by asserting Affirmative Defenses that raise a number of irrelevant, unsupported, and legally insufficient grounds. As a matter of law, the Indemnitors Affirmative Defenses should be dismissed. Safeco will address each of these Affirmative Defenses in turn.

### 1. The Indemnitors' First Affirmative Defense.

This defense asserts that Safeco demanded indemnification and the posting of collateral while "aware that [the Indemnitors] ha[d] no ability to make payment of the indemnity nor post the collateral demanded by [Safeco] in that all of the assets of the [Indemnitors] are pledged as collateral" to unrelated third parties with allegedly superior security interests. Essentially, the Indemnitors are asserting that indemnification was an economic impossibility. This Defense is insufficient on its face. First, economic impossibility is not a defense to indemnity actions such as the instant action initiated by Safeco. Illinois law lacks any support for the Indemnitors' argument that their financial inability to honor their obligation to indemnify Safeco excuses their contractual responsibility to do so. Second, Safeco's right to indemnity was agreed to by the

17

6310672v1 3670

Indemnitors, and this right arose independent of the interests of any third party. Third, the relative priority of the collateral to be posted is an irrelevant consideration, as Safeco's right to collateral under the Indemnity Agreement did not require any particular priority position. This argument is clearly a red herring. Ultimately, the financial inability of the Indemnitors to perform in accordance with the Indemnity Agreement is irrelevant as it relates to the Indemnitors' *duty* to perform in accordance with the Agreement. For these reasons, the Indemnitors First Affirmative Defense is legally baseless and should be dismissed.

### 2. The Indemnitors' Second and Fourth Affirmative Defenses.

The Second Affirmative Defense asserts that, to the extent Safeco incurred "unreasonable expenses," Safeco failed to mitigate its damages. The Indemnitors offer no factual basis for asserting this defense other than this conclusory allegation of failure to mitigate. The only facts in the record concerning Safeco's mitigation of its damages are presented in Mr. Hyslop's Affidavit. The Affidavit demonstrates that Safeco took action to mitigate its damages by, among other things, investigating and resolving claims and arranging for completion of the Projects on which Siciliano defaulted. Without even considering the affidavit, the Indemnity Agreement provided Safeco the discretion to take the very action that Safeco took here thereby defeating the Indemnitors mitigation defense.

Parties to a contract have a duty to mitigate upon the other party's breach, however, the actions taken by the non-breaching party are subject to the terms of an agreement. In the surety claim and indemnity context, mitigation of damages defenses have been stricken numerous times in light of the rights granted to the surety under the indemnity action. *See Am. States Ins. Co. v. Glover*, 960 F.2d 149 (6th Cir. 1992) (failure to mitigate is not a defense to indemnity action);

*U.S. Fid. & Guar. Co. v. Napier Elec. & Constr. Co.*, 571 S.W. 2d 644 (Ky. Ct. App. 1978) (Indemnity Agreement terms determine nature of indemnitors' liability); *Four Seasons Envtl. v. Westfield Co.*, 638 N.E. 2d 91 (Ohio 1994) (surety had no duty to mitigate damages before seeking recovery from indemnitors); *Moya v Fid. & Cas. Co. of N.Y.*, 406 P.2d 173 (N.M. 1965) (surety was entitled to recover expenses notwithstanding that amount paid was excessive); *Cont'l. Cas. Co. v. Guterman*, 708 F.Supp. 953 (N.D. Ill. 1989) (surety's alleged failure to mitigate damages by selling principal's collateral was not an affirmative defense).

Here, upon learning of Siciliano's many defaults and the default of the Indemnitors, Safeco acted in accordance with its rights under the Indemnity Agreement to investigate and settle claims and arrange for the performance of Siciliano's unperformed work. <u>Exhibit D, ¶¶ 11-15</u>. The record lacks any facts establishing that Safeco failed to act in accordance with the Indemnity Agreement. Therefore, the Indemnitors' Second Affirmative Defense lacks merit.

Likewise, the Fourth Affirmative Defense asserts that Safeco failed to mitigate its damages by refusing to allow Siciliano to complete the bonded Projects. This defense must also fail. The Indemnity Agreement itself provides as follows:

> SURETY'S REMEDIES IN EVENT OF DEFAULT: In event of default by Contractor, Surety shall have the right, at its sole discretion, to:
>
> 1. Take possession of the work under any and all Contracts and to arrange for its completion by others or by the Obligee of any Bond
> . . . .

<u>Exhibit C, page 1</u>. In light of this provision, it is clear that Safeco was entitled, "at its sole discretion" upon Siciliano's default, to take possession of any and all projects and arrange for the completion of those projects. This defense lacks merit and should be stricken and dismissed.

### 3. The Indemnitors' Third, Fifth and Sixth Affirmative Defenses.

19

6310672v1 3670

The Fifth Affirmative Defense asserts that Safeco breached the duty of good faith and fair dealing by "refus[ing] to defend Defendant Siciliano's right to continue work on the State of Illinois Capital Development Board ("CDB") Camp Lincoln project after CDB wrongfully terminated Defendant Siciliano's contract for that project." Similarly, the Indemnitors' Sixth Affirmative Defense asserts that Safeco breached the implied duty of good faith and fair dealing by communicating with Project Owners about Siciliano's willingness to be defaulted. Neither of these defenses will assist the Indemnitors under Illinois law.

Notably, Safeco did not have any contractual or legal obligation whatsoever to "defend" Siciliano's right to continue to work on the projects. Rather, upon Siciliano's default under the Indemnity Agreement, Safeco exercised the very rights that the Indemnitors granted to Safeco by the Indemnitors under the Indemnity Agreement. Safeco took this authorized action in order to minimize and mitigate Safeco's future liability. The Indemnitors' defenses lacks any contractual or legal support and, as such, these defenses should be stricken and dismissed.

The Indemnitors' allegation that Safeco did not act in "good faith" is factually and legally baseless when considering the rights granted to Safeco and the undisputed facts. The implied duty of good faith and fair dealing is implied in every contract in Illinois, but it is primarily a tool for interpretation and construction of ambiguous contractual provisions. *Teachers Ins. & Annuity Ass'n of Am. v. LaSalle Nat'l Bank*, 691 N.E.2d 881, 890 (Ill. App. Ct. 1998); *Northern Trust Co.*, 657 N.E.2d 1104. As the *Northern Trust Company* Court explained, the implied covenant will not permit a court to rewrite a contract lacking in ambiguity. *Northern Trust Co.*, 657 N.E.2d 1104 ("Parties to a contract, however, are entitled to enforce the terms of the contract to the letter and an implied covenant of good faith cannot overrule or modify the express terms

20

of the contract."). While resort to the implied covenant may be appropriate where a party is vested with discretion to act in accordance with the contract, the party asserting the applicability of the implied covenant must demonstrate (1) that the contract is, to some extent, ambiguous such that the court cannot determine the proper bounds of discretion afforded to the party acting in accordance therewith, and (2) that the party vested with discretion under the contract acted unreasonably, arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties. *See Continental Mobile Telephone Co., Inc. v. Chicago SMSA Limited Partnership*, 587 N.E.2d 1169, 1174 (Ill. App. Ct. 1992).

Safeco submits that the Indemnity Agreement is not ambiguous and Safeco is, therefore, entitled to the strict interpretation and application of the provisions in the Indemnity Agreement. Safeco acted in accordance with the Indemnity Agreement in each material respect in resolving Siciliano's and all the Indemnitors' many defaults on the Projects and Indemnity Agreement. Safeco exercised only the discretion expressly afforded to it under the Indemnity Agreement and accordingly this Court should strike and dismiss the Indemnitors "good faith" defense.

In the alternative, even if the Indemnity Agreement was ambiguous—which Safeco submits that it is not—the Indemnitors cannot establish the elements necessary to establish that Safeco acted in bad faith. Bad faith is actionable only when the following can be established: that a party acted either (a) unreasonable, arbitrarily or capriciously, or (b) in a manner inconsistent with the reasonable expectations of the parties. *Continental Mobile Telephone Co., Inc., v Chicago SMSA Limited Partnership, et al.*, 225 Ill.App.3d 317, 587 N.E.2d 1169, 167 Ill.Dec. 554 (1992); *Abbott, et al. v. Amoco Oil Co.*, 249 Ill.App.3d 774, 619 N.E.2d 789, 189 Ill.Dec. 88 (1993); *Amwest Surety Ins. Co. v. Szabo*, 2003 WL 21789033 (N.D. Ill. July 23, 2003). The Seventh Circuit Court has discussed the main thrust of the standard:

21

6310672v1 3670

> 'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties. When the contract is silent, principles of good faith...fill the gap. They do not block use of terms that actually appear in the contract.

*Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whitting*, 908 F.3d 1351 (7th Cir. 1990).

Black's Law Dictionary (6th ed. 1990) defines Arbitrary as acting "in an unreasonable manner, as fixed or done capriciously or at pleasure. Without adequate determining principle; not founded in the nature of things; non rational; not done or acting according to reason or judgment; depending on the will alone; absolutely in power; capriciously; tyrannical; despotic [cite omitted]. Without fair, solid, and substantial cause; that is, without cause based upon the law." In the surety context, courts have held that the lack of diligence or negligence is not the equivalent of bad faith, so a showing of bad motive by the surety is necessary to support a defense that a surety acted in bad faith. *See e.g.. Safeco Ins. Co. Of America v. Criterion Corp.*, 732 F.Supp.834 (E.D. Tenn. 1989); *Engbrock v. Federal Ins. Co.*, 370 F.2d 784 (5th Cir. 1967); *Lemoine v. American Fidelity Fire Ins.Co.*, 491 So.2d 812 (La. Ct. App. 1986).

Here, the Indemnitors have not alleged and cannot provide any facts that evidence that Safeco acted with an improper motive or acted arbitrarily or capriciously. Indeed, there is no evidence that Safeco acted "in violation of its [Safeco's] own billing guidelines." Because the Indemnity Agreement is unambiguous and the Indemnitors cannot establish bad faith by Safeco, the Indemnitors' defense that Safeco acted in bad faith should be stricken and dismissed.

### 4.  The Indemnitors' Seventh Affirmative Defense.

The Seventh Affirmative Defense contends that Safeco wrongfully induced Siciliano to execute letters of default in connection with the execution of a Joint Control Trust Account

22

Agreement. This Defense is simply irrelevant to the Safeco's action against the Defendants for breach of the Indemnity Agreement. First, this Defense only asserts that Siciliano, and not all Indemnitors, were injured by the alleged act. Indeed, the remaining Defendants were not parties to the Joint Control Trust Account Agreement. Second, and more important, the Indemnitors fail to demonstrate how any action with respect to the unrelated Joint Trust Control Agreement could negate the preexisting valid and enforceable Indemnity Agreement at issue in the instant action.

Separate and apart from the aforementioned fatal flaws in this defense, it must be noted that Siciliano was represented by counsel when it entered into the Joint Control Trust Account Agreement, and it cannot therefore allege that its assent to that Agreement was anything other than fully informed on the advice of counsel.

### 5. The Indemnitors' Eighth Affirmative Defense.

The Eighth Affirmative Defense is no longer relevant to the instant action. Safeco is no longer seeking collateral for any of the bonded Projects. Safeco is simply seeking enforcement of the indemnification provisions in the Indemnity Agreement. With respect to the IDOT Clinton Maintenance Facility, Safeco is entitled to its attorneys' and other fees and costs that it incurred while acting in accordance with the Indemnity Agreement.

### 6. The Indemnitors' Ninth Affirmative Defense.

The Ninth Affirmative Defense asserts that Safeco "had sufficient contract funds available to it on the SYSCO project to fully indemnify and collateralize [Safeco] against its claimed losses on said project for which it seeks indemnification and collateralization from Defendants." This Defense lacks any factual basis. The Indemnitors offer no proof that Safeco was indemnified for all losses on the SYSCO project. The Indemnitors even admit in their

23                                                    (6310672v1 3670)

Answer that Safeco was not indemnified in accordance with the Indemnity Agreement.  Exhibits A, ¶ 15; Exhibit B, ¶ 15.[4]

### 7.  The Indemnitors' Tenth Affirmative Defense.

The Indemnitors' Tenth Affirmative Defense is a grab bag of illusory conclusions without any basis in law or fact.  As identified throughout the instant Motion, Safeco acted in good faith and in strict compliance with its contractual rights as expressly afforded to it in the Indemnity Agreement by the Indemnitors.  Safeco is entitled to the benefit of its bargain; the Indemnity Agreement should be strictly construed and applied.

### 8.  The Indemnitors' Eleventh Affirmative Defense.

The Eleventh Affirmative Defense asserts that Safeco "has been indemnified and collateralized for a substantial portion of its claimed losses" by virtue of the fact that Safeco has liened certain projects and contract funds.  This argument is irrelevant to the Indemnitors' duty to indemnify Safeco under the Indemnity Agreement.  Had the Indemnitors acted in accordance with the Agreement, Safeco would not have to incur the expense to pursue these funds against third parties.  The mere existence of potential claims against third parties does not excuse the Indemnitors' obligations under the Indemnity Agreement.  Such a result as the Indemnitors urge would clearly be inequitable, inefficient, and unjust in light of the bargained-for contract between the parties.  If anything, this Defense admits that Safeco has been damaged as a result of the Indemnitors' own failure to indemnify Safeco in a manner consistent with the Indemnity Agreement.  Accordingly, this Defense is without merit.

---

[4] In Paragraph 15 of the Indemnitors' Answer, the Indemnitors admit all allegations, except to deny that Safeco "is entitled to the full indemnification and collateral posting" that Safeco demanded.

24

## IV. CONCLUSION

WHEREFORE, Plaintiff, Safeco Insurance Company of America, prays that this Honorable Court enter an Order granting its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to all Counts of Plaintiff's Complaint with prejudice.

Respectfully Submitted,

By:     /s/John E. Sebastian
One of the Attorneys for Safeco Insurance Company

Edward R. Gower, ARDC # 3127966
Hinshaw & Culbertson LLP
400 South Ninth Street, Suite 200
Springfield, Illinois 62701-1908
(217) 528-7375

John E. Sebastian, ARDC #: 6230240
Albert L. Chollet, III, ARDC #: 6292557
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601
(312)704-3000

6310672v1 3670

E-FILED
Monday, 11 August, 2008
Monday, 31 July, 2006 11:22:08 AM
Clerk, U.S. District Court, ILCD

**FILED**

JUL 2 8 2006

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## CENTRAL DIVISION

| | |
|---|---|
| SAFECO INSURANCE COMPANY, a Washington Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. C6-3162 ) |
| SICILIANO, INC. an Illinois corporation, K&R PROPERTIES,. INC., RICHARD E. LAWRENCE, and MARY KIM LAWRENCE, | ) ) ) ) |
| Defendants. | ) ) |

### COMPLAINT

Safeco Insurance Company ("Safeco"), by and through its attorneys, Edward R. Gower,

John E. Sebastian and Clay M. Ullrick of Hinshaw & Culbertson LLP, sets forth the following

complaint against defendants, Siciliano, Inc. ("Siciliano"), K&R Properties, Inc., Richard E.

Lawrence, and Mary Kim Lawrence (hereinafter collectively referred to as "Indemnitors" or

"Defendants"):

### PARTIES

1.     Safeco is a Washington corporation with its principal place of business in Seattle,

Washington.

2.     Defendant Siciliano is an Illinois Corporation with its principal place of business

in the City of Springfield, County of Sangamon, Illinois and can be served at its registered agent

c/o 3650 Winchester Road, Springfield, Illinois 62707.

1

60149643v1 858606



3.      Defendant K&R Properties is an Illinois corporation with its principal place of business in Springfield, Sangamon County, Illinois and can be served at 3650 Winchester Road, Springfield, Illinois 62707.

4.      Defendant Richard E. Lawrence is a resident of Springfield, Sangamon County, Illinois and can be served at 1404 Coralberry Court, Springfield, Illinois 62707.

5.      Defendant Mary Kim Lawrence is a resident of Springfield, , Sangamon County, Illinois and can be served at 1404 Coralberry Court, Springfield, Illinois 62707.

## JURISDICTION AND VENUE

6.      This court has jurisdiction over this cause under 28 U.S.C. § 1332(a)(1) in that the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00, and is between citizens of different states.

7.      Venue is proper in this Court under 28 U.S.C. §1391(a) because all Defendants reside in this District.

## FACTS COMMON TO ALL COUNTS

8.      Siciliano entered into numerous contracts with Illinois state and municipal agencies  (collectively referred to as the "Obligees"), to perform certain construction work located in the Springfield and surrounding area (collectively referred to as the "Projects").

9.      In accordance with the Illinois Public Construction Bond Act, 30 ILCS 550 (the "Bond Act"), the Obligees required that Siciliano obtain and provide payment and performance surety bonds for the Projects to guarantee (a) Siciliano's performance obligations under the

2

60149643v1 858606

contracts and (b) to ensure the payment obligations of Siciliano's subcontractors and suppliers that furnished labor or material in completion of the Projects, subject to the terms of the bonds, the contracts, the Bond Act, and the law.

10.      Pursuant to the request of Siciliano, Safeco, as surety, issued the payment and performance bonds (the "bonds") to the Obligees, on behalf of Siciliano, as principal, for the Projects. (A list of the bonds issued by Safeco is attached hereto as Exhibit 1.)

11.      As a condition for Safeco issuing bonds on behalf of Siciliano, Safeco required that the Indemnitors enter into a General Agreement of Indemnity ("Indemnity Agreement") with Safeco. The Indemnity Agreement requires the Indemnitors to indemnify and hold Safeco harmless, in part, from all liability under the bonds it issues on behalf of Siciliano. Specifically, the Indemnity Agreement provides, in relevant part, the following:

> INDEMNITY TO SURETY: Undersigned agrees to pay to Surety upon demand:
>
> 1.     All loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Undersigned to make arrangements for Surety's legal representation), consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under his agreement by any of the Undersigned.
>
> In addition the Undersigned agrees to pay to Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement;
>
> 2.     An amount sufficient to discharge any claim made against Surety on any bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any bond;
>
> 3.     Any original, additional or renewal premium due for any bond.

3

60149643v1 858606

With respect to claims against Surety:

1.   Surety shall have the exclusive right for itself and the undersigned to determine in good faith whether any claim or suit upon any Bond shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed.

2.   Surety may incur such expenses, including reasonable attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims.

3.   Surety's determination in good faith of the foregoing shall be final and conclusive upon the Undersigned.

4.   An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned

(A copy of the Indemnity Agreement is attached hereto as Exhibit 2)

12.   The Indemnity Agreement also requires the Indemnitors to post collateral upon Safeco's demand to "cover any claim …". Specifically, the Indemnity Agreement provides:

2.   An amount sufficient to discharge any claim made against Surety on any Bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any bond

(Indemnity Agreement, Exhibit 2).

13.   The Indemnity Agreement requires the Indemnitors to hold in trust all contract funds Siciliano receives for the use and benefit of Siciliano's vendors which work on the Projects. Specifically, the agreement provides:

4.   Agree that all monies earned by Contractor under any Contract are trust funds, whether in the possession of Contractor or otherwise for the benefit of, and for payment of Contractor's obligations for, labor, material, and supplies furnished to Contractor in performance of such Contract for which Surety would be liable under any Bond on such Contract;

4

(Indemnity Agreement, Exhibit 2).

14.    Safeco has been sued and/or received claims against the payment and performance bonds it issued on behalf of Siciliano for numerous Projects. As of June, 2006, Safeco has received numerous payment and performance bond claims.

15.    Safeco has continually notified Siciliano of the bond claims and suits. Also Safeco has requested that the Indemnitors: (a) indemnify and hold Safeco harmless from the pending claims, (b) to post collateral for the claims in accordance with the terms of the Indemnity Agreement, and (c) to set up an escrow account through Safeco for the use in discharging Siciliano's obligation under the bonds. As of June, 2006, the Indemnitors have not indemnified Safeco. (See indemnity demand letter, attached hereto as Exhibit 3).

16.    As of June, 2006 after deducting the amount Safeco has received in contract funds, Safeco has expended $762,341.00 to discharge its obligations under the bonds. Additionally, Safeco's estimated remaining exposure after receiving contract funds under the performance and payment bonds for the claims asserted totals $1,439,000.00.

## Count I
### (Breach of Contract)

17.    Safeco adopts and realleges paragraphs 1 through 16 as and for paragraphs 1 through 16 of Count I as though fully set forth herein.

18.    The Indemnitors are obligated to indemnify Safeco from all "loss, costs and expenses of whatever kind and nature, including court costs, reasonable attorneys fees . ."

60149643v1 858606

pursuant to the Indemnity Agreement and to post collateral to cover any claims asserted. *See*, Exhibit 2.

19.    Despite Safeco's demand, the Indemnitors have breached the agreement between the parties by failing and refusing to indemnify and hold Safeco harmless from the bond claims, to post collateral in the amount of Safeco's bond exposure.

20.    Safeco has been damaged by the Indemnitors' material breach of the Indemnity Agreement in the initial amount of $762,341.00 which is the current net amount that Safeco has incurred as of June, 2006 and in the amount of $1,439,000.00 which amount represents Safeco's estimated remaining bond exposure.

WHEREFORE, Safeco Fire and Marine Insurance Company prays the court enter an order providing judgment against Siciliano, Inc. ("Siciliano"), K&R Properties, Inc., Richard E. Lawrence, and Mary Kim Lawrence, jointly and severally, in the initial amount of $762,341.00 plus costs and expenses, and require the defendants to post collateral in the initial amount of $1,439,000.00 or in an amount sufficient to secure Safeco from any losses and for such further relief as the Court deems just and appropriate.

### Count II
### (Exoneration and *Quia Timet*)

21.    Safeco adopts and realleges paragraphs 1 through 20 for paragraphs 1 through 20 of Count II as though fully set forth herein.

6

22.     Safeco has demanded that the Indemnitors indemnify and hold it harmless from the claims asserted and to post collateral in the amount of claims asserted. The collateral Safeco has demanded is to cover the amounts of current claims, net of recovery of contract funds.

23.     As the principal of the performance and payment bonds, Siciliano owes Safeco the duty of exoneration, requiring Siciliano perform its obligation before Safeco is called upon to perform its obligations under the bonds. Additionally, the Indemnity Agreement requires the Indemnitors to place funds or other security with it upon demand that are sufficient to cover its bond exposure. *See*, Exhibit 2.

24.     Safeco is entitled to a remedy known as *quia timet*, which remedy secures a surety from loss when it appears that the principal is reasonably likely to fail or refuse to perform or to protect the surety from loss.

25.     The Indemnitors have failed and refused to meet their obligations under the Indemnity Agreement by failing to indemnify Safeco from the pending claims and to post collateral in any amount.

26.     Safeco is entitled to be reimbursed for the attorneys and consulting fees it has currently paid and to be fully collateralized by the Indemnitors for the reserve it has set in order to discharge its bond obligations.

WHEREFORE, Safeco Insurance Company prays the court enter an order providing judgment against Siciliano, Inc., K&R Properties, Inc., Richard E. Lawrence and Mary Kim Lawrence, jointly and severally, in the initial amount of $762,341.00 plus costs and expenses,

7

60149643v1 858606

and require the defendants to post collateral in the initial amount of $1,439,000.00 or in an amount sufficient to secure Safeco from any losses; and for such further relief as the Court deems just and appropriate.

### Count III
### (Specific Performance of the Indemnity Agreement)

27.     Safeco adopts and realleges paragraphs 1 through 26 for paragraphs 1 through 26 of Count III as though fully set forth herein.

28.     Safeco has demanded that the indemnitors indemnify and hold Safeco harmless from any and all costs resulting from the bonds it issued for the Projects. As of June, 2006, the Indemnitors have failed to indemnify Safeco.

29.     Safeco has requested the Indemnitors to indemnify Safeco and to post collateral from bond claims and expenses, but the Indemnitors have failed to honor Safeco's request.

30.     Safeco lacks an adequate remedy at law and will suffer irreparable harm if the relief sought is not granted.

WHEREFORE, Safeco Insurance Company prays the court enter an order providing judgment against Siciliano, Inc., K&R Properties, Inc., Richard E. Lawrence and Mary Kim Lawrence, jointly and severally, in the initial amount of $762,341.00 plus costs and expenses, and require the defendants to post collateral in the initial amount of $1,439,000.00 or in an amount sufficient to secure Safeco from any losses; and for such further relief as the Court deems just and appropriate.

8

**Count IV**
**(Declaratory Judgment)**

31.     Safeco adopts and realleges paragraphs 1 through 30 for paragraphs 1 through 30 of Count IV as though fully set forth herein.

32.     The Indemnitors are obligated to indemnify Safeco from all "loss, costs and expenses of whatever kind and nature, including court costs, reasonable attorneys fees . ." pursuant to the Indemnity Agreement and to post collateral to cover any claims asserted and to set aside the bonded contract funds for the use in discharging Siciliano's obligations under the bonds. *See*, Exhibit 2.

33.     Under the Indemnity Agreement, Safeco is entitled to settle or compromise any claim, liability, demand, suit or judgment on any bond issued on behalf of Siciliano and such settlement or compromise shall be binding upon the Indemnitors. Any vouchers or other evidence of payment by Safeco shall be prima facie evidence of the fact and amount of liability of the Indemnitors. *See*, Exhibit 2.

34.     The Indemnitors are obligated to furnish all information, including allowing Safeco to examine the books and records of Siciliano at Safeco's request. *See*, Exhibit 2.

35.     The Indemnitors are obligated to hold in trust all contract funds received on the bonded contracts to pay Project vendors and to discharge Safeco's obligations under the bonds. *See*, Exhibit 2.

9

60149643v1 858606

36.    In the event Siciliano is declared in default on any bonded contract or Siciliano and/or the Indemnitors are in breach of the Indemnity Agreement, Siciliano and the Indemnitors agreed to assign to Safeco all title, right and interest to any payments due under the bonded contracts, all supplies, materials and equipment used in performance of the Projects and authorized Safeco to take all other actions necessary, including empowering Safeco with the means necessary to all other such supplies needed, to perform the work under the bonds. *See,* Exhibit 2.

37.    The Indemnitors agreed that Safeco has the authority and power, without notice to the Indemnitors, to amend any bonds, agree to any changes in contracts or obligations covered by the bonds with the understanding that the Indemnitors will remain bound by all terms of the Indemnity Agreement despite any increase in liability to the Indemnitors and also agreed that Safeco was appointed the Indemnitors true and lawful attorney with the right to exercise all of the rights of the Indemnitors. *See,* Exhibit 2.

38.    The parties agreed that the Indemnity Agreement constitute security agreements to Safeco and also a financing statement in accordance with the Uniform Commercial Code. *See,* Exhibit 2.

39.    The Indemnitors have breached their obligations under the Indemnity Agreement by failing and refusing to indemnify and hold Safeco harmless from all claims, to post collateral in the amount of Safeco's contingent bond exposure, and for the use in discharging Siciliano's obligations under the bonds.

10

40.    28 U.S.C. 2201 provides that the court may make binding declarations of rights in cases of actual controversy.

41.    That the instant cause involves an actual controversy regarding the obligations of the Defendants under the Indemnity Agreement and it is thus appropriate that this Court issue a declaratory judgment regarding the parties' respective rights and obligations under the Indemnity Agreement because a binding declaration by this Court as to each parties' rights and obligation under the agreement would serve to terminate any question of who is obligated to indemnify Safeco.

WHEREFORE, Safeco Insurance Company respectfully requests that the Court grant the following relief:

A.    Issue an order declaring that Defendants, jointly and severally, are liable to Safeco under the Indemnity Agreement for all losses Safeco incurs as a result of bonds it issued on behalf of Siciliano;

B.    Issue an order declaring that pursuant to the terms of the Indemnity Agreement, Safeco has the following rights:

1.    Safeco has the right to settle or compromise any claim, liability, demand, suit or judgment upon the bonds at issue and such settlement or compromise shall be binding on the Indemnitors. The vouchers or other evidence of payment shall be *prima facie* evidence of the fact and amount of the Indemnitors' liability;

2.    Siciliano shall furnish to Safeco such information as Safeco requests concerning the bonded Projects and the Indemnitors financial condition.

3.    By virtue of Siciliano's default under the Indemnity Agreement, Siciliano and the Indemnitors are deemed to have assigned to Safeco all right, title and interest to (a) all payments, monies and properties that may become payable on the Project; (b) all supplies, equipment and material used on the Project; and (c)

11

all subcontracts related to work under any contract in connection with the Projects.

4.     Safeco is authorized and empowered without notice to or knowledge of the Indemnitors to amend any bond or to assent to any change in the contracts or obligations relating to any bond and the Indemnitors are bound under the terms of the Indemnity Agreement even though any action by Safeco may increase their liability.

5.     The Indemnity Agreement constitutes a security agreement to Safeco and also a financing statement in accordance with Uniform Commercial Code. The failure of Safeco to file this Agreement shall not release or excuse any of the obligations of Siciliano or the Indemnitors under the Indemnity Agreement.

6.     The Indemnitors have appointed Safeco as their true and lawful attorney with the right to exercise al of the rights of the Indemnitors assigned, transferred and conveyed to Safeco in the Indemnity Agreement and have granted Safeco full power and authority to make, execute, endorse and deliver any agreements for the full protection intended to be given to Safeco.

**Safeco Insurance Company**

By:   /s/ Edward R. Gower
              One of its Attorneys

| | |
|---|---|
| Edward R. Gower, ARDC #3127966 | John E. Sebastian, ARDC # 6230240 |
| HINSHAW & CULBERTSON LLP | Clay M. Ullrick, ARDC# 6270760 |
| 400 South Ninth Street, Suite 200 | HINSHAW & CULBERTSON, LLP |
| Springfield, IL 62701-1908 | 222 North LaSalle Street, Suite 300 |
| (217) 528-7375 | Chicago, Illinois  60601 |
| | 312-704-3000 |

**John E. Sebastian is designated as Lead Counsel pursuant to Local Rule 11.2.**

60149643v1 858606

**E-FILED**
Monday, 31 July, 2006  11:24:56 AM
Clerk, U.S. District Court, ILCD

Exhibit 1

List of Bonds

| Job Name | Bond # | Bond Penalty |
|---|---|---|
| Camp Lincoln | 6271188 | $9,639,000.00 |
| Sysco Distribution Facility | 6358041 | $844,536.60 |
| Willard Ice | 6271175 | $1,015,000.00 |
| Forsyth Water Sys. Improvement | 6271182 | $1,352,000.00 |
| Heyworth North Pump Mods | 6271189 | $90,865.00 |
| Chandlerville Road Lift Station | 6271190 | $154,496.00 |
| Butler School | 6271191 | $2,133,000.00 |
| SMSD Spec Asses Swr | 6271210 | $130,523.37 |
| Peoria Road Sanitary Swr | 6271213 | $53,561.70 |
| 6th Street Swr Replace | 6271217 | $239,496.50 |
| New Berlin Door Replacement | 6271218 | $57,750.00 |
| Charleston Canopy | 6358039 | $71,019.00 |
| Roof IDOT Dist. 5 | 6358042 | $114,500.00 |

6076933v1 858606

**E-FILED**
Monday, 31 July, 2006 11:25:07 AM
Clerk, U.S. District Court, ILCD

# SAFECO

### GENERAL AGREEMENT OF INDEMNITY FOR CONTRACTORS

SAFECO Insurance Company
PO Box 54526
Seattle, WA 93124-1526

THIS AGREEMENT is made by the Undersigned in favor of the SAFECO Insurance Companies for the purpose of indemnifying them from all loss and expense in connection with any Bonds for which any SAFECO Insurance Company now is or hereafter becomes Surety for any of the following as Principal:  Siciliano, Inc.

In consideration of the execution of any such Bonds for Contractor and as an inducement to such execution by Surety, the Undersigned, jointly and severally, agree as follows.

DEFINITIONS: Where they appear in this agreement, the following terms shall be considered as defined in this paragraph:

Contractor:  Any one, combination of, or all of the persons, firms or corporations set forth above or their successors in interests, whether alone or in joint venture or as members in limited liability companies with others not named herein.

Bond:  Any and all bonds, undertakings or instruments of guarantee and any continuation, extension, alteration, renewal or substitution thereof, whether with the same or different penalties, executed by Surety.

Surety:  Any one or combination of the following:  SAFECO Insurance Company of America; General Insurance Company of America; First National Insurance Company of America; SAFECO National Insurance Company; American States Insurance Company; American Economy Insurance Company; any person or company joining with any of the aforesaid companies in executing any Bond, executing any Bond at their request or providing reinsurance to them with respect to any Bond.

Contract:  Any contract between Contractor and a third party, the performance of which is guaranteed by any Bond for which Surety is surety.

Default:  Contractor shall be deemed to be in default under this agreement in the event it:

(1)   Is declared to be in default by the Obligee of any Bond;
(2)   Actually Breaches or abandons any Contract;
(3)   Fails to pay, to the extent due in whole or in part, claims, bills or other indebtedness incurred in connection with the performance of any Contract;
(4)   Becomes the subject of any agreement or proceeding of liquidation or receivership, or actually becomes insolvent;
(5)   If an individual, dies, is adjudged mentally incompetent, is convicted of a felony or disappears and cannot be immediately found by Surety by use of usual methods;
(6)   Breaches, fails to perform, or comply with, any provision of this agreement.

INDEMNITY TO SURETY:  Undersigned agree to pay to Surety upon demand:

1.   All loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Undersigned to make arrangements for Surety's legal representation), consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this agreement by any of the Undersigned.

In addition the Undersigned agree to pay to Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement;

2.   An amount sufficient to discharge any claim made against Surety on any Bond.  This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any bond;

3.   Any original, additional or renewal premium due for any bond.

With respect to claims against Surety:

1.   Surety shall have the exclusive right for itself and the Undersigned to determine in good faith whether any claim or suit upon any Bond shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed.

2.   Surety may incur such expenses, including reasonable attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims.

3.   Surety's determination in good faith of the foregoing shall be final and conclusive upon the Undersigned.

4.   An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned.

SURETY'S REMEDIES IN EVENT OF DEFAULT:  In event of default by Contractor, Surety shall have the right, at its sole discretion, to:

1.   Take possession of the work under any and all Contracts and to arrange for its completion by others or by the Obligee of any Bond;

2.   Take possession of Contractor's or any of Undersigneds' equipment, materials and supplies at the site of the work, or elsewhere, if needed for prosecution of the work, as well as Contractor's office equipment, books and records, and utilize the same in completion of the work under the Contract without payment of any rental for such use;

3.   Loan or guarantee a loan to Contractor of such money as Surety shall see fit, for the purpose of completing any Contract, or for discharging Contractor's obligations for labor, material, equipment, supplies and other charges, incurred in connection with any contract;

4.   Take such other action as Surety shall deem appropriate to fulfill its obligations under any Bond;

Undersigned waive all notice of su___ fault, of the payment of any claim or of the mak___ f any loan to Contractor by Surety. Should Undersigned learn of any claim or suit against Contractor, for which Surety may be held liable, Undersigned shall give prompt notice to Surety of such claim or suit.

Separate suits may be brought under this agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety.

SECURITY TO SURETY: As collateral security to Surety for the agreement of the Undersigned to repay all loss and expense to Surety, the Undersigned:

1. Assigns to Surety, as of the date of execution of any Bond, all rights of the Contractor in, or in any manner growing out of:
   a. Any Contract or modification thereof;
   b. Any subcontract or purchase order and against any legal entity and its surety who has contracted with Contractor to furnish labor, materials, equipment and supplies in connection with any Contract;
   c. Monies due or to become due Contractor on any Contract, including all monies earned or unearned which are unpaid at the time of notification by Surety to the Obligee of Surety's rights hereunder;
   d. Any actions, causes of action, claims or demands whatsoever which Contractor may have or acquire against any party to the Contract, or arising out of or in connection with any Contract including but not limited to those against obligees and design professionals and any surety or sureties of any obligee, and Surety shall have the full and exclusive right, in its name or in the name of the Contractor, but not the obligation, to prosecute, compromise, release or otherwise resolve such actions, causes of action, claims or demands;
   e. Any and all rights, title, interest in, or use of any patent, copyright or trade secret which is or may be necessary for the completion of any bonded work;
   f. All monies due or to become due to Contractor on any policy of insurance relating to any claims arising out of the performance of any Contract or to premium refunds, including, but not limited to, builders risk, fire, employee dishonesty or workers' compensation policies.

   The Surety agrees to forbear exercising the rights granted to it in (a) through (f) until there is a Default under this agreement;

2. Irrevocably nominate and appoint any officer of Surety as the true and lawful attorney-in-fact of the Undersigned, with full right and authority in event of Contractor's default to:
   a. Sign the name of the Undersigned to any voucher, release, satisfaction, check, bill of sale of property referred to herein, or any other paper or contract necessary or desired to carry into effect the purposes of this agreement;
   b. Dispose of performance of any Contract by subletting it in Contractor's name or otherwise;

3. Authorize Surety to join any and all of the Undersigned as parties defendant in any action, regardless of venue, against Surety on account of any Bond, and to enforce the obligations hereunder directly against any of the Undersigned without the necessity of first proceeding against the Contractor;

4. Agree that all monies earned by Contractor under any Contract are trust funds, whether in the possession of Contractor or otherwise, for the benefit of, and for payment of Contractor's obligations for, labor, material, and supplies furnished to Contractor in performance of such Contract for which Surety would be liable under any Bond on such Contract;

5. Agree that this agreement may at any time be completed and filed by Surety in such a manner that it will qualify as a financing statement under the applicable provisions of any statute of any state which has adopted The Uniform Commercial Code, and that Surety may add such schedules to this agreement, describing specific items of security covered hereunder as shall be necessary under such statutes.

GENERAL PROVISIONS:

1. Assent by Surety to changes in any Contract or Bond or refusal to assent shall not release or affect the obligations of Undersigned to Surety even though any such assent by the Surety does or might increase the liability of the Undersigned.

2. Surety has the right to decline to execute, provide or procure any bond requested by Contractor. If Surety does execute, provide or procure the execution of a bid bond or proposal bond, or agrees or consents to provide such contract of suretyship, Surety retains the right to decline to execute the final bond (including, but not limited to, performance, payment or maintenance bonds) that may be required in connection with any award that may be made under the bid proposal or tender to which the bid proposal bond or agreement or consent to provide such contract of suretyship is given.

3. Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration and the right of subrogation.

4. Until Surety shall have been furnished with competent evidence of its discharge, without loss from any Bonds, Surety shall have the right to free access at reasonable times to the books, records and accounts of each of the Undersigned for the purpose of examining, copying or reproducing them. Each one of the Undersigned hereby authorizes any depositaries in which funds of any of the Undersigned may be deposited to furnish to Surety the amount of such deposits as of any date requested, and any legal entity doing business with the undersigned is authorized to furnish any information requested by Surety concerning any transaction. Surety may furnish in confidence copies of any information, which it now has or may hereafter obtain concerning each of the Undersigned, to other persons or companies for the purpose of procuring co-suretyship or reinsurance or of advising interested persons or companies.

5. The Undersigned will, on request of Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, the Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to Surety for the funding of the bonded obligation(s).

6. Undersigned warrant that each of them is specifically and beneficially interested in the obtaining of each Bond.

7. In case the execution hereof by any of the Undersigned may be defective or invalid for any reason, such defect or invalidity shall not in any manner affect the validity of this obligation or the liability hereunder of any other of the Undersigned. Invalidity of any provision of this agreement by reason of the laws of any state or for any other reason shall not render the other provisions hereof invalid.

8. Execution by Contractor or any of the Undersigned of any application for any Bond or of any other agreement of indemnity in behalf of Contractor, or the taking of indemnity of any other person by Surety with respect to any Bond of Contractor, shall in no way be deemed to waive, diminish or abrogate any rights of Surety under this agreement.

9. The Undersigned waive and subordinate all rights of indemnity, subrogation and contribution each against the other until all obligations to the Surety under this agreement, at law or in equity, have been satisfied in full.

10. The rights and remedies afforded to the Surety by the terms of this agreement and the terms themselves may not be waived or modified orally and no written change or modification shall be effective until signed by an employee of the Surety.

11. This agreement is to be liberally construed so as to protect, exonerate and indemnify the Surety.

12. All parties agree that any microfilmed, scanned or electronically digitized copy of this document made by Surety as part of its record

**TERMINATION:** This agreement is a continuing obligation of the Undersigned unless terminated as provided in this paragraph. An Undersigned desiring to terminate liability as to future Bonds of Contractor must:

1. Give written notice to Surety at Seattle, Washington 98185, by certified or registered mail, of such termination;
2. State in such notice the effective date (not less than thirty days after the receipt of notice by Surety) of termination of such Undersigned's liability for future Bonds.
3. It is understood and agreed that oral notice to or constructive notice to any agent or employee of Surety shall not constitute effective notice of termination under this agreement.

After the effective date of termination, the Undersigned giving notice shall be liable hereunder for:

1. Bonds executed or authorized prior to such date, and renewals and extensions thereof;
2. Bonds executed pursuant to a bid or proposal bond executed or authorized prior to such date, and renewals and extensions thereof.

Such termination of liability as to an Undersigned shall in no way affect the obligation of any other Undersigned who has not given notice as herein provided.

EXECUTED this _15th_ day of _September_, _2003_

Siciliano, Inc.

Attest: _Mary Kim Lawrence_
Mary Kim Lawrence, Secretary

By: _____
Richard E. Lawrence, President

_Mary Kim Lawrence_
Mary Kim Lawrence, Individually

_____
Richard E. Lawrence, Individually

K& R Properties, Inc.

Attest: _____
Richard E. Lawrence, Secretary

By: _Mary Kim Lawrence_
Mary Kim Lawrence, President

ALL SIGNATURES MUST BE ACKNOWLEDGED.

.5/2005 15:30 FAX 31972116262          ALLIED MID AMERICA                         @005

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Illinois_
COUNTY OF _Sangamon_                                    } ss.
On this __25th__ day of __Sept__ __2003__, before me personally appeared
_Richard E. Lawrence and Mary Kim Lawrence_, to me known and known to me to be the person
described in and who executed the foregoing agreement and acknowledged that they executed the same for the purposes, considerations
and uses therein set forth as __their__ free and voluntary act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

OFFICIAL SEAL
DARRELYN COLEASH
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXP. JUNE 28,2004

Notary Public, residing at _Rushton, IL_
(Commission expires _10/28/04_)

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____                              } ss.
On this _____ day of _____, before me personally appeared _____
_____, to me known and known to me to be the person
described in and who executed the foregoing agreement and acknowledged that _____ executed the same for the purposes, considerations
and uses therein set forth as _____ free and voluntary act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL)                          Notary Public, residing at _____
                                (Commission expires _____)

### LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____                              } ss.
On this _____ day of _____, before me personally appeared _____
_____, to me known to be the (a)
_____ of _____, the Limited Liability Company executing the foregoing instrument, and
acknowledged said instrument to be the free and voluntary act and deed of said Limited Liability Company, for the uses and purposes therein
mentioned and on oath stated _____ signed said instrument by authority of the Limited Liability Company's operating agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL)                          Notary Public, residing at _____
                                (Commission expires _____)

### CORPORATE ACKNOWLEDGMENT

STATE OF _Illinois_
COUNTY OF _Sangamon_                                   } ss.
On this __25th__ day of __Sept__ __2003__, before me personally appeared _____
_Richard E. Lawrence_ and _Mary Kim Lawrence_, to me known to be
_President_ and _Secretary_
of _Siciliano, Inc._
the corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of said
corporation, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said corporation and that
was affixed and that __they__ executed said instrument by order of the Board of Directors of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

OFFICIAL SEAL
DARRELYN COLEASH
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXP. JUNE 28,2004

Notary Public, residing at _Rushton, IL_
(Commission expires _10/28/04_)

IF ADDITIONAL ACKNOWLEDGEMENTS ARE NEEDED
USE S-802 (INDIVIDUAL) OR S-803 (CORPORATE)

## CORPORATE ACKNOWLEDGMENT

TE OF _Illinois_

INTY OF _Sangamon_            } ss.

his    25th    day of    Sept    , 2003 , before me personally appeared

ry Kim Lawrence    and    Richard E. Lawrence    , to me known to be

sident    and    Secretary    of K&R Properties, Inc.

corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of

corporation, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said

oration and that it was affixed and that    they    executed said instrument by order of the Board of Directors

aid corporation.

VITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

OFFICIAL SEAL
DARREL GOLEASH
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXP. JUNE 28 2004

Darrilyn Goleash

Notary Public, residing at Riverton Il

(Commission expires    6/28/04    )

All parties agree that any microfilmed, scanned or electronically digitized copy of this document made by Surety as part of its record storage and retention program shall be as effective as the original for all purposes

E-FILED
Thursday, 31 August, 2006  11:12:05 AM
Clerk, U.S. District Court, ILCD

**Exhibit 3**



**HINSHAW**
& CULPERISON LLP

ATTORNEYS AT LAW
222 N. LaSalle Street
Suite 300
Chicago, IL 60601-1081

T 312-704-3000
F 312-704-3001
www.hinshawlaw.com

January 20, 2006

Stanley N. Wasser, Esq.
Feldman Wasser Draper & Benson
1307 S. Seventh Street
Springfield, Illinois

      Re:    Contractor:    Siciliano, Inc.
              Surety:         Safeco Insurance Company
              Matter:        Indemnity

Dear Stanley:

      As the attorney for Siciliano, Inc., K&R Properties, Inc., Rick Lawrence, and Mary Lawrence [collectively referred to as the "Indemnitors"], on behalf of Safeco Insurance Company ("Safeco") as more fully stated below, I am writing to provide formal notice to the Indemnitors regarding the Joint Control Agreement, Safeco's loss to date, and Safeco's demand to be indemnified and exonerated.

### The Joint Control Agreement

      Pursuant to Section IV "Termination" of the Joint Control Trust Account Agreement (the "Agreement"), Safeco does hereby provide formal notice to the Indemnitors that Safeco is terminating the Joint Control Agreement. Also, I am writing to provide the Indemnitors the current amount incurred by Safeco in connection with the bonds Safeco issued on behalf of Siciliano. (See list of payments made by Safeco to Siciliano, Siciliano's project vendors, and for expenses, attached hereto as Exhibit 1)  As listed on Exhibit 1, after the contract funds received by Safeco have been deducted from the amount incurred by Safeco, as of December, 2005, Safeco is currently owed $620,270.46, plus interest.

### The Indemnity Agreement

      The Indemnitors agreed to indemnify and hold Safeco harmless for all of Safeco's costs and expenses incurred in connection with Safeco issuing bonds on behalf of Siciliano and in enforcing the terms of the General Agreement of Indemnity (the "Indemnity Agreement").  (A copy of the Indemnity Agreement is attached hereto as Exhibit 2)  Specifically, the Indemnity Agreement provides, in relevant part, the following:

Arizona   California   Florida   Illinois   Indiana   Massachusetts   Minnesota   Missouri   New York   Oregon   Rhode Island
Wisconsin

6017813A1 029

Stanley Wasser, Esq.
January 20, 2006
Page 2

**INDEMNITY TO SURETY:** Undersigned agree to pay to Surety upon demand:

1.  All loss, costs and expenses of whatsoever kind and nature, including court costs; reasonable attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Undersigned to make arrangements for Surety's legal representation); consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this agreement by any of the Undersigned. In addition the Undersigned agree to pay to Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement;

2.  An amount sufficient to discharge any claim made against Surety on any Bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any bond;

3.  Any original, additional or renewal premium due for any bond.

With respect to claims against Surety:

1.  Surety shall have the exclusive right for itself and the undersigned to determine in good faith whether any claim or suit upon any Bond shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed.

2.  Surety may incur such expenses, including reasonable attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims.

3.  Surety's determination in good faith of the foregoing shall be final and conclusive upon the undersigned.

4.  An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned.

    (See Indemnity Agreement, Exhibit 2)

    In accordance with Paragraph 4 of the "With Respect to claims against Surety", attached hereto as Exhibit 3 is an affidavit from Jason Stonefeld Senior Claims Representative of Safeco, attesting to the payments made by Safeco to date. Pursuant to the Indemnity Agreement, Safeco demands that on or before January 27, 2006 the Indemnitors make arrangements, acceptable to Safeco, to reimburse Safeco the amount Safeco has current incurred as of December, 2005 in the amount of $620,270.46, plus interest. (See Mr. Stonefeld's Affidavit and the Indemnity Agreement, Exhibits 1 and 2)

    The Indemnity Agreement requires that the Indemnitors to post collateral upon Safeco's demand for any claims filed against Safeco. Specifically, the Indemnity Agreement provides, in relevant part, the following:

    2.  An amount sufficient to discharge any claim made against Surety on any Bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any bond;

    (See Indemnity Agreement, Exhibit 2)

Stanley Wasser, Esq.
January 20, 2006
Page 3

As your clients are well aware of, Safeco has received numerous payment and performance bond claims. Pursuant to Paragraph 2 of "Indemnity To Surety" provision of the Indemnity Agreement, on or before January 27, 2006 Safeco hereby demands that the Indemnitors make arrangements, acceptable to Safeco, to post collateral with Safeco in the amount of $1,059,253. The amount requested represents what Safeco believes is what it will be required to expend, after deducting contract funds that it expects to recover, in order to discharge its obligations under the bonds it issued on behalf of Siciliano. The $1,059,253 is an estimate of Safeco's exposure to discharge its obligations under the bonds as of November, 2005 and, as such, the amount requested is subject to be modified.

Separate and apart from the above, the Indemnity Agreement requires that upon the request of Safeco that the Indemnitors exonerate and replace Safeco on a bond. Specifically, the "General Provisions" of Indemnity Agreement provide, in relevant part, the following:

5. The undersigned will, on request of Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, the Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to Surety for the funding of the bonded obligation(s).

Pursuant to the above provision, Safeco hereby requests that for the City of Springfield Public School District 186 – Butler Elementary Project (the "Butler Project"), Bond Number 6271191, on or before January 27, 2006, the Indemnitors procure the discharge of Safeco's on the Butler Project or the Indemnitors post collateral with Safeco in the amount of the penal sum of the bond which totals $2,133,000. If the Indemnitors do not obtain Safeco's discharge or post collateral as stated herein by January 27th, Safeco will exercise its rights under the Indemnity Agreement and re-let the Project to another contractor.

If the Indemnitors have not complied with Safeco's demands provided above by January 27th, Safeco will immediately take all steps available to protect and enforce its rights under the Indemnity Agreement, the bonded contracts, and the law.

If you would like to discuss this matter, please contact me. Nothing contained in this letter shall be deemed a waiver of any of Safeco's rights and defenses and Safeco expressly reserves all of its rights and defenses under the bonds, the Indemnity Agreement, any other agreements, and the law. Safeco also reserves the right to demand additional collateral from the Indemnitors for, among other things, pending claims which Safeco is currently investigating, for future claims that may be asserted against the bonds, and additional costs and expenses.

Stanley Wasser, Esq.
January 20, 2006
Page 4

Very truly yours,

HINSHAW & CULBERTSON LLP

By: _____

John E. Sebastian
Direct (312)704-3894
jsebastian@hinshawlaw.com

JES
Enclosures
cc:    Jason Stonefeld, Esq.

E-FILED
Monday, 11 August, 2008 E-FILED AM
Friday, 03 November, 2006 02:44:54 PM
Clerk, U.S. District Court, ILCD
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

SAFECO INSURANCE COMPANY

    Plaintiff,

        v.

      No.: 06-3162

SICILIANO, INC., K&R PROPERTIES, INC.,
RICHARD E. LAWRENCE, and MARY KIM
LAWRENCE

    Defendants.

### DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES

Defendants SICILIANO, INC., K&R PROPERTIES, INC., RICHARD E. LAWRENCE, and MARY KIM LAWRENCE, by their attorneys Howard W. Feldman and Stanley N. Wasser of Feldman, Wasser, Draper & Benson, and for their Answer and Affirmative Defenses to Plaintiff's Complaint, state as follows:

### ANSWER

1.    Defendants admit the allegations of paragraph 1.

2.    Defendants admit the allegations of paragraph 2.

3.    Defendants admit the allegations of paragraph 3.

4.    Defendants admit the allegations of paragraph 4.

5.    Defendants admit the allegations of paragraph 5.

6.    Defendants admit the allegations of paragraph 6.

FELDMAN, WASSER
DRAPER & BENSON
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403



7.    Defendants admit the allegations of paragraph 7.

8.    Defendants admit the allegations of paragraph 8.

9.    Defendants admit the allegations of paragraph 9.

10.    Defendants admit the allegations of paragraph 10.

11.    Defendants admit the allegations of the first sentence of paragraph 11. Defendants admit that Plaintiff has correctly quoted language from the Indemnity Agreement. The remaining allegations of paragraph 11, being Plaintiff's characterization of the Indemnity Agreement, are not allegations of fact but allegations of law or conclusions of fact to which no answer is required.

12.    Defendants admit the allegations of the first sentence of paragraph 12. Defendants admit that Plaintiff has correctly quoted language form the Indemnity Agreement. The remaining allegations of paragraph 12, being Plaintiff's characterization of the Indemnity Agreement, are not allegations of fact but allegations of law or conclusions of fact to which no answer is required.

13.    Defendants admit the allegations of the first sentence of paragraph 13. Defendants admit that Plaintiff has correctly quoted language form the Indemnity Agreement. The remaining allegations of paragraph 13, being Plaintiff's characterization of the Indemnity Agreement, are not allegations of fact but allegations of law or conclusions of fact to which no answer is required.

*FELDMAN, WASSER*
*DRAPER & BENSON*
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

2

14.    Defendants admit the allegations of paragraph 14 except that Defendants deny that Plaintiff has been sued against its performance bonds and Defendants deny that Plaintiff has received "numerous" performance bond claims.

15.    Defendants admit the allegations of paragraph 15 except that Defendants deny that Plaintiff is entitled to the full indemnification and collateral posting that Plaintiff demanded.

16.    Defendants are without sufficient information to either admit or deny the allegation in the first sentence of paragraph 16.  Defendants deny the allegation in the second sentence of paragraph 16.

**Count I**

17.    Defendants adopt and reallege their answer to paragraphs 1 through 16 as and for their answer to paragraphs 1 through 16 of Count I of Plaintiff's Complaint, as though fully set forth herein.

18.    Paragraph 18 is an allegation of a legal conclusion for which no answer is required.

19.    Defendants deny the allegations of paragraph 19.

20.    Defendants deny the allegations of paragraph 20.

Wherefore, Defendants SICILIANO, INC., K&R PROPERTIES, INC., RICHARD E. LAWRENCE, and MARY KIM LAWRENCE, pray that this Court enter judgment in their favor and against Plaintiff on Count I of Plaintiff's Complaint, and

*FELDMAN, WASSER*
*DRAPER & BENSON*
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

3

award Defendants their costs and such further relief as this Court deems just and equitable.

**Count II**

21.    Defendants adopt and reallege their answer to paragraphs 1 through 20 as and for their answer to paragraphs 1 through 20 of Count II of Plaintiff's Complaint, as though fully set forth herein.

22.    Defendants admit that Plaintiff has made demand for indemnity and for collateral in the amount of claims asserted, however Defendants deny that the collateral Plaintiff has demanded represents the current total amount of pending claims asserted against the bonds issued by the Plaintiff, net of recovery of contract funds.

23.    Paragraph 23 is an allegation of a legal conclusion to which no answer is required.

24.    Paragraph 24 is an allegation of a legal conclusion to which no answer is required.

25.    Defendants deny the allegations of paragraph 25.

26.    Paragraph 26 is an allegation of a legal conclusion to which no answer is required.

Wherefore, Defendants SICILIANO, INC., K&R PROPERTIES, INC., RICHARD E. LAWRENCE, and MARY KIM LAWRENCE, pray that this Court enter

judgment in their favor and against Plaintiff on Count II of Plaintiff's Complaint, and award Defendants their costs and such further relief as this Court deems just and equitable.

**Count III**

27.    Defendants adopt and reallege their answer to paragraphs 1 through 26 as and for their answer to paragraphs 1 through 26 of Count III of Plaintiff's Complaint, as though fully set forth herein.

28.    Defendants admit the allegations of paragraph 28 except deny the implication from the allegation that Plaintiff is entitled to the indemnity and hold harmless that it demanded of Defendants.

29.    Defendants admit the allegations of paragraph 29 except deny the implication from the allegation that Plaintiff is entitled to the indemnity and hold harmless that it demanded of Defendants.

30.    Paragraph 30 is an allegation of a legal conclusion to which no answer is required.

Wherefore, Defendants SICILIANO, INC., K&R PROPERTIES, INC., RICHARD E. LAWRENCE, and MARY KIM LAWRENCE, pray that this Court enter judgment in their favor and against Plaintiff on Count III of Plaintiff's Complaint, and award Defendants their costs and such further relief as this Court deems just and equitable.

*FELDMAN, WASSER*
*DRAPER & BENSON*
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

5

**Count IV**

31.    Defendants adopt and reallege their answer to paragraphs 1 through 30 as and for their answer to paragraphs 1 through 30 of Count IV of Plaintiff's Complaint, as though fully set forth herein.

32.    Paragraph 32 is an allegation of a legal conclusion to which no answer is required.

33.    Paragraph 33 is an allegation of a legal conclusion to which no answer is required.

34.    Paragraph 34 is an allegation fo a legal conclusion to which no answer is required.  Defendants further state that they have to date furnished all information to Plaintiff that Plaintiff has requested, including allowing Plaintiff to examine the books and records of Siciliano.

35.    Paragraph 35 is an allegation of a legal conclusion to which no answer is required.  Defendants further state that they deny the allegations of paragraph 35.

36.    Paragraph 36 is an allegation of a legal conclusion to which no answer is required.  Defendants further state that Siciliano has not been declared in default on any contract bonded by Plaintiff.

37.    Paragraph 35 is an allegation of a legal conclusion to which no answer is required.  Defendants further state that they deny that Plaintiff has any right to exercise any of the alleged authority or power in bad faith.

*FELDMAN, WASSER*
*DRAPER & BENSON*
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

6

38.    Paragraph 38 is an allegation of a legal conclusion to which no answer is required.

39.    Defendants deny the allegations of paragraph 39.

40.    Paragraph 40 is an allegation of a legal conclusion to which no answer is required.

41.    Paragraph 41 is an allegation of a legal conclusion to which no answer is required.

Wherefore, Defendants SICILIANO, INC., K&R PROPERTIES, INC., RICHARD E. LAWRENCE, and MARY KIM LAWRENCE, pray that this Court enter judgment in their favor and against Plaintiff on Count IV of Plaintiff's Complaint, and award Defendants their costs and such further relief as this Court deems just and equitable.

## AFFIRMATIVE DEFENSES AS TO ALL COUNTS

1.    At the time Plaintiff demanded indemnification and the posting of collateral, and even to present date, Plaintiff was and is aware that Defendant has no ability to make payment of the indemnity nor post the collateral demanded by Plaintiff in that all of the assets of the Defendants are pledged as collateral to Carrollton Bank which holds a higher priority securing interest in Defendants' assets than does Plaintiff and that in addition, St. Paul Fire and Marine Insurance Company, who has filed a similar lawsuit against Defendants, has claimed a right to all of Defendants'

FELDMAN, WASSER
DRAPER & BENSON
1307 S. Seventh St.
Post Office Box 2418
Springfield, Il. 62705
217/544-3403

7

assets. Thus, Plaintiff has made demand for performance by Defendants for which it is impossible for Defendants to perform.

2.      To the extent Plaintiff has incurred unreasonable expenses, including attorneys fees, in connection with the performance of its bond obligations, Plaintiff has failed to mitigate its damages and Plaintiff is the cause of its own loss for which Plaintiff now seeks indemnification and/or the posting of collateral.

3.      If Plaintiff paid legal bills and other expenses in violation of its own billing guidelines, such facts would establish that Plaintiff acted in bad faith and thus Plaintiff has violated its obligations to act with good faith and fair dealing towards Defendants and Plaintiff should be barred and estopped from recovering any such claimed losses from Defendants.

4.      Upon information and belief Plaintiff has failed to mitigate its damages on the Camp Lincoln, SYSCO and Butler School projects by refusing to allow Defendant Siciliano, Inc. to complete these projects.   Discovery may reveal that Plaintiff has failed to mitigate its damages on other projects.

5.      Upon information and belief Plaintiff breached its duty of good faith and fair dealing that it owed to Defendants when Plaintiff refused to defend Defendant Siciliano's right to continue work on the State of Illinois Capital Development Board ("CDB") Camp Lincoln project after CDB wrongfully terminated Defendant Siciliano's contract for that project.

*FELDMAN, WASSER*
*DRAPER & BENSON*
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

8

6.    Plaintiff breached its duty of good faith and fair dealing that it owes to Defendants and Plaintiff breached its contractual commitment to Defendant Siciliano by communicating to various public project owners that Defendant Siciliano was agreeing to be defaulted on the project so that Plaintiff could seize and control all contract funds when Plaintiff had not made payments to payment bond claimants, when the public project owners had not contemplated defaulting Defendant Siciliano, when Defendant Siciliano was not in default of its performance obligations on the project, and when Defendant Siciliano had not consented to being defaulted.  As a consequence of Defendant Siciliano being unable to access said contract funds, Defendant Siciliano was unable to pay its contract obligations, resulting in payment bond claims being made against Plaintiff.   By reason of Plaintiff's wrongful actions, Plaintiff is estopped from enforcing indemnity and collateral posting obligations against Defendants for losses and risks of losses which Plaintiff caused by its own wrongful conduct.

7.    Upon information and belief, Plaintiff wrongfully induced Defendant Siciliano to execute letters of default under the terms of a Joint Control Trust Account Agreement pursuant to which Plaintiff agreed to provide financial assistance to Defendant Siciliano which Defendant Siciliano needed due to circumstances beyond its control to continue performing its construction contract obligations, when Plaintiff had no intention of living up to its obligations under said Agreement in order to obtain control of construction contract funds that would have otherwise been paid to

FELDMAN, WASSER
DRAPER & BENSON
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

9

Defendant Siciliano.  As a consequence of Defendant Siciliano being unable to access said contract funds, Defendant Siciliano was unable to pay its contract obligations, resulting in payment bond claims being made against Plaintiff.     By reason of Plaintiff's wrongful actions, Plaintiff is estopped from enforcing indemnity and collateral posting obligations against Defendants for losses and risks of losses which Plaintiff caused by its own wrongful conduct.

8.     Plaintiff is seeking indemnification and posting of collateral for claimed losses on the IDOT Clinton Maintenance Facility roof replacement project even though the project owner rescinded the award of the contract for said project to Defendant Siciliano and released Plaintiff from its bond, thus relieving Plaintiff from any liability as surety for Defendant Siciliano on said project.

9.     Upon information and belief Plaintiff had sufficient contract funds available to it on the SYSCO project to fully indemnify and collateralize Plaintiff against its claimed losses on said project for which it seeks indemnification and collateralization from Defendants.

10.     Upon information and belief, Plaintiff's demand for indemnification and collateralization which Plaintiff alleges was not complied with by Defendants and for which Plaintiff now brings suit was not based upon a good faith evaluation of the bonded contracts for which Plaintiff seeks indemnification and collateralization in that at the time Plaintiff demanded indemnification and collateralization, Plaintiff understated contract funds available to Plaintiff to offset losses; Plaintiff claimed costs

FELDMAN, WASSER
DRAPER & BENSON
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

10

to complete for projects which were completed by Defendant Siciliano and for which there were no costs to complete, thereby significantly overstating its loss exposure; Plaintiff claimed indemnification and collateralization against liquidated damages on two projects which projects were finished and on which no liquidated damages were assessed. thereby significantly overstating its loss exposure; and upon information and belief Plaintiff may have significantly double counted its claimed losses in determining its loss exposure for which it seeks indemnification and collateralization.

11.    Plaintiff has been indemnified and collateralized for a substantial portion of its claimed losses on the City of Springfield, Metro Sanitary District, Village of Heyworth, Village of Forsyth, Willard Ice, City of Beardstown and IDOT District #5 projects in that project contract funds are available to and have been liened by Plaintiff to cover its claimed losses on these projects and should Plaintiff recover all contract funds for which it has liened, Plaintiff will recover in the range of some $650,000,00.

**s/ Howard W. Feldman**
Howard W. Feldman,  Bar Number 00788066
Attorney for All Defendants
Feldman, Wasser, Draper & Benson
1307 S. Seventh Street, P.O. Box 2418
Springfield, IL 62705
Telephone: (217) 544-3403
Fax: (217) 544-1593
E-mail: hfeldman@feldwass.com

FELDMAN, WASSER
DRAPER & BENSON
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

11

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

egower@hinshawlaw.com

jsebastian@hinshawlaw.com

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: N/A

**s/ Howard W. Feldman**
Howard W. Feldman, Bar Number 00788066
Attorney for All Defendants
Feldman, Wasser, Draper & Benson
1307 S. Seventh Street, P.O. Box 2418
Springfield, IL 62705
Telephone: (217) 544-3403
Fax: (217) 544-1593
E-mail: hfeldman@feldwass.com

*FELDMAN, WASSER*
*DRAPER & BENSON*
1307 S. Seventh St.
Post Office Box 2418
Springfield, IL 62705
217/544-3403

12

EXHIBIT

C

ALL-STATE LEGAL®

# SAFECO

## GENERAL AGREEMENT OF INDEMNITY FOR CONTRACTORS

SAFECO Insurance Company
PO Box 34526
Seattle, WA 93124-1526

THIS AGREEMENT is made by the Undersigned in favor of the SAFECO Insurance Companies for the purpose of indemnifying them from all loss and expense in connection with any Bonds for which any SAFECO Insurance Company now is or hereafter becomes Surety for any of the following as Principal:  Siciliano, Inc.

In consideration of the execution of any such Bonds for Contractor and as an inducement to such execution by Surety, the Undersigned, jointly and severally, agree as follows:

DEFINITIONS:  Where they appear in this agreement, the following terms shall be considered as defined in this paragraph:

Contractor:  Any one, combination of, or all of the persons, firms or corporations set forth above or their successors in interests, whether alone or in joint venture or as members in limited liability companies with others not named herein.

Bond:  Any and all bonds, undertakings or instruments of guarantee and any continuation, extension, alteration, renewal or substitution thereof, whether with the same or different penalties, executed by Surety.

Surety:  Any one or combination of the following:  SAFECO Insurance Company of America; General Insurance Company of America; First National Insurance Company of America; SAFECO National Insurance Company; American States Insurance Company; American Economy Insurance Company; any person or company joining with any of the aforesaid companies in executing any Bond, executing any Bond at their request or providing reinsurance to them with respect to any Bond.

Contract:  Any contract between Contractor and a third party, the performance of which is guaranteed by any Bond for which Surety is surety.

Default:  Contractor shall be deemed to be in default under this agreement in the event it:

(1)  Is declared to be in default by the Obligee of any Bond;
(2)  Actually breaches or abandons any Contract;
(3)  Fails to pay, to the extent due in whole or in part, claims, bills or other indebtedness incurred in connection with the performance of any Contract;
(4)  Becomes the subject of any agreement or proceeding of liquidation or receivership, or actually becomes insolvent;
(5)  If an individual, dies, is adjudged mentally incompetent, is convicted of a felony or disappears and cannot be immediately found by Surety by use of usual methods;
(6)  Breaches, fails to perform, or comply with, any provision of this agreement.

INDEMNITY TO SURETY:  Undersigned agree to pay to Surety upon demand:

1.  All loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Undersigned to make arrangements for Surety's legal representation), consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this agreement by any of the Undersigned.

   In addition the Undersigned agree to pay to Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement;

2.  An amount sufficient to discharge any claim made against Surety on any Bond.  This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any bond;

3.  Any original, additional or renewal premium due for any bond.

With respect to claims against Surety:

1.  Surety shall have the exclusive right for itself and the Undersigned to determine in good faith whether any claim or suit upon any Bond shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed.
2.  Surety may incur such expenses, including reasonable attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims.
3.  Surety's determination in good faith of the foregoing shall be final and conclusive upon the Undersigned.
4.  An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned.

SURETY'S REMEDIES IN EVENT OF DEFAULT:  In event of default by Contractor, Surety shall have the right, at its sole discretion, to:

1.  Take possession of the work under any and all Contracts and to arrange for its completion by others or by the Obligee of any Bond;
2.  Take possession of Contractor's or any of Undersigneds' equipment, materials and supplies at the site of the work, or elsewhere, if needed for prosecution of the work, as well as Contractor's office equipment, books and records, and utilize the same in completion of the work under the Contract without payment of any rental for such use;
3.  Loan or guarantee a loan to Contractor of such money as Surety shall see fit, for the purpose of completing any Contract, or for discharging Contractor's obligations for labor, material, equipment, supplies and other charges, incurred in connection with any contract;
4.  Take such other action as Surety shall deem

Undersigned waive all notice of su    fault, of the payment of any claim or of the mak    f any loan to Contractor by Surety. Should Undersigned learn of any claim or suit against Contractor, for which Surety may be held liable, Undersigned shall give prompt notice to Surety of such claim or suit.

Separate suits may be brought under this agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety.

SECURITY TO SURETY: As collateral security to Surety for the agreement of the Undersigned to repay all loss and expense to Surety, the Undersigned:

1.    Assigns to Surety, as of the date of execution of any Bond, all rights of the Contractor in, or in any manner growing out of:
   a.    Any Contract or modification thereof;
   b.    Any subcontract or purchase order and against any legal entity and its surety who has contracted with Contractor to furnish labor, materials, equipment and supplies in connection with any Contract;
   c.    Monies due or to become due Contractor on any Contract, including all monies earned or unearned which are unpaid at the time of notification by Surety to the Obligee of Surety's rights hereunder;
   d.    Any actions, causes of action, claims or demands whatsoever which Contractor may have or acquire against any party to the Contract, or arising out of or in connection with any Contract including but not limited to those against obligees and design professionals and any surety or sureties of any obligee, and Surety shall have the full and exclusive right, in its name or in the name of the Contractor, but not the obligation, to prosecute, compromise, release or otherwise resolve such actions, causes of action, claims or demands;
   e.    Any and all rights, title, interest in, or use of any patent, copyright or trade secret which is or may be necessary for the completion of any bonded work;
   f.    All monies due or to become due to Contractor on any policy of insurance relating to any claims arising out of the performance of any Contract or to premium refunds, including, but not limited to, builders risk, fire, employee dishonesty or workers' compensation policies.

   The Surety agrees to forbear exercising the rights granted to it in (a) through (f) until there is a Default under this agreement;

2.    Irrevocably nominate and appoint any officer of Surety as the true and lawful attorney-in-fact of the Undersigned, with full right and authority in event of Contractor's default to:
   a.    Sign the name of the Undersigned to any voucher, release, satisfaction, check, bill of sale of property referred to herein, or any other paper or contract necessary or desired to carry into effect the purposes of this agreement;
   b.    Dispose of performance of any Contract by subletting it in Contractor's name or otherwise;

3.    Authorize Surety to join any and all of the Undersigned as parties defendant in any action, regardless of venue, against Surety on account of any Bond, and to enforce the obligations hereunder directly against any of the Undersigned without the necessity of first proceeding against the Contractor;

4.    Agree that all monies earned by Contractor under any Contract are trust funds, whether in the possession of Contractor or otherwise, for the benefit of, and for payment of Contractor's obligations for, labor, material, and supplies furnished to Contractor in performance of such Contract for which Surety would be liable under any Bond on such Contract;

5.    Agree that this agreement may at any time be completed and filed by Surety in such a manner that it will qualify as a financing statement under the applicable provisions of any statute of any state which has adopted The Uniform Commercial Code, and that Surety may add such schedules to this agreement, describing specific items of security covered hereunder as shall be necessary under such statutes.

GENERAL PROVISIONS:

1.    Assent by Surety to changes in any Contract or Bond or refusal to assent shall not release or affect the obligations of Undersigned to Surety even though any such assent by the Surety does or might increase the liability of the Undersigned.

2.    Surety has the right to decline to execute, provide or procure any bond requested by Contractor. If Surety does execute, provide or procure the execution of a bid bond or proposal bond, or agrees or consents to provide such contract of suretyship, Surety retains the right to decline to execute the final bond (including, but not limited to, performance, payment or maintenance bonds) that may be required in connection with any award that may be made under the bid proposal or tender to which the bid proposal bond or agreement or consent to provide such contract of suretyship is given.

3.    Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration and the right of subrogation.

4.    Until Surety shall have been furnished with competent evidence of its discharge, without loss from any Bonds, Surety shall have the right to free access at reasonable times to the books, records and accounts of each of the Undersigned for the purpose of examining, copying or reproducing them. Each one of the Undersigned hereby authorizes any depositories in which funds of any of the Undersigned may be deposited to furnish to Surety the amount of such deposits as of any date requested, and any legal entity doing business with the undersigned is authorized to furnish any information requested by Surety concerning any transaction. Surety may furnish in confidence copies of any information, which it now has or may hereafter obtain concerning each of the Undersigned, to other persons or companies for the purpose of procuring co-suretyship or reinsurance or of advising interested persons or companies.

5.    The undersigned will, on request of Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, the Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to Surety for the funding of the bonded obligation(s).

6.    Undersigned warrant that each of them is specifically and beneficially interested in the obtaining of each Bond.

7.    In case the execution hereof by any of the Undersigned may be defective or invalid for any reason, such defect or invalidity shall not in any manner affect the validity of this obligation or the liability hereunder of any other of the Undersigned. Invalidity of any provision of this agreement by reason of the laws of any state or for any other reason shall not render the other provisions hereof invalid.

8.    Execution by Contractor or any of the Undersigned of any application for any Bond or of any other agreement of indemnity in behalf of Contractor, or the taking of indemnity of any other person by Surety with respect to any Bond of Contractor, shall in no way be deemed to waive, diminish or abrogate any rights of Surety under this agreement.

9.    The Undersigned waive and subordinate all rights of indemnity, subrogation and contribution each against the other until all obligations to the Surety under this agreement, at law or in equity, have been satisfied in full.

10.    The rights and remedies afforded to the Surety by the terms of this agreement and the terms themselves may not be waived or modified orally and no written change or modification shall be effective until signed by an employee of the Surety.

11.    This agreement is to be liberally construed so as to protect, exonerate and indemnify the Surety.

12.    All parties agree that any microfilmed, scanned or electronically digitized copy of this document made by Surety as part of his record

TERMINATION: This agreement is a continuing obligation of the Undersigned unless terminated as provided in this paragraph. An Undersigned desiring to terminate liability as to future Bonds of Contractor must:

1.  Give written notice to Surety at Seattle, Washington 98185, by certified or registered mail, of such termination;

2.  State in such notice the effective date (not less than thirty days after the receipt of notice by Surety) of termination of such Undersigned's liability for future Bonds.

3.  It is understood and agreed that oral notice to or constructive notice to any agent or employee of Surety shall not constitute effective notice of termination under this agreement.

After the effective date of termination, the Undersigned giving notice shall be liable hereunder for:

1.  Bonds executed or authorized prior to such date, and renewals and extensions thereof;

2.  Bonds executed pursuant to a bid or proposal bond executed or authorized prior to such date, and renewals and extensions thereof.

Such termination of liability as to an Undersigned shall in no way affect the obligation of any other Undersigned who has not given notice as herein provided.

EXECUTED this _25th_ day of _September_, _2005_

Siciliano, Inc. _____

Attest: _Mary Kim Lawrence_          By: _____
        Mary Kim Lawrence, Secretary       Richard E. Lawrence, President

_Mary Kim Lawrence_                    _____
Mary Kim Lawrence, Individually        Richard E. Lawrence, Individually

K & R Properties, Inc. _____

Attest: _____     By: _Mary Kim Lawrence_
        Richard E. Lawrence, Secretary      Mary Kim Lawrence, President

ALL SIGNATURES MUST BE ACKNOWLEDGED.

.5/2005 15:30 FAX 314/7111420          ALLIED MID AMERICA                                    @000

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Illinois_
COUNTY OF _Sangamon_                                              } ss.
On this ___25th___ day of ___Sept___ ___2003___ before me personally appeared
_Richard E. Lawrence and Mary Kim Lawrence_ _____, to me known and known to me to be the person
described in and who executed the foregoing agreement and acknowledged that they executed the same for the purposes, considerations
and uses therein set forth as __their__ free and voluntary act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

```
OFFICIAL SEAL
DARRELYN COLEASH
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXP. JUNE 28,2004
```
Notary Public, residing at _Rushon  IL_
(Commission expires _10/28/04_

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____                                        } ss.
On this _____ day of _____ before me personally appeared _____
_____, to me known and known to me to be the person
described in and who executed the foregoing agreement and acknowledged that _____ executed the same for the purposes, considerations
and uses therein set forth as _____ free and voluntary act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

                    (SEAL)                    Notary Public, residing at _____
                                              (Commission expires _____ )

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____                                        } ss.
On this _____ day of _____ before me personally appeared _____
_____, to me known to be the (a)
_____ of _____, the Limited Liability Company executing the foregoing instrument, and
acknowledged said instrument to be the free and voluntary act and deed of said Limited Liability Company, for the uses and purposes therein
mentioned and on oath stated _____ signed said instrument by authority of the Limited Liability Company's operating agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

                    (SEAL)                    Notary Public, residing at _____
                                              (Commission expires _____ )

## CORPORATE ACKNOWLEDGMENT

STATE OF _Illinois_
COUNTY OF _Sangamon_                                              } ss.
On this ___25th___ day of ___Sept___ ___2003___ before me personally appeared _____, to me known to be
_Richard E. Lawrence_ and _Mary Kim Lawrence_
_President_ and _Secretary_
of _Siciliano. Inc._
the corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of said
corporation, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said corporation and that
was affixed and that __they__ executed said instrument by order of the Board of Directors of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

```
OFFICIAL SEAL
DARRELYN COLEASH
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXP. JUNE 28,2004
```
Notary Public, residing at _Rushon  IL_
(Commission expires _10/28/04_

IF ADDITIONAL ACKNOWLEDGEMENTS ARE NEEDED
USE S-802 (INDIVIDUAL) OR S-803 (CORPORATE)

CORPORATE ACKNOWLEDGMENT

TE OF _Illinois_
INTY OF _Sangamon_           } ss.
his _25th_ day of _Sept_ _2003_, before me personally appeared
_ty Kim Lawrence_ and _Richard E. Lawrence_, to me known to be
_sident_ and _Secretary_ of _K&R Properties, Inc._
corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of
corporation, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said
oration and that it was affixed and that _they_ executed said instrument by order of the Board of Directors
aid corporation.

VITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

_Darrilyn Goleash_
Notary Public, residing at _Riverton, IL_
(Commission expires _6/28/04_)

OFFICIAL SEAL
DARRI GREEN CASH
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXP. JUNE 28, 2004

All parties agree that any microfilmed, scanned or electronically digitized copy of this document made by

**E-FILED**
Monday, 11 August, 2008  11:42:15 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA, | ) ) ) | |
| Plaintiff, | ) | Case No. 06 CV 3162 |
| v. | ) ) | |
| SICILIANO, INC., an Illinois Corporation, K&R PROPERTIES, INC., RICHARD E. LAWRENCE and MARY KIM LAWRENCE, | ) ) ) ) | |
| Indemnitors | ) ) | |

## AFFIDAVIT OF NICHOLAS HYSLOP

I, Nicholas Hyslop, having been first sworn on oath, depose and state that I have personal knowledge of the following matters and that I could competently testify to the following matters if called upon to testify at the trial of the above-referenced cause:

1.      I am an Assistant Vice-President of Safeco Insurance Company of America ("Safeco"). I have been an Assistant Vice-President with Safeco for a period of over four (4) years. I have been employed at Safeco in a variety of positions with respect to Safeco's surety business for a period of over eleven (11) years.

2.      Safeco is a Washington corporation with its principal place of business in Seattle, Washington. Among other things, Safeco is in the business of issuing surety bonds throughout the United States in connection with the performance of contractors on both private and public construction projects.

3.      In my capacity as Assistant Vice-President, I am aware of the business dealings between Siciliano, Inc. ("Siciliano"), and Safeco in connection with Siciliano's performance of construction services on a variety of construction projects. Further, I have served in a representative capacity for Safeco with respect to, and during the course of, Siciliano's



6343862v1 858606

performance on certain bonded construction projects, Siciliano's subsequent default on those projects, Safeco's response to Siciliano's default, and Safeco's attempts to recover from certain indemnitors.

    4.      Safeco issued numerous surety bonds on behalf of Siciliano in connection with Siciliano's performance of construction services for a variety of projects. The following is a list of all bonds Safeco issued on Siciliano's behalf (collectively, "Bonds") and the projects for which the Bonds were issued:

| Project Name | Bond Number | Penal sum of the Bond |
|---|---|---|
| Camp Lincoln | 6271188 | $9,639,000.00 |
| Sysco Distribution Facility | 6358041 | $844,536.60 |
| Willard Ice | 6271175 | $1,015,000.00 |
| Forsyth Water Sys. Improvement | 6271182 | $1,352,000.00 |
| Heyworth North Pump Mods. | 6271189 | $90,865.00 |
| Chandlerville Road Lift Station | 6271190 | $154,496.00 |
| Butler School | 6271191 | $2,133,000.00 |
| SMSD Spec. Asses. Swr. | 6271210 | $130,523.37 |
| Peoria Road Sanitary Swr. | 6271213 | $53,561.70 |
| 6th Street Swr. Replace | 6271217 | $239,496.50 |
| New Berlin Door Replacement | 6271218 | $57,750.00 |
| Charleston Canopy | 6358039 | $71,019.00 |
| Roof IDOT Dist., 5 | 6358042 | $114,500.00 |

The construction projects identified in the above chart will hereinafter be collectively referred to as the "Bonded Projects."

2

5.      As consideration for Safeco's issuance of the Bonds on behalf of Siciliano for the Bonded Projects, Safeco required Siciliano, K&R Properties, Inc., Richard E. Lawrence, and Mary Kim Lawrence (collectively, "Indemnitors") to enter into a General Agreement of Indemnity for Contractors ("Indemnity Agreement"). A copy of the Indemnity Agreement is attached hereto as <u>Exhibit 1</u>, the terms of which are hereby incorporated as though set forth fully herein.

6.      Siciliano informed Safeco that its bank, Carrollton Bank, applied from Siciliano's operating checking account approximately $2,000,000.00.

7.      Siciliano informed Safeco that the State of Illinois Capitol Development Board (the "CDB") declared Siciliano in default of its contract for the Lincoln Museum and Lincoln Library and, as a result of the CDB's declaration of default, the CDB held back payments from Siciliano totaling approximately $3,000,000.

8.      As a result of Carrollton Bank and the CDB's actions, Siciliano informed Safeco that it did not have money to pay its insurance premiums, to pay its project vendors, and to maintain the required work force to complete the projects bonded by Safeco.

9.      During the course of Siciliano's performance on the Bonded Projects, Siciliano defaulted on the following Bonded Projects: Sysco, Camp Lincoln, and the Butler School. Attached hereto as <u>Group Exhibit 2</u> is correspondence from Siciliano wherein Siciliano voluntary waived the owner's right to declare default and Siciliano voluntary abandoned and terminated its right to complete the particular contract.

3

10.    During and subsequent to Siciliano's performance on the Bonded Projects, Safeco received numerous claims against the Bonds it issued on behalf of Siciliano for the Bonded Projects.

11.    Because of Siciliano's financial inability to complete the Bonded Projects, Safeco hired other contractors to complete the projects referred to as Sysco, Camp Lincoln, and the Butler School.

12.    Safeco has continually notified the Indemnitors of the claims asserted against the Bonds by various trade contractors and Bond obligees.

13.    Safeco either settled or resolved the claims against the Bonds in its capacity as the surety for Siciliano.

14.    Attached hereto as Exhibit 3 is an itemized statement of Safeco's losses for the Bonded Projects as of July 10, 2008.  Exhibit 3 evidences each of the claimants, claim amounts, disbursements by Safeco, and other expenses incurred by Safeco with respect to each of the Bonded Projects.  I have personal knowledge of the losses and expenses identified in Exhibit 3, and Exhibit 3 is an accurate representation of Safeco's losses and expenses to date.

15.    Safeco necessarily incurred losses, expenses, costs and fees during the course of its investigation of and in response to the claims asserted against the Bonds and in enforcing the terms of the Indemnity Agreement. Attorneys' fees and consulting costs are among the costs and fees Safeco incurred in investigating and responding to the claims against the Bonds. Specifically, Safeco retained Hinshaw & Culbertson LLP and Leo & Weber, PC as its legal counsel. Additionally, Safeco retained Construction Consulting & Disbursement Services as its consultant to investigate, evaluate and respond to claims against the Bonds.

4

16.    Exhibit 3 provides a detailed listing of each check paid by Safeco and each amount recovered by Safeco in connection with the costs and expenses Safeco incurred to discharge its obligations under the Bonds and in enforcing the terms of the Indemnity Agreement. As of July 10, 2008, Safeco has incurred a net loss of $1,523,317.56 in losses and expenses. These losses and expenses include Safeco's consulting and attorneys' fees.

17.    Despite numerous demands, the Indemnitors have failed to indemnify and hold Safeco harmless from its losses, expenses, costs and fees in accordance with the Indemnity Agreement.

18.    I swear under the penalty of perjury that the foregoing declaration is true and correct to the best of my knowledge, information and belief.

19.    Further affiant sayeth not.

Nicholas Hyslop

Signature

SUBSCRIBED and SWORN to
before me this _23rd_ day of July, 2008.

Notary Public
Dated: _____

By:  HINSHAW & CULBERTSON LLP

One of Its Attorneys

Edward R. Gower, ARDC # 3127966
Hinshaw & Culbertson LLP
400 South Ninth Street, Suite 200
Springfield, Illinois 62701-1908
(217) 528-7375

5

6343862v1 858606

John E. Sebastian, ARDC #: 6230240
Albert L. Chollet, III, ARDC #: 6292557
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601
(312)704-3000

6



**EXHIBIT**

E-FILED

Monday, 31 July, 2006  11:25:07 AM
Clerk, U.S. District Court, ILCD

SAFECO Insurance Company
PO Box 34526
Seattle, WA 93124-1526

# SAFECO

## GENERAL AGREEMENT OF INDEMNITY FOR CONTRACTORS

THIS AGREEMENT is made by the Undersigned in favor of the SAFECO Insurance Companies for the purpose of indemnifying them from all loss and expense in connection with any Bonds for which any SAFECO Insurance Company now is or hereafter becomes Surety for any of the following as Principal: Siciliano, Inc.

_____

_____

_____

In consideration of the execution of any such Bonds for Contractor and as an inducement to such execution by Surety, the Undersigned, jointly and severally, agree as follows.

DEFINITIONS: Where they appear in this agreement, the following terms shall be considered as defined in this paragraph:

Contractor: Any one, combination of, or all of the persons, firms or corporations set forth above or their successors in interests, whether alone or in joint venture or as members in limited liability companies with others not named herein.

Bond: Any and all bonds, undertakings or instruments of guarantee and any continuation, extension, alteration, renewal or substitution thereof, whether with the same or different penalties, executed by Surety.

Surety: Any one or combination of the following: SAFECO Insurance Company of America; General Insurance Company of America; First National Insurance Company of America; SAFECO National Insurance Company; American States Insurance Company; American Economy Insurance Company; any person or company joining with any of the aforesaid companies in executing any Bond, executing any Bond at their request or providing reinsurance to them with respect to any Bond.

Contract: Any contract between Contractor and a third party, the performance of which is guaranteed by any Bond for which Surety is surety.

Default: Contractor shall be deemed to be in default under this agreement in the event it:

(1)  Is declared to be in default by the Obligee of any Bond;
(2)  Actually breaches or abandons any Contract;
(3)  Fails to pay, to the extent due in whole or in part, claims, bills or other indebtedness incurred in connection with the performance of any Contract;
(4)  Becomes the subject of any agreement or proceeding of liquidation or receivership, or actually becomes insolvent;
(5)  If an individual, dies, is adjudged mentally incompetent, is convicted of a felony or disappears and cannot be immediately found by Surety by use of usual methods;
(6)  Breaches, fails to perform, or comply with, any provision of this agreement.

INDEMNITY TO SURETY: Undersigned agree to pay to Surety upon demand:

1.   All loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Undersigned to make arrangements for Surety's legal representation), consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this agreement by any of the Undersigned.

     In addition the Undersigned agree to pay to Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement;
2.   An amount sufficient to discharge any claim made against Surety on any Bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any bond;
3.   Any original, additional or renewal premium due for any bond.

With respect to claims against Surety:

1.   Surety shall have the exclusive right for itself and the Undersigned to determine in good faith whether any claim or suit upon any Bond shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed.
2.   Surety may incur such expenses, including reasonable attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims.
3.   Surety's determination in good faith of the foregoing shall be final and conclusive upon the Undersigned.
4.   An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned.

SURETY'S REMEDIES IN EVENT OF DEFAULT: In event of default by Contractor, Surety shall have the right, at its sole discretion, to:

1.   Take possession of the work under any and all Contracts and to arrange for its completion by others or by the Obligee of any Bond;
2.   Take possession of Contractor's or any of Undersigneds' equipment, materials and supplies at the site of the work, or elsewhere. If needed for prosecution of the work, as well as Contractor's office equipment, books and records, and utilize the same in completion of the work under the Contract without payment of any rental for such use;
3.   Loan or guarantee a loan to Contractor of such money as Surety shall see fit, for the purpose of completing any Contract, or for discharging Contractor's obligations for labor, material, equipment, supplies and other charges, incurred in connection with any contract;
4.   Take such other action as Surety shall deem

Undersigned waive all notice of su... ...fault, of the payment of any claim or of the mak... ...f any loan to Contractor by Surety. Should Undersigned learn of any claim or suit against Contractor, for which Surety may be held liable, Undersigned shall give prompt notice to Surety of such claim or suit.

Separate suits may be brought under this agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety.

**SECURITY TO SURETY:** As collateral security to Surety for the agreement of the Undersigned to repay all loss and expense to Surety, the Undersigned:

1. Assigns to Surety, as of the date of execution of any Bond, all rights of the Contractor in, or in any manner growing out of:
   a. Any Contract or modification thereof;
   b. Any subcontract or purchase order and against any legal entity and its surety who has contracted with Contractor to furnish labor, materials, equipment and supplies in connection with any Contract;
   c. Monies due or to become due Contractor on any Contract, including all monies earned or unearned which are unpaid at the time of notification by Surety to the Obligee of Surety's rights hereunder;
   d. Any actions, causes of action, claims or demands whatsoever which Contractor may have or acquire against any party to the Contract, or arising out of or in connection with any Contract including but not limited to those against obligees and design professionals and any surety or sureties of any obligee, and Surety shall have the full and exclusive right, in its name or in the name of the Contractor, but not the obligation, to prosecute, compromise, release or otherwise resolve such actions, causes of action, claims or demands;
   e. Any and all rights, title, interest in, or use of any patent, copyright or trade secret which is or may be necessary for the completion of any bonded work;
   f. All monies due or to become due to Contractor on any policy of insurance relating to any claims arising out of the performance of any Contract or to premium refunds, including, but not limited to, builders risk, fire, employee dishonesty or workers' compensation policies.

The Surety agrees to forbear exercising the rights granted to it in (a) through (f) until there is a Default under this agreement;

2. Irrevocably nominate and appoint any officer of Surety as the true and lawful attorney-in-fact of the Undersigned, with full right and authority in event of Contractor's default to:
   a. Sign the name of the Undersigned to any voucher, release, satisfaction, check, bill of sale of property referred to herein, or any other paper or contract necessary or desired to carry into effect the purposes of this agreement;
   b. Dispose of performance of any Contract by subletting it in Contractor's name or otherwise;
3. Authorize Surety to join any and all of the Undersigned as parties defendant in any action, regardless of venue, against Surety on account of any Bond, and to enforce the obligations hereunder directly against any of the Undersigned without the necessity of first proceeding against the Contractor;
4. Agree that all monies earned by Contractor under any Contract are trust funds, whether in the possession of Contractor or otherwise, for the benefit of, and for payment of Contractor's obligations for, labor, material, and supplies furnished to Contractor in performance of such Contract for which Surety would be liable under any Bond on such Contract;
5. Agree that this agreement may at any time be completed and filed by Surety in such a manner that it will qualify as a financing statement under the applicable provisions of any statute of any state which has adopted The Uniform Commercial Code, and that Surety may add such schedules to this agreement, describing specific items of security covered hereunder as shall be necessary under such statutes.

**GENERAL PROVISIONS:**

1. Assent by Surety to changes in any Contract or Bond or refusal to assent shall not release or affect the obligations of Undersigned to Surety even though any such assent by the Surety does or might increase the liability of the Undersigned.
2. Surety has the right to decline to execute, provide or procure any bond requested by Contractor. If Surety does execute, provide or procure the execution of a bid bond or proposal bond, or agrees or consents to provide such contract of suretyship, Surety retains the right to decline to execute the final bond (including, but not limited to, performance, payment or maintenance bonds) that may be required in connection with any award that may be made under the bid proposal or tender to which the bid proposal bond or agreement or consent to provide such contract of suretyship is given.
3. Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration and the right of subrogation.
4. Until Surety shall have been furnished with competent evidence of its discharge, without loss from any Bonds, Surety shall have the right to free access at reasonable times to the books, records and accounts of each of the Undersigned for the purpose of examining, copying or reproducing them. Each one of the Undersigned hereby authorizes any depositories in which funds of any of the Undersigned may be deposited to furnish to Surety the amount of such deposits as of any date requested, and any legal entity doing business with the undersigned is authorized to furnish any information requested by Surety concerning any transaction. Surety may furnish in confidence copies of any information, which it now has or may hereafter obtain concerning each of the Undersigned, to other persons or companies for the purpose of procuring co-suretyship or reinsurance or of advising interested persons or companies.
5. The undersigned will, on request of Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, the Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to Surety for the funding of the bonded obligation(s).
6. Undersigned warrant that each of them is specifically and beneficially interested in the obtaining of each Bond.
7. In case the execution hereof by any of the Undersigned may be defective or invalid for any reason, such defect or invalidity shall not in any manner affect the validity of this obligation or the liability hereunder of any other of the Undersigned. Invalidity of any provision of this agreement by reason of the laws of any state or for any other reason shall not render the other provisions hereof invalid.
8. Execution by Contractor or any of the Undersigned of any application for any Bond or of any other agreement of indemnity in behalf of Contractor, or the taking of indemnity of any other person by Surety with respect to any Bond of Contractor, shall in no way be deemed to waive, diminish or abrogate any rights of Surety under this agreement.
9. The Undersigned waive and subordinate all rights of indemnity, subrogation and contribution each against the other until all obligations to the Surety under this agreement, at law or in equity, have been satisfied in full.
10. The rights and remedies afforded to the Surety by the terms of this agreement and the terms themselves may not be waived or modified orally and no written change or modification shall be effective until signed by an employee of the Surety.
11. This agreement is to be liberally construed so as to protect, exonerate and indemnify the Surety.
12. All parties agree that any microfilmed, scanned or electronically digitized copy of this document made by Surety as part of its record

TERMINATION: This agreement is a continuing obligation of the Undersigned unless terminated as provided in this paragraph. An Undersigned desiring to terminate liability as to future Bonds of Contractor must:

1. Give written notice to Surety at Seattle, Washington 98185, by certified or registered mail, of such termination;
2. State in such notice the effective date (not less than thirty days after the receipt of notice by Surety) of termination of such Undersigned's liability for future Bonds.
3. It is understood and agreed that oral notice to or constructive notice to any agent or employee of Surety shall not constitute effective notice of termination under this agreement.

After the effective date of termination, the Undersigned giving notice shall be liable hereunder for:

1. Bonds executed or authorized prior to such date, and renewals and extensions thereof;
2. Bonds executed pursuant to a bid or proposal bond executed or authorized prior to such date, and renewals and extensions thereof.

Such termination of liability as to an Undersigned shall in no way affect the obligation of any other Undersigned who has not given notice as herein provided.

EXECUTED this _15th_ day of _September_ , _2005_

Siciliano, Inc.

Attest: _Mary Kim Lawrence_      By: _____
Mary Kim Lawrence, Secretary      Richard E. Lawrence, President

_Mary Kim Lawrence_      _____
Mary Kim Lawrence, Individually      Richard E. Lawrence, Individually

K& R Properties, Inc.

Attest: _____      By: _Mary Kim Lawrence_
Richard E. Lawrence, Secretary      Mary Kim Lawrence, President

ALL SIGNATURES MUST BE ACKNOWLEDGED.

.5/2005 15:30 FAX 314/211426          ALLIED MID AMERICA                              @005

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Illinois_
COUNTY OF _Sangamon_ } ss.
On this _25th_ day of _Sept_ _2003_ before me personally appeared
_Richard E. Lawrence and Mary Kim Lawrence_ , to me known and known to me to be the person
described in and who executed the foregoing agreement and acknowledged that _they_ executed the same for the purposes, considerations
and uses therein set forth as _their_ free and voluntary act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

OFFICIAL SEAL
DARRELYN COLEASH
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXP. JUNE 28, 2004

Notary Public, residing at _Buffalo IL_
(Commission expires _6/28/04_ )

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____ } ss.
On this _____ day of _____ , before me personally appeared _____
to me known and known to me to be the person
described in and who executed the foregoing agreement and acknowledged that _____ executed the same for the purposes, considerations
and uses therein set forth as _____ free and voluntary act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL)                                    Notary Public, residing at _____
                                          (Commission expires _____ )

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____ } ss.
On this _____ day of _____ , before me personally appeared _____ to me known to be the (a)
_____ of _____ , the Limited Liability Company executing the foregoing instrument, and
acknowledged said instrument to be the free and voluntary act and deed of said Limited Liability Company, for the uses and purposes therein
mentioned and on oath stated _____ signed said instrument by authority of the Limited Liability Company's operating agreement.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

(SEAL)                                    Notary Public, residing at _____
                                          (Commission expires _____ )

## CORPORATE ACKNOWLEDGMENT

STATE OF _Illinois_
COUNTY OF _Sangamon_ } ss.
On this _25th_ day of _Sept_ _2003_ before me personally appeared _____ to me known to be
_Richard E. Lawrence_ and _Mary Kim Lawrence_ and _Secretary_
President
of _Siciliano, Inc._
the corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of said
corporation, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said corporation and that it
was affixed and that _they_ executed said instrument by order of the Board of Directors of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

OFFICIAL SEAL
DARRELYN COLEASH
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXP. JUNE 28, 2004

Notary Public, residing at _Buffalo IL_
(Commission expires _6/28/04_ )

IF ADDITIONAL ACKNOWLEDGEMENTS ARE NEEDED
USE S-802 (INDIVIDUAL) OR S-803 (CORPORATE)

CORPORATE ACKNOWLEDGMENT

TE OF _Illinois_ }
INTY OF _Sangamon_ } ss.

his _25th_ day of _Sept_, _2003_, before me personally appeared
ry _Kim Lawrence_ and _Richard E. Lawrence_, to me known to be
esident_ and _Secretary_ of _K&R Properties, Inc._

corporation executing the above instrument, and acknowledged said instrument to be the free and voluntary act and deed of
corporation, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said
oration and that it was affixed and that _they_ executed said instrument by order of the Board of Directors
aid corporation.

VITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL, the day and year first above written.

Official Seal
DARRELYN GOLEASH
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXP. JUNE 28 2004

_Darrilyn Goleash_
Notary Public, residing at _Riverton Il_
(Commission expires _6/28/04_ )

All parties agree that any microfilmed, scanned or electronically digitized copy of this document made by

10/14/2005  10:10     217-585-1211               SICILIANO INC                          PAGE  12/14

# SICILIANO, Inc.

October 14, 2005

**<u>Sent Via Certified Mail and Facsimile</u>**

Mr. Scott King
Environmental Structures, Inc.
950 Walnut Ridge Drive
Hartland, Wisconsin 53029

|     | RE: | Principal: | Siciliano, Inc. |
| --- | --- | --- | --- |
|     |     | Project: | Contract No. 05-760-01-02200-01 |
|     |     | Surety: | Safeco Insurance Company ("Safeco") |

Dear Mr. King:

This is to advise you that the Siciliano, Inc. ("Siciliano"), the contractor on the above-referenced construction Project, due to circumstances beyond its control is unable to perform or complete the performance of the work or comply with its contractual obligations on the above Project, and is in default under the above Contract for the Project. Therefore, Siciliano hereby voluntarily waives the owners right to declare Siciliano in default as well as Siciliano's right to cure such a default as provided in the contract and Siciliano does hereby abandon and terminates its right to complete the above construction Contract effective upon your receipt of this letter. Our surety, Safeco Insurance Company, will be in contact with you to discuss this matter.

Very truly yours,

Siciliano, Inc.

By: Richard Lawrence, its President

cc:   Ira E. Sussman
      John E. Sebastian



S976213v2 026

# SICILIANO, Inc.

October 14, 2005

**_Sent Via Certified Mail and Facsimile_**

Mr. David Smith
Springfield Public School District 186
Administrative Service Center
530 West Reynolds Street
Springfield, Illinois 62702

|     |            |                                          |
|-----|------------|------------------------------------------|
| RE: | Principal: | Siciliano, Inc.                          |
|     | Project:   | Health/Life Safety Renovations (Phase II) |
|     |            | Butler Elementary School                 |
|     | Surety:    | Safeco Insurance Company ("Safeco")      |

Dear Mr. Smith:

This is to advise you that the Siciliano, Inc. ("Siciliano"), the contractor on the above-referenced construction Project, due to circumstances beyond its control is unable to perform or complete the performance of the work or comply with its contractual obligations on the above Project, and is in default under the above Contract for the Project. Therefore, Siciliano hereby voluntarily waives the owners right to declare Siciliano in default as well as Siciliano's right to cure such a default as provided in the contract and Siciliano does hereby abandon and terminates its right to complete the above construction Contract effective upon your receipt of this letter. Our surety, Safeco Insurance Company, will be in contact with you to discuss this matter.

Very truly yours,

Siciliano, Inc.

By: Richard Lawrence, its President

cc:    Ira E. Sussman
       John E. Sebastian

S9762I8v2 026

# SICILIANO, Inc.

October 14, 2005

***Sent Via Certified Mail and Facsimile***

Mr. Fred Hahn
State of Illinois
Capital Development Board
401 South Spring Street
3rd Floor – William G. Stratton Building
Springfield, Illinois  62706

|  |  |  |
|---|---|---|
| RE: | Principal: | Siciliano, Inc. |
|  | Project: | New Military Education Facility – Camp Lincoln |
|  |  | Contract No. 55-0536-41 |
|  |  | Project No. 546-325-027 |
|  | Surety: | Safeco Insurance Company ("Safeco") |

Dear Mr. Hahn:

This is to advise you that the Siciliano, Inc. ("Siciliano"), the contractor on the above-referenced construction Project, due to circumstances beyond its control is unable to perform or complete the performance of the work or comply with its contractual obligations on the above Project, and is in default under the above Contract for the Project. Therefore, Siciliano hereby voluntarily waives the owners right to declare Siciliano in default as well as Siciliano's right to cure such a default as provided in the contract and Siciliano does hereby abandon and terminates its right to complete the above construction Contract effective upon your receipt of this letter. Our surety, Safeco Insurance Company, will be in contact with you to discuss this matter.

Very truly yours,

Siciliano, Inc.

By: Richard Lawrence, its President

cc:     Ira E. Sussman
        John E. Sebastian

5976218v2.026

FRE 408 COMMUNICATION

## Sysco

### Payments

| | | | | | | |
|---|---|---|---|---|---|---|
| View | 149948 | 10/19/2006 | Cancel Check 48265 | OP. ENGINEERS LOCAL 965 H... | ($50,957.32) | Approved |
| View | 149788 | 10/16/2006 | Check Payme 48276 | OP. ENGINEERS LOCAL 965 H... | $47,143.83 | Approved |
| View | 149752 | 10/13/2006 | Check Payme 48255 | CARPENTERS PENSION AND RE... | $2,893.80 | Approved |
| View | 149766 | 10/13/2006 | Check Payme 48265 | OP. ENGINEERS LOCAL 965 H... | $50,957.32 | Approved |
| View | 148154 | 08/15/2006 | Check Payme 47177 | BRET FARMER | $1,828.00 | Approved |
| View | 147321 | 07/12/2006 | Check Payme 46349 | BARRICK ENTERPRISES, INC. | $424.00 | Approved |
| View | 147131 | 07/05/2006 | Check Payme 46340 | SALLENGER INC. | $7,260.00 | Approved |
| View | 146396 | 06/14/2006 | Cancel Check 46127 | AG-LAND FS. INC. | ($21,050.63) | Approved |
| View | 146040 | 05/24/2006 | Check Payme 46127 | AG-LAND FS, INC. | $21,050.63 | Approved |
| View | 145941 | 05/19/2006 | Check Payme 46122 | AG-LAND FS, INC. | $21,050.63 | Approved |
| View | 145869 | 05/18/2006 | Check Payme 46111 | SALLENGER, INC. | $120,368.60 | Approved |
| View | 145642 | 05/10/2006 | Check Payme 45276 | MATERIAL SERVICE CORPORAT... | $124,139.50 | Approved |
| View | 145399 | 05/03/2006 | Check Payme 45270 | V. GOODMAN TRANSFER &... | $4,720.00 | Approved |
| View | 145313 | 05/02/2006 | Check Payme 45263 | CARRI SCHARF MATERIALS | $4,912.66 | Approved |
| View | 145314 | 05/02/2006 | Check Payme 45264 | V. GOODMAN TRANSFER &... | $15,674.52 | Approved |
| View | 145101 | 04/24/2006 | Check Payme 45187 | PETERSBURG PLUMBING AND H... | $987.00 | Approved |
| View | 144988 | 04/19/2006 | Check Payme 45164 | CENTRAL LABORERS PENSION,... | $15,183.39 | Approved |
| View | 144249 | 03/28/2006 | Check Payme 44666 | COADY SUPPLY COMPANY, INC... | $11,880.00 | Approved |
| View | 144193 | 03/24/2006 | Check Payme 44660 | ROLAND MACHINERY CO., INC... | $1,873.00 | Approved |
| View | 144136 | 03/22/2006 | Check Payme 44652 | PATRICK LEE TRUCKING, INC.... | $7,753.48 | Approved |
| View | 144137 | 03/22/2006 | Check Payme 44651 | BRH BUILDERS & CONSTR... | $13,706.00 | Approved |
| View | 143927 | 03/15/2006 | Check Payme 44694 | SALLENGER, INC. | $60,148.58 | Approved |
| View | 143873 | 03/14/2006 | Check Payme 44576 | GREENE & BRADFORD, IN... | $4,000.00 | Approved |
| View | 143798 | 03/10/2006 | Check Payme 44570 | COUNTY MATERIALS CORP | $3,460.00 | Approved |
| View | 143533 | 03/03/2006 | Check Payme 44468 | W.A. LASCODY TRUCKING, IN... | $3,344.83 | Approved |
| View | 143535 | 03/03/2006 | Check Payme 44466 | CURRY READY MIX OF MASON ... | $2,215.72 | Approved |
| View | 143394 | 02/27/2006 | Check Payme 44427 | HAROLD GOODMAN EXCAVATING... | $3,239.92 | Approved |
| View | 143395 | 02/27/2006 | Check Payme 44428 | CONTRACTOR'S READY MI... | $4,819.93 | Approved |
| View | 143092 | 02/16/2006 | Check Payme 44159 | ALTORFER, INC. | $9,742.00 | Approved |
| View | 143093 | 02/16/2006 | Check Payme 44158 | CURRY READY MIX OF PETERS... | $4,274.60 | Approved |
| View | 142775 | 02/09/2006 | Check Payme 44066 | BEELMAN TRUCK CO. | $1,671.66 | Approved |
| View | 142481 | 01/31/2006 | Check Payme 44003 | V. GOODMAN EXCAVATION | $7,227.50 | Approved |
| View | 142015 | 01/13/2006 | Check Payme 43912 | V. GOODMAN TRANSFER &... | $8,410.00 | Approved |
| View | 141799 | 01/10/2006 | Check Payme 43345 | PATRICK LEE TRUCKING, INC.... | $8,748.55 | Approved |
| View | 141800 | 01/10/2006 | Check Payme 43344 | PATRICK LEE TRUCKING, INC.... | $129,499.71 | Approved |
| View | 141852 | 01/10/2006 | Check Payme 43362 | COADY SUPPLY COMPANY, INC.... | $40,895.29 | Approved |
| View | 141778 | 01/09/2006 | Check Payme 43339 | REMARKABLE LANDSCAPING | $9,920.70 | Approved |
| View | 141744 | 01/06/2006 | Check Payme 43336 | SALLENGER INC. | $229,922.25 | Approved |
| View | 141636 | 01/03/2006 | Check Payme 43280 | ROLAND MACHINERY CO. | $46,468.44 | Approved |
| | | | | Total | $969,806.09 | |

## Receipts

| | | | | | | |
|---|---|---|---|---|---|---|
| View | 150413 | 11/27/2006 | Check Receip 44172 | ENVIRONMENTAL STRUCTURES... | $389,565.98 | Approved |
| View | 149033 | 09/21/2006 | Check Receip 43692 | ENVIRONMENTAL STRUCTURES... | $234,000.00 | Approved |

EXHIBIT 3 — ALL-STATE LEGAL®

| Section | No. | Date | Check/Receipt | Description | Amount | | Status |
|---|---|---|---|---|---|---|---|
| | 140399 | 11/22/2005 | Check Receipt 39464 | ENVIRONMENTAL STRUCTURES,... | $393,009.12 | View | Approved |
| | 139244 | 10/20/2005 | Check Receipt 38637 | ENVIRONMENTAL STRUCTURES,... | $35,492.65 | View | Approved |
| | | | Total | | $1,052,067.75 | | |
| | | | Net Paid | | ($82,281.66) | | |
| Willard Ice Payments | 161035 | 02/12/2008 | Check Payment 54982 | WESTERN WATERPROOFING COM... | $999.97 | View | Approved |
| | 151649 | 01/08/2007 | Check Payment 49635 | TRU-STRIPE | $3,380.00 | View | Approved |
| | 151233 | 12/14/2006 | Check Payment 49531 | TIM MERCIER | $11,246.69 | View | Approved |
| | 149765 | 10/13/2006 | Check Payment 48264 | CARPENTERS PENSION AND RE... | $11,928.59 | View | Approved |
| | 149771 | 10/13/2006 | Check Payment 48270 | OP. ENGINEERS LOCAL 965 H... | $9,357.15 | View | Approved |
| | 147448 | 07/18/2006 | Check Payment 46282 | WESTERN WATERPROOFING COM... | $100,375.20 | View | Approved |
| | 147416 | 07/17/2008 | Cancel Check 6E+06 | WESTERN WATERPROOFING COM... | ($100,375.20) | View | Approved |
| | 146955 | 06/26/2006 | Check Payment 6E+06 | WESTERN WATERPROOFING COM... | $100,375.20 | View | Approved |
| | 146410 | 06/08/2006 | Check Payment 46199 | R.W. BRADLEY | $5,389.96 | View | Approved |
| | 144983 | 04/19/2006 | Check Payment 45159 | CENTRAL LABORERS PENSION,... | $25,571.98 | View | Approved |
| | 144543 | 04/05/2006 | Check Payment 45039 | AMBASSADOR STEEL | $4,730.00 | View | Approved |
| | 144058 | 03/20/2006 | Check Payment 44604 | TOP QUALITY ROOFING COMPA... | $5,300.00 | View | Approved |
| | 143187 | 02/21/2006 | Check Payment 44180 | FOSTER TRUCKING & YOC... | $3,577.75 | View | Approved |
| | 143033 | 02/14/2006 | Check Payment 44152 | HENRY NELCH & SON, CO... | $55,866.43 | View | Approved |
| | | | Total | | $227,723.72 | | |
| Receipts | 160328 | 01/14/2008 | Check Receipt 190412 | FWDB SPECIAL TRUST ACCOUN... | $514,426.00 | View | Approved |
| Net Paid | | | Net paid | | ($286,702.28) | | |
| Forsyth Payments | 150073 | 11/03/2006 | Cancel Check 43916 | BRICK HOLLAND, INC. | ($18,193.50) | View | Approved |
| | 149764 | 10/13/2006 | Check Payment 48263 | CARPENTERS PENSION AND RE... | $5,960.47 | View | Approved |
| | 149776 | 10/13/2006 | Check Payment 48274 | OP. ENGINEERS LOCAL 965 H... | $16,854.22 | View | Approved |
| | 149625 | 10/10/2006 | Check Payment 48244 | KING-LAR COMPANY | $1,755.00 | View | Approved |
| | 148693 | 09/05/2006 | Check Payment 47272 | C&J EXCAVATING, INC. | $514.38 | View | Approved |
| | 146608 | 06/13/2006 | Check Payment 46225 | GENERAL FENCE COMPANY | $377.00 | View | Approved |
| | 146173 | 06/07/2006 | Cancel Check 46126 | KELLEY COMPANIES | ($3,920.00) | View | Approved |
| | 146039 | 05/24/2006 | Check Payment 46126 | KELLEY COMPANIES | $3,920.00 | View | Approved |
| | 145942 | 05/19/2006 | Check Payment 46123 | KELLEY COMPANIES | $3,920.00 | View | Approved |
| | 145839 | 05/17/2006 | Check Payment 46106 | R. GINGERICH CO. | $6,052.75 | View | Approved |
| | 145644 | 05/10/2006 | Check Payment 45277 | CJ DISTRIBUTION | $323.10 | View | Approved |
| | 145396 | 05/03/2006 | Check Payment 45269 | DU-MONT COMPANY | $4,477.24 | View | Approved |
| | 145150 | 04/26/2006 | Check Payment 45190 | ILLINOIS FOREST PRODUCTS | $12,902.00 | View | Approved |
| | 144984 | 04/19/2006 | Check Payment 45160 | CENTRAL LABORERS PENSION,... | $8,314.83 | View | Approved |
| | 144550 | 04/05/2006 | Check Payment 45036 | ROLAND MACHINERY CO., INC... | $863.77 | View | Approved |
| | 144281 | 03/28/2006 | Check Payment 44874 | SECURITY DOOR & HARDW... | $9,848.00 | View | Approved |
| | 144192 | 03/24/2006 | Check Payment 44661 | DUNN COMPANY | $4,847.25 | View | Approved |
| | 144204 | 03/24/2006 | Check Payment 44662 | GENERAL FENCE COMPANY | $32,077.80 | View | Approved |
| | 144134 | 03/22/2006 | Check Payment 44650 | BACON & VAN BUSKIRK G... | $23,017.50 | View | Approved |

| | Check No. | Date | Type | Payee | Amount | Status |
|---|---|---|---|---|---|---|
| View | 143882 | 03/14/2006 | Check Paymei44578 | KING-LAR COMPANY | $33,420.00 | Approved |
| View | 143893 | 03/14/2006 | Check Paymei44580 | DU-MONT COMPANY | $52,740.00 | Approved |
| View | 143532 | 03/03/2006 | Check Paymei44469 | W.A. LASCODY TRUCKING, IN... | $389.00 | Approved |
| View | 143538 | 03/03/2006 | Check Paymei44465 | PRAIRIE MATERIAL SALES, I... | $24,663.38 | Approved |
| View | 142975 | 02/14/2006 | Check Paymei44142 | SUNBELT RENTALS, INC. | $322.96 | Approved |
| View | 142047 | 01/30/2006 | Check Paymei43916 | BRICK HOLLAND, INC. | $18,193.50 | Approved |
| View | 141966 | 01/12/2006 | Check Paymei43907 | ROLAND MACHINERY CO., INC... | $9,939.40 | Approved |
| | | | | Total | $253,550.05 | |

Receipts

| View | 153830 | 04/25/2007 | Check Receipt 32652 | VILLAGE OF FORSYTH, ILLIN... | $227,475.75 | Approved |

Net Paid | $26,074.30

Heyworth Payments

| | Check No. | Date | Type | Payee | Amount | Status |
|---|---|---|---|---|---|---|
| View | 149762 | 10/13/2006 | Check Paymei48262 | CARPENTERS PENSION AND RE... | $122.24 | Approved |
| View | 149772 | 10/13/2006 | Check Paymei48271 | OP. ENGINEERS LOCAL 965 H... | $861.55 | Approved |
| View | 145840 | 05/17/2005 | Check Paymei46107 | R. GINGERICH CO. | $3,175.11 | Approved |
| View | 144928 | 05/02/2006 | Cancal Check 45040 | WATER PRODUCTS COMPANY | ($13,263.00) | Approved |
| View | 145306 | 05/02/2006 | Check Paymei45257 | CARRI SCHARF MATERIALS | $1,097.75 | Approved |
| View | 145307 | 05/02/2006 | Check Paymei45258 | CARRI SCHARF TRUCKING, IN... | $12,122.96 | Approved |
| View | 145040 | 04/20/2006 | Check Paymei45177 | RENTAL SERVICE CORPORATIO... | $3,355.92 | Approved |
| View | 144979 | 04/19/2006 | Check Paymei45157 | CENTRAL LABORERS PENSION,... | $5,719.32 | Approved |
| View | 144541 | 04/05/2006 | Check Paymei45040 | WATER PRODUCTS COMPANY | $13,263.00 | Approved |
| View | 144244 | 03/28/2006 | Check Paymei44671 | CHICAGO TUBE & IRON | $799.20 | Approved |
| View | 144245 | 03/28/2006 | Check Paymei44670 | COUNTY MATERIALS CORPORAT... | $200.00 | Approved |
| View | 144087 | 03/21/2006 | Check Paymei44626 | WATER PRODUCTS COMPANY | $13,263.00 | Approved |
| View | 143835 | 03/13/2006 | Check Paymei44571 | WILLIAM MASTERS, INC. | $21,950.00 | Approved |
| | | | | Total | $62,687.05 | |

Receipts | None

Net Paid | $62,667.05

Chandlerville Rd Payments

| | Check No. | Date | Type | Payee | Amount | Status |
|---|---|---|---|---|---|---|
| View | 160088 | 01/02/2008 | Check Paymei54876 | JANSEN ELECTRIC CO. | $577.50 | Approved |
| View | 149757 | 10/13/2006 | Check Paymei48259 | CARPENTERS PENSION AND RE... | $1,463.07 | Approved |
| View | 149769 | 10/13/2006 | Check Paymei48268 | OP. ENGINEERS LOCAL 965 H... | $5,611.22 | Approved |
| View | 147947 | 08/08/2006 | Check Paymei47142 | R.W. BRADLEY | $1,139.27 | Approved |
| View | 145151 | 04/26/2006 | Check Paymei45191 | ILLINOIS FOREST PRODUCTS | $560.00 | Approved |
| View | 144980 | 04/19/2006 | Check Paymei45158 | CENTRAL LABORERS PENSION,... | $6,712.39 | Approved |
| View | 145005 | 04/19/2006 | Check Paymei45176 | A.C. JONES TRUCKING, INC. | $10,126.25 | Approved |
| View | 144694 | 04/12/2006 | Check Paymei45105 | ALEXANDER LUMBER COMPANY | $2,473.56 | Approved |
| View | 144547 | 04/05/2006 | Check Paymei45037 | METAL CULVERTS | $188.92 | Approved |
| View | 144246 | 03/28/2006 | Check Paymei44669 | CHICAGO TUBE & IRON | $329.28 | Approved |
| View | 144203 | 03/24/2006 | Check Paymei44663 | JANSEN ELECTRIC CO. | $5,197.50 | Approved |
| View | 144057 | 03/20/2006 | Check Paymei44605 | ILLINOIS FOREST PRODUCTS | $1,400.00 | Approved |
| View | 144059 | 03/20/2006 | Check Paymei44603 | CALLENDER CONSTRUCTION CO... | $3,259.67 | Approved |
| View | 144001 | 03/17/2006 | Check Paymei44601 | VANDEVANTER ENGINEERING | $3,085.40 | Approved |
| View | 143459 | 03/01/2006 | Check Paymei44437 | COMMUNITY READY MIX OF BE... | $2,408.37 | Approved |
| View | 142483 | 01/31/2006 | Check Paymei44005 | COADY SUPPLY CO., INC. | $728.00 | Approved |

| Receipts | View | | | | | Total | Approved |
|---|---|---|---|---|---|---|---|
| | View | 150772 | 12/05/2006 | Check Receipt 19694 | CITY OF BEARDSTOWN | $45,281.40 | Approved |
| | | | | | | $17,549.02 | |
| | | | | | Net paid | $27,732.38 | |

| Butler School Payments | View | | | | | | |
|---|---|---|---|---|---|---|---|
| | View | 153470 | 04/04/2007 | Check Payme 50100 | OP. PLASTERS & CEMENT... | $24,483.58 | Approved |
| | View | 153472 | 04/04/2007 | Check Payme 50101 | IL. STATE PAINTERS HEALTH... | $16,765.86 | Approved |
| | View | 152595 | 02/21/2007 | Check Payme 49770 | EVANS CONSTRUCTION COMPAN... | $8,000.00 | Approved |
| | View | 151619 | 01/08/2007 | Check Payme 49614 | EVANS CONSTRUCTION COMPAN... | $8,000.00 | Approved |
| | View | 151236 | 12/14/2006 | Check Payme 49532 | EVANS CONSTRUCTION COMPAN... | $42,699.11 | Approved |
| | View | 150984 | 12/06/2006 | Check Payme 48486 | EVANS CONSTRUCTION COMPAN... | $42,699.11 | Approved |
| | View | 149750 | 10/13/2006 | Check Payme 48253 | CARPENTERS PENSION AND RE... | $29,500.10 | Approved |
| | View | 149773 | 10/13/2006 | Check Payme 48272 | OP. ENGINEERS LOCAL 965 H... | $252.14 | Approved |
| | View | 149117 | 09/20/2006 | Check Payme 47332 | EVANS CONSTRUCTION COMPAN... | $203,172.80 | Approved |
| | View | 148626 | 09/01/2006 | Check Payme 47260 | PROGRESSIVE ELECTRIC | $40.25 | Approved |
| | View | 147997 | 08/15/2006 | Cancel Check 47141 | EVANS CONSTRUCTION COMPAN... | ($146,812.32) | Approved |
| | View | 147946 | 08/08/2006 | Check Payme 47141 | EVANS CONSTRUCTION COMPAN... | $146,812.32 | Approved |
| | View | 147824 | 08/02/2006 | Check Payme 47137 | EVANS CONSTRUCTION COMPAN... | $146,812.32 | Approved |
| | View | 147443 | 07/26/2006 | Cancel Check 41647 | SMITH HARDWOOD PRODUCTS, ... | ($175.00) | Approved |
| | View | 147583 | 07/24/2006 | Check Payme 46390 | EVANS CONSTRUCTION COMPAN... | $106,306.90 | Approved |
| | View | 144978 | 04/19/2006 | Check Payme 46158 | CENTRAL LABORERS PENSION... | $7,148.60 | Approved |
| | View | 144780 | 04/14/2006 | Check Payme 45122 | PETERSBURG PLUMBING AND H... | $5,933.00 | Approved |
| | View | 141403 | 12/21/2005 | Check Payme 43251 | PETERSBURG PLUMBING &... | $236,756.95 | Approved |
| | View | 141404 | 12/21/2005 | Check Payme 43252 | PROGRESSIVE ELECTRIC | $34,987.55 | Approved |
| | View | 141405 | 12/21/2005 | Check Payme 43254 | AMCO FENCE COMPANY, INC. | $3,870.00 | Approved |
| | View | 141407 | 12/21/2005 | Check Payme 43253 | NEGWER DOOR SYSTEMS | $55.00 | Approved |
| | View | 139270 | 10/19/2005 | Check Payme 41643 | AMCO FENCE | $2,350.00 | Approved |
| | View | 139271 | 10/19/2005 | Check Payme 41642 | ATLAS CONCRETE PRODUCTS | $292.90 | Approved |
| | View | 139272 | 10/19/2005 | Check Payme 41641 | FASTENAL COMPANY | $1,493.41 | Approved |
| | View | 139273 | 10/19/2005 | Check Payme 41640 | MERVIS IRON & SUPPLY | $2,137.50 | Approved |
| | View | 139274 | 10/19/2005 | Check Payme 41639 | DON SMITH PAINT | $1,188.83 | Approved |
| | View | 139275 | 10/19/2005 | Check Payme 41638 | ARROW TRAILER & EQUIP... | $2,210.00 | Approved |
| | View | 139276 | 10/19/2005 | Check Payme 41637 | BANSAL OCCUPATIONAL SOLUT... | $80.00 | Approved |
| | View | 139277 | 10/19/2005 | Check Payme 41636 | R.W. BRADLEY SUPPLY CO. | $124.11 | Approved |
| | View | 139278 | 10/19/2005 | Check Payme 41635 | BIG R OF SPRINGFIELD | $60.84 | Approved |
| | View | 139279 | 10/19/2005 | Check Payme 41634 | P.H. BROUGHTON & SONS... | $306.45 | Approved |
| | View | 139280 | 10/19/2005 | Check Payme 41633 | COADY COMPANY | $30.00 | Approved |
| | View | 139282 | 10/19/2005 | Check Payme 41657 | CONTRACTORS LUMBER CITY | $1,094.94 | Approved |
| | View | 139283 | 10/19/2005 | Check Payme 41656 | DECATUR BOLT COMPANY | $45.29 | Approved |
| | View | 139284 | 10/19/2005 | Check Payme 41655 | FLOWERS SANITATION | $2,880.80 | Approved |
| | View | 139285 | 10/19/2005 | Check Payme 41654 | ILMO PRODUCTS, CO. | $262.44 | Approved |
| | View | 139287 | 10/19/2005 | Check Payme 41653 | JAMES MACHINERY | $1,669.23 | Approved |
| | View | 139288 | 10/19/2005 | Check Payme 41652 | NOONAN TRUE VALUE | $68.08 | Approved |
| | View | 139288 | 10/19/2005 | Check Payme 41651 | NUDO PRODUCTS, INC. | $46.40 | Approved |
| | View | 139290 | 10/19/2005 | Check Payme 41650 | NELCH CONCRETE | $1,073.04 | Approved |
| | View | 139291 | 10/19/2005 | Check Payme 41649 | ROYAL CARPET SUPPLIES | $49.25 | Approved |

| | Ref | Date | Type | Payee | Amount | Status |
|---|---|---|---|---|---|---|
| View | 139292 | 10/19/2005 | Check Payment 41648 | SHERWIN WILLIAMS CO. | $87.96 | Approved |
| View | 139293 | 10/19/2005 | Check Payment 41647 | SMITH HARDWOOD PRODUCTS,... | $175.00 | Approved |
| View | 139294 | 10/19/2005 | Check Payment 41646 | TOP QUALITY ROOFING COMPA... | $3,600.00 | Approved |
| View | 139285 | 10/19/2005 | Check Payment 41645 | TRIAD INDUSTRIAL SUPPLY | $20.19 | Approved |
| View | 139296 | 10/19/2005 | Check Payment 41644 | ZEE MEDICAL | $241.12 | Approved |
| View | 139088 | 10/12/2005 | Check Payment 41580 | NEWGER MATERIALS | $29,313.90 | Approved |
| View | 139089 | 10/12/2005 | Check Payment 41579 | PETERSBURG PLUMBING &... | $402,270.30 | Approved |
| View | 139090 | 10/12/2005 | Check Payment 41578 | PROGRESSIVE ELECTRIC | $175,458.18 | Approved |
| | | | | Total | $1,546,938.43 | |

**Receipts**

| | Ref | Date | Type | Payee | Amount | Status |
|---|---|---|---|---|---|---|
| View | 156050 | 07/25/2007 | Transfer Receipt | | $50,599.11 | Approved |
| View | 151740 | 01/18/2007 | Check Receipt 65073 | SPRINGFIELD PUBLIC SCHOOL... | $8,030.00 | Approved |
| View | 149898 | 10/20/2006 | Check Receipt 64640 | SPRINGFIELD PUBLIC SCHOOL... | $133,504.53 | Approved |
| View | 149036 | 09/21/2006 | Check Receipt 64444 | SPRINGFIELD PUBLIC SCHOOL... | $133,222.19 | Approved |
| View | 147798 | 08/08/2006 | Check Receipt 64087 | SPRINGFIELD PUBLIC SCHOOL... | $148,572.80 | Approved |
| View | 147427 | 07/24/2006 | Check Receipt 63955 | SPRINGFIELD PUBLIC SCHOOL... | $69,078.48 | Approved |
| View | 141398 | 12/23/2005 | Wire Receipt | SPRINGFIELD PUBLIC SCHOOL... | $383,113.25 | Approved |
| View | 139104 | 10/19/2005 | Wire Receipt | SICILIANO, INC. | $754,692.69 | Approved |
| | | | | Total | $1,680,913.25 | |
| | | | | Net Paid | ($134,974.82) | |

**SMISD Spec. asses Payments**

| | Ref | Date | Type | Payee | Amount | Status |
|---|---|---|---|---|---|---|
| View | 151070 | 12/14/2006 | Check Payment 49514 | TIM MERCIER | $1,175.00 | Approved |
| View | 149756 | 10/13/2006 | Check Payment 48268 | CARPENTERS PENSION AND RE... | $867.06 | Approved |
| View | 149770 | 10/13/2006 | Check Payment 48269 | OP. ENGINEERS LOCAL 965 H... | $10,656.69 | Approved |
| View | 147948 | 08/08/2006 | Check Payment 47143 | R.W. BRADLEY | $1,105.54 | Approved |
| View | 146667 | 06/19/2006 | Check Payment 46242 | CLEAR LAKE SAND AND GRAVE... | $1,710.30 | Approved |
| View | 145641 | 05/10/2006 | Check Payment 45275 | MATERIAL SERVICE CORPORAT... | $1,121.40 | Approved |
| View | 144985 | 04/19/2006 | Check Payment 45161 | CENTRAL LABORERS PENSION... | $18,963.31 | Approved |
| View | 143534 | 03/03/2006 | Check Payment 44487 | W.A. LASCODY TRUCKING, IN... | $689.31 | Approved |
| View | 142464 | 01/31/2006 | Check Payment 44006 | COADY SUPPLY CO. INC. | $4,600.69 | Approved |
| | | | | Total | $40,689.30 | |

**Receipts**

| | Ref | Date | Type | Payee | Amount | Status |
|---|---|---|---|---|---|---|
| View | 154399 | 06/04/2007 | Check Receipt 516 | SPRINGFIELD METRO SANITAR... | $4,600.69 | Approved |
| View | 154400 | 06/04/2007 | Check Receipt 515 | SPRINGFIELD METRO SANITAR... | $1,710.30 | Approved |
| View | 154401 | 06/04/2007 | Check Receipt 514 | SPRINGFIELD METRO SANITAR... | $18,963.31 | Approved |
| View | 154402 | 06/04/2007 | Check Receipt 513 | SPRINGFIELD METRO SANITAR... | $689.31 | Approved |
| View | 154403 | 06/04/2007 | Check Receipt 512 | SPRINGFIELD METRO SANITAR... | $1,121.40 | Approved |
| | | | | Total | $27,085.01 | |
| | | | | Net Paid | $13,604.29 | |

| | | | | Amount | Total | Status |
|---|---|---|---|---|---|---|
| **Peoria Road Payments** | View | 150249 | 11/02/2006 | TIM MERCIER | $2,350.00 | | Approved |
| | View | 149755 | 10/13/2006 | CARPENTERS PENSION AND RE... | $839.44 | | Approved |
| | View | 149768 | 10/13/2006 | OP. ENGINEER'S LOCAL 965 H... | $3,396.17 | | Approved |
| | View | 146885 | 06/19/2006 | CLEAR LAKE SAND AND GRAVE... | $623.79 | | Approved |
| | View | 146585 | 04/19/2006 | CENTRAL LABORERS PENSION,... | $11,592.98 | | Approved |
| | View | 144056 | 03/20/2006 | ILLINOIS FOREST PRODUCTS | $1,000.00 | | Approved |
| | View | 142978 | 02/14/2006 | SUNBELT RENTALS | $342.50 | | Approved |
| | | | | total | $20,144.86 | | Approved |
| | | | | | | | |
| **Receipts** | View | 153811 | 04/25/2007 | CITY OF SPRINGFIELD | | $13,559.25 | Approved |
| | | | | Net paid | $6,585.61 | | |
| | | | | | | | |
| **6th St. Sewer Payments** | View | 150248 | 11/02/2006 | TIM MERCIER | $10,400.00 | | Approved |
| | View | 149753 | 10/13/2006 | CARPENTERS PENSION AND RE... | $629.58 | | Approved |
| | View | 149767 | 10/13/2008 | OP. ENGINEER'S LOCAL 965 H... | $9,743.45 | | Approved |
| | View | 146954 | 06/29/2006 | CLEAR LAKE SAND AND GRAVE... | $60.00 | | Approved |
| | View | 146688 | 06/19/2006 | CLEAR LAKE SAND AND GRAVE... | $1,104.81 | | Approved |
| | View | 146411 | 06/08/2006 | R.W. BRADLEY | $408.16 | | Approved |
| | View | 146200 | 04/19/2006 | CENTRAL LABORERS PENSION,... | $5,704.60 | | Approved |
| | View | 145183 | | | | | |
| | View | 144987 | 03/28/2006 | COUNTY MATERIALS CORPORAT... | $8,255.20 | | Approved |
| | View | 144247 | | | | | |
| | View | 144471 | | W.A. LASCODY TRUCKING, IN... | $873.61 | | Approved |
| | View | 143530 | 03/03/2006 | Henry Nelch & Son Co. | $25,353.90 | | Approved |
| | View | 143065 | 02/15/2006 | COADY SUPPLY CO. | $6,581.01 | | Approved |
| | View | 142485 | 01/31/2006 | | | | |
| | | | | Total | $69,114.32 | | |
| | | | | | | | |
| **Receipts** | View | 154398 | 06/04/2007 | CITY OF SPRINGFIELD | | $48,341.29 | Approved |
| | | | | Net Paid | $20,773.03 | | |
| | | | | | | | |
| **New Berlin Payments** | View | 149761 | 10/13/2006 | CARPENTERS PENSION AND RE... | $1,808.72 | | Approved |
| | | | | | | | |
| **Receipts** | View | 156050 | 07/25/2007 | COMMUNITY UNIT SCHOOL DIS... | | ($50,699.11) | Approved |
| | View | 154504 | 06/04/2007 | EVANS CONSTRUCTION COMPAN... | | $1,808.72 | Approved |
| | View | 154180 | 05/15/2007 | | | $50,699.11 | Approved |
| | | | | Net paid | Total ($0.00) | $1,808.72 | |
| | | | | | | | |
| **Charleston Canopy payments** | View | 149759 | 10/13/2006 | CARPENTERS PENSION AND RE... | $299.80 | | Approved |
| | | | | | | | |
| **Receipts** | None | | | Net Paid | $299.80 | | |

Approved

$239.84

$239.84

CARPENTERS PENSION AND RE...

Check Payme 48252

Net Paid

149749   10/13/2006

View

IDOT Roof
Payments

| | | | | | | |
|---|---|---|---|---|---|---|
| View | 163609 | 05/19/20C Check Pay 56755 | SAFECO INSURANCE COMPANY ... | $680.09 | Travel | Approved |
| View | 163519 | 05/16/20C Check Pay 56729 | HINSHAW & CULBERTSON ... | $2,028.20 | Legal Fees Y | Approved |
| View | 163060 | 05/01/20C Check Pay 55993 | BRH BUILDERS AND DESIGN R... | $28,000.00 | | Approved |
| View | 162834 | 04/24/20C Check Pay 55974 | Construction Consulting a... | $4,385.68 | Consultant Y | Approved |
| View | 162835 | 04/24/20C Check Pay 55975 | Construction Consulting a... | $4,230.07 | Consultant Y | Approved |
| View | 162451 | 04/21/20C Cancel Ch 55928 | BRH BUILDERS AND PEDIGO S... | ($12,434.00) | | Approved |
| View | 162566 | 04/16/20C Check Pay 55961 | PEDIGO SOD AND BRH BUILDE... | $1,354.75 | | Approved |
| View | 162567 | 04/16/20C Check Pay 55962 | PEDIGO SOD AND BRH BUILDE... | $12,434.00 | | Approved |
| View | 162105 | 04/01/20C Check Pay 55919 | BRH BUILDERS AND ADAMS DO... | $919.60 | | Approved |
| View | 162106 | 04/01/20C Check Pay 55920 | BRH BUILDERS AND BEST CLE... | $7,616.00 | | Approved |
| View | 162107 | 04/01/20C Check Pay 55921 | BRH BUILDERS AND DESIGN R... | $28,374.50 | | Approved |
| View | 162108 | 04/01/20C Check Pay 55922 | BRH BUILDERS AND DIEBOLD | $965.50 | | Approved |
| View | 162109 | 04/01/20C Check Pay 55923 | BRH BUILDERS AND DYNAMIC ... | $3,964.50 | | Approved |
| View | 162110 | 04/01/20C Check Pay 55924 | BRH BUILDERS AND LARSON E... | $3,759.60 | | Approved |
| View | 162111 | 04/01/20C Check Pay 55925 | BRH BUILDERS AND LONG ELE... | $2,946.00 | | Approved |
| View | 162112 | 04/01/20C Check Pay 55926 | LONG ELEVATOR | $698.00 | | Approved |
| View | 162113 | 04/01/20C Check Pay 55927 | BRH BUILDERS AND MOORE GL... | $2,503.20 | | Approved |
| View | 162114 | 04/01/20C Check Pay 55928 | BRH BUILDERS AND PEDIGO S... | $12,434.00 | | Approved |
| View | 162116 | 04/01/20C Check Pay 55929 | BRH BUILDERS AND PH BROUG... | $10,390.12 | | Approved |
| View | 162117 | 04/01/20C Check Pay 55930 | BRH BUILDERS AND RAY... | $250.00 | | Approved |
| View | 162118 | 04/01/20C Check Pay 55931 | BRH BUILDERS AND RAVENSBU... | $2,598.00 | | Approved |
| View | 162119 | 04/01/20C Check Pay 55932 | BRH BUILDERS AND WAREHOUS... | $1,800.00 | | Approved |
| View | 161971 | 03/25/20C Check Pay 55892 | BRH BUILDERS AND GREAT LA... | $10,000.00 | | Approved |
| View | 161982 | 03/25/20C Check Pay 55901 | BRH BUILDERS AND GREAT LA... | $3,789.00 | | Approved |
| View | 161853 | 03/19/20C Check Pay 55886 | Construction Consulting a... | $6,089.58 | Consultant Y | Approved |
| View | 161770 | 03/14/20C Check Pay 55875 | HINSHAW & CULBERTSON ... | $6,171.56 | Legal Fees Y | Approved |
| View | 161629 | 03/12/20C Check Pay 55853 | BRH AND DAVIS PLUMBING | $35,941.80 | | Approved |
| View | 161630 | 03/12/20C Check Pay 55854 | IRONWORKERS STL DIST COUN... | $4,183.37 | | Approved |
| View | 161632 | 03/12/20C Check Pay 55855 | BRH BUILDERS AND WESTERN ... | $8,970.00 | | Approved |
| View | 161634 | 03/12/20C Check Pay 55856 | BRH AND COMMERCIAL FLOOR ... | $39,288.96 | | Approved |
| View | 161386 | 03/04/20C Cancel Ch 54995 | Iron Workers STL Dist Cou... | ($39,086.34) | | Approved |
| View | 161058 | 02/21/20C Cancel Ch 51397 | BRH AND ACE HARDWARE | ($347.92) | | Approved |
| View | 160858 | 02/14/20C Cancel Ch 54946 | BRH BUILDERS & CONSTR... | ($34,341.00) | | Approved |
| View | 161059 | 02/14/20C Stop Chec 51395 | BRH BUILDERS AND FLOWERS ... | ($501.30) | | Approved |
| View | 161064 | 02/13/20C Check Pay 54995 | Iron Workers STL Dist Cou... | $39,086.34 | | Approved |
| View | 161050 | 02/12/20C Check Pay 54994 | HINSHAW & CULBERTSON ... | $5,399.32 | Legal Fees Y | Approved |
| View | 160860 | 02/04/20C Check Pay 54967 | BRH BUILDERS AND MIKE DAV... | $34,341.00 | | Approved |
| View | 160629 | 01/23/20C Check Pay 54946 | BRH BUILDERS & CONSTR... | $34,341.00 | | Approved |
| View | 160524 | 01/18/20C Check Pay 54935 | CONSTRUCTION CONSULTING A... | $907.10 | Consultant Y | Approved |
| View | 160525 | 01/18/20C Check Pay 54936 | CONSTRUCTION CONSULTING A... | $823.50 | Consultant Y | Approved |
| View | 160488 | 01/17/20C Check Pay 54925 | BRH AND SANDBURG COMPANY | $2,145.00 | | Approved |

| | Check # | Date / Type / Seq | Payee | Amount | Category | Status |
|---|---|---|---|---|---|---|
| View | 160348 | 01/11/20 Check Pay 54916 | HINSHAW & CULBERTSON ... | $4,703.14 | Legal Fees Y | Approved |
| View | 160061 | 01/03/20 Check Pay 54871 | HINSHAW & CULBERTSON ... | $11,737.30 | Legal Fees Y | Approved |
| View | 159440 | 12/07/20 Check Pay 54810 | CONSTRUCTION CONSULTING A... | $30,715.32 | Consultant Y | Approved |
| View | 159395 | 12/06/20 Check Pay 54803 | BRH BUILDERS | $149,244.11 | | Approved |
| View | 158986 | 11/14/20 Check Pay 53949 | HINSHAW & CULBERTSON ... | $7,182.60 | Legal Fees Y | Approved |
| View | 158467 | 10/25/20 Check Pay 53837 | HINSHAW & CULBERTSON ... | $2,903.20 | Legal Fees Y | Approved |
| View | 158321 | 10/19/20 Check Pay 53827 | BOUNDS FIBERGLASS | $5,940.00 | | Approved |
| View | 158025 | 10/11/20 Check Pay 52778 | BRH BUILDERS AND NEGWER M... | $215.78 | | Approved |
| View | 158026 | 10/11/20 Check Pay 52779 | BRH BUILDERS AND MIDWEST ... | $703.80 | | Approved |
| View | 158027 | 10/11/20 Check Pay 52780 | BRH BUILDERS AND ACUDOR P... | $671.06 | | Approved |
| View | 158028 | 10/11/20 Check Pay 52781 | BRH AND ACE HARDWARE | $160.05 | | Approved |
| View | 158029 | 10/11/20 Check Pay 52782 | BRH BUILDERS AND WAREHOUS... | $16,200.00 | | Approved |
| View | 158030 | 10/11/20 Check Pay 52783 | BRH AND SANDBURG COMPANY | $2,145.00 | | Approved |
| View | 158031 | 10/11/20 Check Pay 52784 | BRH AND RW BRADLEY | $1,140.00 | | Approved |
| View | 158032 | 10/11/20 Check Pay 52785 | BRH AND REDBUD RIDGE | $14,355.00 | | Approved |
| View | 158033 | 10/11/20 Check Pay 52786 | BRH BUILDERS AND PH BROUG... | $62,672.62 | | Approved |
| View | 158034 | 10/11/20 Check Pay 52787 | BRH BUILDERS AND MIKE DAV... | $3,242.50 | | Approved |
| View | 158035 | 10/11/20 Check Pay 52788 | BRH BUILDERS AND HENRY NE... | $3,277.92 | | Approved |
| View | 158036 | 10/11/20 Check Pay 52789 | BRH BUILDERS AND GREAT LA... | $666.45 | | Approved |
| View | 158037 | 10/11/20 Check Pay 52790 | BRH BUILDERS AND DYNAMIC ... | $35,680.50 | | Approved |
| View | 158038 | 10/11/20 Check Pay 52791 | BRH BUILDERS AND DIEBOLD... | $8,689.50 | | Approved |
| View | 158039 | 10/11/20 Check Pay 52792 | BRH BUILDERS AND DAVIS PA... | $29,620.80 | | Approved |
| View | 158040 | 10/11/20 Check Pay 52793 | BRH BUILDERS AND DALE WIL... | $1,746.25 | | Approved |
| View | 158041 | 10/11/20 Check Pay 52794 | BRH AND CONTRACTOR'S ... | $1,715.09 | | Approved |
| View | 158042 | 10/11/20 Check Pay 52795 | BRH BUILDERS AND CONSTRUC... | $3,159.99 | | Approved |
| View | 158043 | 10/11/20 Check Pay 52796 | BRH AND COMMERCIAL FLOOR... | $66,625.12 | | Approved |
| View | 158044 | 10/11/20 Check Pay 52797 | BRH BUILDERS AND BEST CLE... | $16,956.00 | | Approved |
| View | 158045 | 10/11/20 Check Pay 52798 | BRH BUILDERS AND ADAMS DO... | $6,276.40 | | Approved |
| View | 157550 | 10/03/20 Check Pay 52717 | CONSTRUCTION CONSULTING A... | $16,598.91 | Consultant Y | Approved |
| View | 157567 | 09/24/20 Check Pay 52724 | HINSHAW & CULBERTSON ... | $9,560.10 | Legal Fees Y | Approved |
| View | 157035 | 09/04/20 Check Pay 52654 | CONSTRUCTION CONSULTING A... | $14,764.22 | Consultant Y | Approved |
| View | 156800 | 08/27/20 Check Pay 52622 | BRH BUILDERS & CONSTR... | $92,425.63 | | Approved |
| View | 156600 | 08/16/20 Stop Checl 51393 | BRH BUILDERS & CONSTR... | ($133,470.73) | | Approved |
| View | 156542 | 08/14/20 Check Pay 52601 | HINSHAW & CULBERTSON ... | $8,986.70 | Legal Fees Y | Approved |
| View | 156087 | 07/26/20 Check Pay 51431 | HINSHAW & CULBERTSON ... | $2,186.90 | Legal Fees Y | Approved |
| View | 155947 | 07/24/20 Check Pay 51393 | BRH BUILDERS & CONSTR... | $133,470.73 | | Approved |
| View | 155949 | 07/24/20 Check Pay 51394 | BRH BUILDERS AND JAMES MA... | $115.29 | | Approved |
| View | 155954 | 07/24/20 Check Pay 51395 | BRH BUILDERS AND FLOWERS ... | $501.30 | | Approved |
| View | 155955 | 07/24/20 Check Pay 51396 | BRH BUILDERS AND FASTENAL | $529.70 | | Approved |
| View | 155856 | 07/24/20 Check Pay 51397 | BRH AND ACE HARDWARE | $347.92 | | Approved |
| View | 155857 | 07/24/20 Check Pay 51398 | BRH BUILDERS AND TRANSPOR... | $1,879.00 | | Approved |
| View | 155956 | 07/24/20 Check Pay 51399 | BRH BUILDERS AND PATRICK ... | $1,275.00 | | Approved |
| View | 155957 | 07/24/20 Check Pay 51400 | BRH BUILDERS AND NEGWER M... | $20,128.83 | | Approved |

| View | Number | Date / Description | Payee | Note | Amount | Status |
|---|---|---|---|---|---|---|
| View | 155988 | 07/24/20C Check Pay 51401 | BRH BUILDERS AND MATHIS K... | | $2,611.34 | Approved |
| View | 155969 | 07/24/20C Check Pay 51402 | BRH BUILDERS AND LARSON | | $33,836.40 | Approved |
| View | 155970 | 07/24/20C Check Pay 51403 | BRH BUILDERS AND JOHN DEE... | | $5,131.70 | Approved |
| View | 155971 | 07/24/20C Check Pay 51404 | BRH BUILDERS AND HILTI, I... | | $1,250.15 | Approved |
| View | 155973 | 07/24/20C Check Pay 51405 | BRH BUILDERS AND GREAT LA... | | $2,473.20 | Approved |
| View | 155974 | 07/24/20C Check Pay 51406 | BRH BUILDERS AND DESIGNED... | | $22,293.40 | Approved |
| View | 155975 | 07/24/20C Check Pay 51407 | BRH AND DAVIS PAINTING | | $36,942.30 | Approved |
| View | 155976 | 07/24/20C Check Pay 51408 | BRH BUILDERS AND CRANE CR... | | $5,977.79 | Approved |
| View | 155977 | 07/24/20C Check Pay 51409 | BRH AND COMMERCIAL FLOOR | | $27,337.50 | Approved |
| View | 155978 | 07/24/20C Check Pay 51410 | CONSTRUCTION CONSULTING A... | Consultant Y | $12,974.88 | Approved |
| View | 155797 | 07/18/20C Check Pay 51361 | BRH AND COMMERCIAL FLOOR | | $58,335.09 | Approved |
| View | 155798 | 07/17/20C Check Pay 51362 | BRH BUILDERS AND DALE WIL... | | $1,941.82 | Approved |
| View | 155799 | 07/17/20C Check Pay 51363 | BRH BUILDERS AND DAL-TILE... | | $1,017.02 | Approved |
| View | 155800 | 07/17/20C Check Pay 51364 | BRH AND DAVIS PAINTING | | $38,828.70 | Approved |
| View | 155801 | 07/17/20C Check Pay 51365 | BRH BUILDERS AND GREAT LA... | | $30,458.99 | Approved |
| View | 155802 | 07/17/20C Check Pay 51366 | BRH BUILDERS AND JM BURKE | | $1,000.00 | Approved |
| View | 155803 | 07/17/20C Check Pay 51367 | BRH AND LONG ELEVATOR | | $19,899.00 | Approved |
| View | 155804 | 07/17/20C Check Pay 51368 | BRH BUILDERS AND MATHIS K... | | $2,744.97 | Approved |
| View | 155805 | 07/17/20C Check Pay 51369 | BRH BUILDERS AND MOORE GL... | | $13,158.00 | Approved |
| View | 155808 | 07/17/20C Check Pay 51370 | BRH BUILDERS AND NEGWER M... | | $32,538.89 | Approved |
| View | 155807 | 07/17/20C Check Pay 51371 | BRH AND POLYVISON | | $7,400.00 | Approved |
| View | 155808 | 07/17/20C Check Pay 51372 | BRH AND REDBUD RIDGE | | $21,265.00 | Approved |
| View | 155809 | 07/17/20C Check Pay 51373 | BRH AND SANDBURG COMPANY | | $17,534.87 | Approved |
| View | 155810 | 07/17/20C Check Pay 51374 | BRH AND TRANSPORTATION AL... | | $4,088.00 | Approved |
| View | 155811 | 07/17/20C Check Pay 51375 | BRH AND ACE HARDWARE | | $334.39 | Approved |
| View | 155812 | 07/17/20C Check Pay 51376 | BRH AND CONTRACTOR'S ... | | $12.00 | Approved |
| View | 155814 | 07/17/20C Check Pay 51377 | BRH AND PSI | | $759.90 | Approved |
| View | 155815 | 07/17/20C Check Pay 51378 | BRH AND RW BRADLEY | | $531.08 | Approved |
| View | 155817 | 07/17/20C Check Pay 51379 | BRH BUILDERS AND VERNON L... | | $800.00 | Approved |
| View | 155493 | 07/06/20C Check Pay 51341 | HINSHAW & CULBERTSON ... | Legal Fees Y | $3,084.20 | Approved |
| View | 154927 | 06/12/20C Check Pay 50272 | BRH BUILDERS | | $35,001.13 | Approved |
| View | 154932 | 06/12/20C Check Pay 50277 | CONSTRUCTION CONSULTING A... | Consultant Y | $8,316.00 | Approved |
| View | 154608 | 05/29/20C Check Pay 50235 | CONSTRUCTION CONSULTING A... | Consultant Y | $22,482.96 | Approved |
| View | 154581 | 05/23/20C Check Pay 50225 | HINSHAW & CULBERTSON ... | Legal Fees Y | $3,453.30 | Approved |
| View | 154582 | 05/23/20C Check Pay 50226 | HINSHAW & CULBERTSON ... | Legal Fees Y | $5,105.00 | Approved |
| View | 154352 | 05/22/20C Check Pay 50216 | BRH BUILDERS AND MATHIS K... | | $1,180.26 | Approved |
| View | 154352 | 05/21/20C Cancel Chi 50168 | BRH AND DAVIS PLUMBING | | ($24,585.48) | Approved |
| View | 154353 | 05/21/20C Cancel Chi 50170 | BRH AND LONG ELEVATOR | | ($1,780.26) | Approved |
| View | 154323 | 05/15/20C Check Pay 50197 | BRH AND DAVIS PAINTING | | $38,548.44 | Approved |
| View | 154159 | 05/07/20C Check Pay 50166 | BRH BUILDERS & CONSTR... | | $6,238.53 | Approved |
| View | 154159 | 05/07/20C Check Pay 50175 | BRH AND TRANSPORTATION AL... | | $2,149.25 | Approved |
| View | 154160 | 05/07/20C Check Pay 50174 | BRH AND SANDBURG COMPANY | | $7,829.00 | Approved |
| View | 154161 | 05/07/20C Check Pay 50173 | BRH AND REDBUD RIDGE | | $18,550.00 | Approved |

| | Check # | Date/Type | Payee | Amount | Notes | Status |
|---|---|---|---|---|---|---|
| View | 154162 | 05/07/20C Check Pay 50172 | BRH AND POLYVISON | $20,000.00 | | Approved |
| View | 154163 | 05/07/20C Check Pay 50171 | BRH BUILDERS AND NEGWER M... | $27,175.57 | | Approved |
| View | 154164 | 05/07/20C Check Pay 50170 | BRH AND LONG ELEVATOR | $1,180.26 | | Approved |
| View | 154165 | 05/07/20C Check Pay 50169 | BRH AND LONG ELEVATOR | $6,984.00 | | Approved |
| View | 154166 | 05/07/20C Check Pay 50168 | BRH AND DAVIS PLUMBING | $24,585.48 | | Approved |
| View | 154167 | 05/07/20C Check Pay 50167 | BRH AND COMMERCIAL FLOOR | $30,796.00 | | Approved |
| View | 153623 | 04/11/20C Check Pay 50114 | BRH AND COMMERCIAL FLOOR | $13,857.50 | | Approved |
| View | 153624 | 04/11/20C Check Pay 50115 | BRH BUILDERS AND DAL-TILE | $1,513.06 | | Approved |
| View | 153625 | 04/11/20C Check Pay 50116 | BRH BUILDERS AND DAVIS PA... | $13,362.96 | | Approved |
| View | 153626 | 04/11/20C Check Pay 50117 | BRH BUILDERS AND GREAT LA... | $5,998.05 | | Approved |
| View | 153631 | 04/11/20C Check Pay 50137 | BRH BUILDERS AND NEGWER M... | $13,753.36 | | Approved |
| View | 153633 | 04/11/20C Check Pay 50136 | BRH BUILDERS AND PORTABLE... | $1,084.20 | | Approved |
| View | 153634 | 04/11/20C Check Pay 50135 | BRH BUILDERS AND RAVENSBU... | $16,290.00 | | Approved |
| View | 153635 | 04/11/20C Check Pay 50134 | BRH BUILDERS AND SANDBURG... | $18,522.00 | | Approved |
| View | 153636 | 04/11/20C Check Pay 50133 | BRH BUILDERS AND STEVENS ... | $3,925.57 | | Approved |
| View | 153655 | 04/11/20C Check Pay 50138 | BRH BUILDERS | $5,599.72 | | Approved |
| View | 153657 | 04/11/20C Check Pay 50120 | BRH BUILDERS AND MIDWEST ... | $1,053.47 | | Approved |
| View | 153658 | 04/11/20C Check Pay 50119 | BRH BUILDERS AND MATHIS K... | $2,343.66 | | Approved |
| View | 153659 | 04/11/20C Check Pay 50118 | BRH BUILDERS AND GREAT RI... | $1,081.99 | | Approved |
| View | 153245 | 03/22/20C Check Pay 50089 | HINSHAW & CULBERTSON ... | $5,482.06 | Legal Fees Y | Approved |
| View | 153246 | 03/22/20C Check Pay 50070 | CONSTRUCTION CONSULTING A... | $9,015.80 | Consultant Y | Approved |
| View | 153182 | 03/20/20C Check Pay 50045 | BRH BUILDERS & CONSTR... | $72,875.62 | | Approved |
| View | 153163 | 03/20/20C Check Pay 50046 | BRH BUILDERS AND VERNON L... | $2,746.38 | | Approved |
| View | 153164 | 03/20/20C Check Pay 50047 | BRH AND STEVENS INDUSTRIE... | $12,440.43 | | Approved |
| View | 153165 | 03/20/20C Check Pay 50048 | BRH AND RAVENSBURG | $7,086.00 | | Approved |
| View | 153166 | 03/20/20C Check Pay 50049 | BRH BUILDERS AND NEGWER M... | $53,901.24 | | Approved |
| View | 153168 | 03/20/20C Check Pay 50050 | BRH BUILDERS AND MOORE GL... | $15,391.80 | | Approved |
| View | 153169 | 03/20/20C Check Pay 50051 | BRH BUILDERS AND MIDWEST ... | $2,671.32 | | Approved |
| View | 153170 | 03/20/20C Check Pay 50052 | BRH BUILDERS AND MATHIS K... | $4,197.94 | | Approved |
| View | 153171 | 03/20/20C Check Pay 50053 | BRH BUILDERS AND HILTI, I... | $2,185.00 | | Approved |
| View | 153172 | 03/20/20C Check Pay 50054 | BRH BUILDERS AND GREAT LA... | $25,830.90 | | Approved |
| View | 153173 | 03/20/20C Check Pay 50055 | BRH BUILDERS AND DESIGNED... | $5,571.00 | | Approved |
| View | 153174 | 03/20/20C Check Pay 50056 | BRH AND DAVIS PAINTING | $68,220.00 | | Approved |
| View | 153175 | 03/20/20C Check Pay 50057 | BRH BUILDERS AND DALE WIL... | $2,054.08 | | Approved |
| View | 153176 | 03/20/20C Check Pay 50058 | BRH AND COMMERCIAL FLOOR | $2,991.00 | | Approved |
| View | 153123 | 03/19/20C Check Pay 50037 | WISS, JANNEY, ELSTNER ASS... | $7,900.00 | Consultant Y | Approved |
| View | 152917 | 03/08/20C Check Pay 50002 | BRH BUILDERS AND MOORE GL... | $15,391.80 | | Approved |
| View | 152918 | 03/08/20C Check Pay 50003 | BRH BUILDERS & CONSTR... | $29,115.79 | | Approved |
| View | 152260 | 02/22/20C Cancel Ch 49645 | BRH BUILDERS AND MOORE GL... | ($4,950.00) | | Approved |
| View | 152261 | 02/22/20C Cancel Ch 49530 | BRH BUILDERS AND MOORE GL... | ($5,000.00) | | Approved |
| View | 152593 | 02/21/20C Check Pay 49769 | HINSHAW & CULBERTSON ... | $9,269.50 | Legal Fees Y | Approved |
| View | 152562 | 02/20/20C Check Pay 49768 | CONSTRUCTION CONSULTING A... | $8,987.15 | Consultant Y | Approved |
| View | 152326 | 02/08/20C Check Pay 49726 | BRH BUILDERS | $3,934.98 | | Approved |

| | | | | | Status |
|---|---|---|---|---|---|
| View | 152154 | 02/05/20C Cancel Ch 49642 | BRH BUILDERS AND SUNBELT ... | ($2,418.00) | Approved |
| View | 152155 | 02/05/20C Cancel Ch 49656 | BRH BUILDERS AND EL PRUIT... | ($1,516.98) | Approved |
| View | 152206 | 02/02/20C Check Pay 49709 | BRH BUILDERS | $37,462.89 | Approved |
| View | 152207 | 02/02/20C Check Pay 49710 | BRH BUILDERS AND VERNON L... | $10,075.34 | Approved |
| View | 152208 | 02/02/20C Check Pay 49711 | BRH BUILDERS AND TRANSPOR... | $8,222.00 | Approved |
| View | 152209 | 02/02/20C Check Pay 49712 | BRH BUILDERS AND PSI | $2,046.10 | Approved |
| View | 152210 | 02/02/20C Check Pay 49713 | BRH BUILDERS AND PORTABLE... | $1,084.20 | Approved |
| View | 152211 | 02/02/20C Check Pay 49714 | BRH BUILDERS AND ONE SOUR... | $1,864.95 | Approved |
| View | 152212 | 02/02/20C Check Pay 49715 | BRH BUILDERS AND NEGWER M... | $8,245.07 | Approved |
| View | 152213 | 02/02/20C Check Pay 49716 | BRH BUILDERS AND MOORE GL... | $27,350.00 | Approved |
| View | 152214 | 02/02/20C Check Pay 49717 | BRH BUILDERS AND MOLO QUI... | $2,631.76 | Approved |
| View | 152215 | 02/02/20C Check Pay 49718 | BRH BUILDERS AND MATHIS K... | $3,018.75 | Approved |
| View | 152216 | 02/02/20C Check Pay 49719 | BRH BUILDERS AND PATRICK... | $2,653.00 | Approved |
| View | 152217 | 02/02/20C Check Pay 49720 | BRH BUILDERS AND GREAT LA... | $14,230.15 | Approved |
| View | 152218 | 02/02/20C Check Pay 49721 | BRH BUILDERS AND FASTENAL | $1,508.28 | Approved |
| View | 152219 | 02/02/20C Check Pay 49722 | BRH BUILDERS AND DESIGNED... | $10,569.60 | Approved |
| View | 152220 | 02/02/20C Check Pay 49723 | BRH BUILDERS AND CRANE CR... | $5,977.79 | Approved |
| View | 151985 | 01/30/20C Check Pay 49681 | CONSTRUCTION CONSULTING A... | $27,161.95 | Approved — Consultant Y |
| View | 151880 | 01/23/20C Cancel Ch 49582 | BRH BUILDERS AND MOORE GL... | ($21,800.00) | Approved |
| View | 151998 | 01/23/20C Check Pay 49692 | BRH BUILDERS AND MOORE GL... | $4,709.00 | Approved |
| View | 151883 | 01/18/20C Check Pay 49666 | HINSHAW & CULBERTSON ... | $2,500.00 | Approved — Legal Fees Y |
| View | 151741 | 01/10/20C Check Pay 49637 | ATLAS CONCRETE PRODUCTS C... | $255,830.35 | Approved |
| View | 151742 | 01/10/20C Check Pay 49638 | BRH BUILDERS | $61,017.77 | Approved |
| View | 151744 | 01/10/20C Check Pay 49639 | BRH BUILDERS AND NEGWER M... | $1,000.00 | Approved |
| View | 151745 | 01/10/20C Check Pay 49640 | BRH BUILDERS AND WESTERN ... | $3,263.20 | Approved |
| View | 151746 | 01/10/20C Check Pay 49641 | BRH BUILDERS AND VERNON L... | $5,954.49 | Approved |
| View | 151747 | 01/10/20C Check Pay 49642 | BRH BUILDERS AND TRANSPOR... | $2,418.00 | Approved |
| View | 151748 | 01/10/20C Check Pay 49643 | BRH BUILDERS AND SUNBELT ... | $36,917.26 | Approved |
| View | 151749 | 01/10/20C Check Pay 49644 | BRH BUILDERS AND PH BROUG... | $3,727.76 | Approved |
| View | 151750 | 01/10/20C Check Pay 49645 | BRH BUILDERS AND ONE SOUR... | $4,950.00 | Approved |
| View | 151751 | 01/10/20C Check Pay 49646 | BRH BUILDERS AND MOORE GL... | $2,703.28 | Approved |
| View | 151752 | 01/10/20C Check Pay 49647 | BRH BUILDERS AND MIDWEST ... | $5,023.78 | Approved |
| View | 151753 | 01/10/20C Check Pay 49648 | BRH BUILDERS AND JOHN DEE... | $2,500.00 | Approved |
| View | 151754 | 01/10/20C Check Pay 49649 | BRH BUILDERS AND JM BURKE | $4,353.12 | Approved |
| View | 151756 | 01/10/20C Check Pay 49650 | BRH BUILDERS AND IRWIN EQ... | $3,624.48 | Approved |
| View | 151758 | 01/10/20C Check Pay 49651 | BRH BUILDERS AND IDI DIST... | $2,380.33 | Approved |
| View | 151760 | 01/10/20C Check Pay 49652 | BRH BUILDERS AND HILTI, I... | $1,768.80 | Approved |
| View | 151761 | 01/10/20C Check Pay 49653 | BRH BUILDERS AND HENRY NE... | $6,962.16 | Approved |
| View | 151762 | 01/10/20C Check Pay 49654 | BRH BUILDERS AND GREAT RI... | $13,371.45 | Approved |
| View | 151763 | 01/10/20C Check Pay 49655 | BRH BUILDERS AND GREAT LA... | $2,013.34 | Approved |
| View | 151764 | 01/10/20C Check Pay 49656 | BRH BUILDERS AND FASTENAL | $1,516.98 | Approved |
| View | 151765 | 01/10/20C Check Pay 49657 | BRH BUILDERS AND EL PRUIT... | $9,118.00 | Approved |
| View | 151766 | 01/10/20C Check Pay 49658 | BRH BUILDERS AND DALE WIL... | $2,296.07 | Approved |

| | Check | Date | Check Pay | Payee | Amount | Notes | Status |
|---|---|---|---|---|---|---|---|
| View | 151767 | 01/10/20 | Check Pay 49659 | BRH BUILDERS AND CRANE CR... | $5,977.79 | | Approved |
| View | 151768 | 01/10/20 | Check Pay 49660 | BRH BUILDERS AND COMMERCI... | $5,621.69 | | Approved |
| View | 151769 | 01/10/20 | Check Pay 49661 | BRH BUILDERS | $21,600.00 | | Approved |
| View | 151645 | 01/06/20 | Check Pay 49631 | HINSHAW & CULBERTSON ... | $7,344.96 | Legal Fees Y | Approved |
| View | 151485 | 12/28/20 | Check Pay 49579 | BRH BUILDERS AND FLOWERS ... | $2,469.90 | | Approved |
| View | 151486 | 12/28/20 | Check Pay 49580 | BRH BUILDERS AND MATHIS K... | $1,802.19 | | Approved |
| View | 151487 | 12/28/20 | Check Pay 49581 | BRH BUILDERS AND TRANSPOR... | $14,751.75 | | Approved |
| View | 151488 | 12/28/20 | Check Pay 49582 | BRH BUILDERS AND MOORE GL... | $21,600.00 | | Approved |
| View | 151489 | 12/28/20 | Check Pay 49583 | BRH BUILDERS AND MIDWEST ... | $9,283.82 | | Approved |
| View | 151490 | 12/28/20 | Check Pay 49584 | BRH BUILDERS AND AMERICAN... | $21,211.48 | | Approved |
| View | 151491 | 12/28/20 | Check Pay 49585 | BRH BUILDERS AND DESIGNED... | $93,581.00 | | Approved |
| View | 151492 | 12/28/20 | Check Pay 49586 | BRH BUILDERS AND VERNON L... | $4,544.71 | | Approved |
| View | 151493 | 12/28/20 | Check Pay 49587 | BRH BUILDERS AND GREAT RI... | $9,171.21 | | Approved |
| View | 151494 | 12/28/20 | Check Pay 49588 | BRH BUILDERS AND HILTI, I... | $2,244.79 | | Approved |
| View | 151495 | 12/28/20 | Check Pay 49589 | BRH BUILDERS AND NEGWER M... | $11,792.68 | | Approved |
| View | 151496 | 12/28/20 | Check Pay 49590 | BRH BUILDERS AND CRANE CR... | $5,977.79 | | Approved |
| View | 151498 | 12/28/20 | Check Pay 49591 | BRH BUILDERS AND JOHN DEE... | $5,102.79 | | Approved |
| View | 151499 | 12/28/20 | Check Pay 49592 | BRH BUILDERS AND PATRICK ... | $1,980.48 | | Approved |
| View | 151500 | 12/28/20 | Check Pay 49593 | BRH BUILDERS AND MERVIS L... | $2,338.55 | | Approved |
| View | 151501 | 12/28/20 | Check Pay 49594 | BRH BUILDERS AND MILAN GL... | $2,590.00 | | Approved |
| View | 151502 | 12/20/20 | Check Pay 49595 | BRH BUILDERS AND DALE WIL... | $5,176.25 | | Approved |
| View | 151503 | 12/28/20 | Check Pay 49596 | BRH BUILDERS | $283,240.92 | | Approved |
| View | 151504 | 12/28/20 | Check Pay 49597 | BRH BUILDERS AND JOHN DEE... | $3,229.40 | | Approved |
| View | 151505 | 12/28/20 | Check Pay 49598 | BRH BUILDERS | $113,148.64 | | Approved |
| View | 151231 | 12/14/20 | Check Pay 49529 | BRH BUILDERS AND MOORE GL... | $5,000.00 | | Approved |
| View | 151232 | 12/14/20 | Check Pay 49530 | BRH BUILDERS AND MOORE GL... | $5,000.00 | | Approved |
| View | 151011 | 12/11/20 | Check Pay 49502 | CONSTRUCTION CONSULTING A... | $13,872.97 | Consultant Y | Approved |
| View | 151003 | 12/08/20 | Check Pay 49495 | HINSHAW & CULBERTSON ... | $13,027.30 | Legal Fees Y | Approved |
| View | 150471 | 11/15/20 | Check Pay 48390 | BRH BUILDERS AND CONSTRUC... | $267,879.49 | | Approved |
| View | 150472 | 11/15/20 | Check Pay 48391 | SUNBELT RENTALS & BRH... | $2,418.00 | | Approved |
| View | 150473 | 11/15/20 | Check Pay 48392 | NELSON OIL & BRH BUIL... | $1,650.79 | | Approved |
| View | 150475 | 11/15/20 | Check Pay 48393 | NEENAH FOUNDRY & BRH ... | $1,014.69 | | Approved |
| View | 150477 | 11/15/20 | Check Pay 48394 | PATRICK LEE TRUCKING &... | $8,263.52 | | Approved |
| View | 150486 | 11/15/20 | Check Pay 48395 | IRWIN EQUIPMENT & BRH... | $6,906.25 | | Approved |
| View | 150487 | 11/15/20 | Check Pay 48396 | CRANE CREDIT & BRH BU... | $6,575.57 | | Approved |
| View | 150488 | 11/15/20 | Check Pay 48397 | NEGWER MATERIALS, INC. &a... | $8,187.55 | | Approved |
| View | 150489 | 11/15/20 | Check Pay 48398 | HENRY NELCH & SON COM... | $35,975.00 | | Approved |
| View | 150490 | 11/15/20 | Check Pay 48399 | HILTI, INC. & BRH BUI... | $1,449.73 | | Approved |
| View | 150492 | 11/15/20 | Check Pay 48400 | GREAT RIVER SPEC MIX LLC ... | $17,565.21 | | Approved |
| View | 150494 | 11/15/20 | Check Pay 48401 | VERNON L. GOEDECKE CO., I... | $15,899.18 | | Approved |
| View | 150495 | 11/15/20 | Check Pay 48402 | MIKE DAVIDSON & BRH B... | $15,100.00 | | Approved |
| View | 150497 | 11/15/20 | Check Pay 48403 | DESIGNED ROOFING SYSTEMS... | $67,499.50 | | Approved |
| View | 150498 | 11/15/20 | Check Pay 48404 | COMMERCIAL FLOOR COVERING... | $8,046.00 | | Approved |

| View | Number | Date / Type | Payee | Amount | Note | Status |
|---|---|---|---|---|---|---|
| View | 150499 | 11/15/20C Check Pay 48405 | MIDWEST BLOCK AND BRICK A... | $7,429.26 | | Approved |
| View | 150500 | 11/15/20C Check Pay 48406 | TRANSPORTATION ALLIANCE A... | $7,191.00 | | Approved |
| View | 150501 | 11/15/20C Check Pay 48407 | PSI AND BRH BUILDERS AND ... | $1,531.70 | | Approved |
| View | 150502 | 11/15/20C Check Pay 48408 | FLOWER SANITATION AND BRH... | $2,367.30 | | Approved |
| View | 150317 | 11/09/20C Check Pay 48376 | VERNON L. GOEDECKE, INC. | $23,154.78 | Consultant Y | Approved |
| View | 150129 | 11/03/20C Check Pay 48343 | CONSTRUCTION CONSULTING A... | $22,880.91 | Travel | Approved |
| View | 150266 | 11/03/20C Check Pay 48372 | SAFECO INSURANCE COMPANY ... | $1,034.85 | Legal Fees Y | Approved |
| View | 150137 | 10/31/20C Check Pay 48350 | HINSHAW & CULBERTSON ... | $8,426.10 | | Approved |
| View | 149751 | 10/13/20C Check Pay 48264 | CARPENTERS PENSION AND RE... | $47,353.29 | | Approved |
| View | 149774 | 10/13/20C Check Pay 48273 | OP. ENGINEERS LOCAL 965 H... | $46,851.07 | | Approved |
| View | 149609 | 10/10/20C Check Pay 48228 | BRH BUILDERS AND DALE WIL... | $4,604.92 | | Approved |
| View | 149610 | 10/10/20C Check Pay 48229 | BRH BUILDERS AND CONSTRUC... | $297,397.09 | | Approved |
| View | 149611 | 10/10/20C Check Pay 48230 | BRICKLAYERS AND ALLIED CR... | $56,611.38 | | Approved |
| View | 149612 | 10/10/20C Check Pay 48231 | BRH BUILDERS AND SUNBELT ... | $2,418.00 | | Approved |
| View | 149613 | 10/10/20C Check Pay 48232 | BRH BUIILDERS AND NELSON ... | $3,964.25 | | Approved |
| View | 149614 | 10/10/20C Check Pay 48233 | BRH BUILDERS AND IRWIN EQ... | $6,906.25 | | Approved |
| View | 149615 | 10/10/20C Check Pay 48234 | BRH BUILDERS AND CRANE CR... | $5,977.79 | | Approved |
| View | 149616 | 10/10/20C Check Pay 48235 | BRH BUILDERS AND HENRY NE... | $66,919.60 | | Approved |
| View | 149617 | 10/10/20C Check Pay 48236 | BRH BUILDERS AND WESTERN ... | $51,390.00 | | Approved |
| View | 149618 | 10/10/20C Check Pay 48237 | BRH BUILDERS AND NEGWER M... | $1,492.10 | | Approved |
| View | 149619 | 10/10/20C Check Pay 48238 | BRH BUILDERS AND HILTI, I... | $5,198.24 | | Approved |
| View | 149620 | 10/10/20C Check Pay 48239 | BRH AND GREAT RIVER SPEC... | $8,797.53 | | Approved |
| View | 149621 | 10/10/20C Check Pay 48240 | BRH BUILDERS AND CARTER W... | $2,835.22 | | Approved |
| View | 149622 | 10/10/20C Check Pay 48241 | BRH BUILDERS AND DESIGNED... | $74,556.00 | | Approved |
| View | 149623 | 10/10/20C Check Pay 48242 | BRH AND TRANSPORTATION AL... | $4,452.00 | | Approved |
| View | 149624 | 10/10/20C Check Pay 48243 | BRH BUILDERS AND CONSTRUC... | $2,600.90 | | Approved |
| View | 149509 | 10/05/20C Check Pay 48206 | GOEDECKE AND BRH BUILDERS | $1,200.00 | | Approved |
| View | 149510 | 10/05/20C Check Pay 48207 | TRANSPORATATION ALLIANCE ... | $23,957.50 | | Approved |
| View | 149511 | 10/05/20C Check Pay 48208 | MIDWEST BLOCK & BRICK... | $4,164.60 | | Approved |
| View | 149512 | 10/05/20C Check Pay 48209 | DESIGNED ROOFING SYSTEMS... | $55,562.00 | | Approved |
| View | 149513 | 10/05/20C Check Pay 48210 | VERNON L. GOEDECKE CO., L... | $9,369.88 | | Approved |
| View | 149515 | 10/05/20C Check Pay 48211 | GREAT RIVER SPEC MIX, LLC... | $12,168.45 | | Approved |
| View | 149516 | 10/05/20C Check Pay 48212 | HILTI, INC. AND BRH BUILD... | $2,286.98 | | Approved |
| View | 149517 | 10/05/20C Check Pay 48213 | HENRY NELCH & SON CO.... | $55,715.80 | | Approved |
| View | 149518 | 10/05/20C Check Pay 48214 | WESTERN WATERPROOFING CO... | $29,340.00 | | Approved |
| View | 149519 | 10/05/20C Check Pay 48215 | JOHN DEERE CREDIT AND BRH... | $3,229.40 | | Approved |
| View | 149520 | 10/05/20C Check Pay 48216 | DALE WILLIAMS TRUCKING AN... | $5,202.57 | | Approved |
| View | 149524 | 10/05/20C Check Pay 48218 | BRH BUILDERS & CONSTR... | $59,240.33 | | Approved |
| View | 149207 | 10/02/20C Check Pay 47345 | HINSHAW & CULBERTSON ... | $18,106.30 | Legal Fees Y | Approved |
| View | 149397 | 10/02/20C Check Pay 47378 | BRH BUILDERS & CONSTR... | $200,000.00 | | Approved |
| View | 149204 | 09/27/20C Check Pay 47343 | DAVIDSON STEEL AND BRH BU... | $69,160.00 | | Approved |
| View | 149205 | 09/27/20C Check Pay 47344 | COMMERCIAL FLOOR COVERING... | $89,241.30 | | Approved |
| View | 148910 | 09/13/20C Wire Payment | BRH BUILDERS & CONSTR... | $687,416.48 | | Approved |

| | Check # | Date / Type | Payee | Amount | Category | Status |
|---|---|---|---|---|---|---|
| View | 148722 | 09/11/20 Check Pay 47274 | CONSTRUCTION CONSULTING A... | $37,538.14 | Consultant Y | Approved |
| View | 148552 | 08/30/20 Stop, Chec 46387 | CONSTRUCTION CONSULTING A... | ($27,045.58) | Consultant Y | Approved |
| View | 147823 | 08/02/20 Check Pay 47136 | BRH BUILDERS & CONSTR... | $722,406.72 | | Approved |
| View | 147526 | 07/31/20 Check Pay 46387 | CONSTRUCTION CONSULTING A... | $27,045.58 | Consultant Y | Approved |
| View | 147521 | 07/20/20 Check Pay 46382 | HINSHAW & CULBERTSON ... | $6,881.20 | Legal Fees Y | Approved |
| View | 147068 | 07/07/20 Check Pay 46317 | BRH BUILDERS & CONSTR... | $314,441.91 | | Approved |
| View | 146828 | 06/26/20 Check Pay 46251 | HINSHAW & CULBERTSON ... | $10,166.40 | Legal Fees Y | Approved |
| View | 148598 | 06/14/20 Check Pay 46228 | LAKESIDE/WHITE CAP CONTRA... | $2,381.04 | | Approved |
| View | 146403 | 06/12/20 Check Pay 46524 | Safeco Insurance Company ... | $392.39 | Travel | Approved |
| View | 146412 | 06/08/20 Check Pay 46201 | R.W. BRADLEY | $975.70 | | Approved |
| View | 146067 | 05/30/20 Check Pay 46128 | CONSTRUCTION CONSULTING A... | $20,158.66 | Consultant Y | Approved |
| View | 146035 | 05/24/20 Check Pay 46125 | BRH BUILDERS & CONSTR... | $500,863.89 | | Approved |
| View | 145822 | 05/23/20 Cancel Ch 43124 | ENTERPRISE INDUSTRIES, IN... | ($14,803.00) | | Approved |
| View | 145823 | 05/23/20 Cancel Ch 43125 | ENTERPRISE INDUSTRIES, IN... | ($20,000.00) | | Approved |
| View | 145844 | 05/17/20 Check Pay 46108 | HINSHAW & CULBERTSON ... | $5,369.50 | Legal Fees Y | Approved |
| View | 145648 | 05/10/20 Check Pay 45279 | GREAT RIVER SPEC MIX, LLC | $3,982.93 | | Approved |
| View | 145202 | 05/01/20 Check Pay 45230 | CONSTRUCTION CONSULTING A... | $26,616.36 | Consultant Y | Approved |
| View | 144976 | 04/26/20 Check Pay 45155 | CENTRAL LABORERS PENSION... | $50,884.80 | | Approved |
| View | 145148 | 04/26/20 Check Pay 45188 | BRH BUILDERS & CONSTR... | $142,299.76 | | Approved |
| View | 145149 | 04/26/20 Check Pay 45189 | NELCH & SON, CO. | $80,602.74 | | Approved |
| View | 144931 | 04/18/20 Check Pay 45151 | THE ROSS AGENCY, INC. | $1,829.85 | Consultant Y | Approved |
| View | 144933 | 04/18/20 Check Pay 45152 | HINSHAW & CULBERTSON ... | $13,249.45 | Legal Fees Y | Approved |
| View | 144938 | 04/18/20 Check Pay 45154 | AMBASSADOR STEEL | $1,357.50 | | Approved |
| View | 144693 | 04/12/20 Check Pay 45106 | DALE WILLIAMS TRUCKING, I... | $15,319.29 | | Approved |
| View | 144639 | 04/07/20 Check Pay 45103 | Ray's Termite and Pes... | $2,500.00 | | Approved |
| View | 144640 | 04/07/20 Check Pay 45102 | BRH BUILDERS & CONSTR... | $534.24 | | Approved |
| View | 144545 | 04/05/20 Check Pay 45038 | COUNTY MATERIALS CORPORAT... | $5,490.72 | | Approved |
| View | 144248 | 03/28/20 Check Pay 44667 | COUNTY MATERIALS CORPORAT... | $1,400.16 | | Approved |
| View | 144256 | 03/28/20 Check Pay 44672 | THE ROSS AGENCY, INC. | $987.00 | | Approved |
| View | 144232 | 03/27/20 Check Pay 44664 | CONSTRUCTION CONSULTING A... | $57,413.24 | Consultant Y | Approved |
| View | 144086 | 03/22/20 Check Pay 44627 | BRH BUILDERS & CONSTR... | $403,128.42 | | Approved |
| View | 144088 | 03/21/20 Check Pay 44628 | HINSHAW & CULBERTSON ... | $13,881.00 | Legal Fees Y | Approved |
| View | 143891 | 03/14/20 Check Pay 44581 | PROFESSIONAL SERVICE IND... | $15,481.58 | | Approved |
| View | 143682 | 03/09/20 Check Pay 44529 | SAFECO INSURANCE COMPANY ... | $1,081.10 | Travel | Approved |
| View | 143664 | 03/08/20 Check Pay 41964 | Safeco Insurance Company ... | $353.30 | Travel | Approved |
| View | 143393 | 03/07/20 Check Pay 44428 | HINSHAW & CULBERTSON ... | $12,310.80 | Legal Fees Y | Approved |
| View | 143572 | 03/06/20 Check Pay 41954 | Safeco Insurance Company ... | $618.56 | Travel | Approved |
| View | 143574 | 03/06/20 Check Pay 41952 | Safeco Insurance Company ... | $289.45 | Travel | Approved |
| View | 143591 | 03/06/20 Check Pay 41959 | Safeco Insurance Company ... | $107.81 | Travel | Approved |
| View | 143531 | 03/03/20 Check Pay 44470 | W.A. LASCODY TRUCKING, IN... | $1,869.81 | | Approved |
| View | 142972 | 02/20/20 Check Pay 41938 | Safeco Insurance Company ... | $381.51 | Travel | Approved |
| View | 142973 | 02/20/20 Check Pay 41937 | Safeco Insurance Company ... | $392.39 | Travel | Approved |
| View | 143014 | 02/14/20 Check Pay 44151 | TGRWA | $7,265.00 | Consultant Y | Approved |

| | Number | Date/Type | Payee | Amount | Category | Status |
|---|---|---|---|---|---|---|
| View | 143021 | 02/14/20C Check Pay 44150 | HENRY NELCH & SON COM... | $4,454.50 | | Approved |
| View | 142387 | 02/06/20C Check Pay 43993 | HINSHAW & CULBERTSON ... | $19,433.45 | Legal Fees Y | Approved |
| View | 142636 | 02/06/20C Check Pay 44049 | BRH BUILDERS & CONSTR... | $164,043.27 | | Approved |
| View | 142645 | 02/06/20C Check Pay 41923 | Safeco Insurance Company ... | $337.60 | Travel | Approved |
| View | 142486 | 01/31/20C Check Pay 44008 | COADY SUPPLY CO. | $132.50 | | Approved |
| View | 142482 | 01/30/20C Check Pay 44004 | CONSTRUCTION CONSULTING A... | $62,005.92 | Consultant Y | Approved |
| View | 141484 | 01/03/20C Check Pay 43276 | HINSHAW & CULBERTSON ... | $12,395.70 | Legal Fees Y | Approved |
| View | 141148 | 12/14/20C Check Pay 43188 | LEO & WEBER, P.C. | $484.40 | Legal Fees Y | Approved |
| View | 140962 | 12/08/20C Check Pay 43122 | BRH BUILDERS & CONSTR... | $59,154.28 | | Approved |
| View | 140968 | 12/08/20C Check Pay 43123 | MIKE DAVIDSON MACHINE &am... | $267,986.00 | | Approved |
| View | 140970 | 12/08/20C Check Pay 43124 | ENTERPRISE INDUSTRIES, IN... | $14,603.00 | | Approved |
| View | 140971 | 12/08/20C Check Pay 43126 | ENTERPRISE INDUSTRIES, IN... | $30,000.00 | | Approved |
| View | 140973 | 12/08/20C Check Pay 43125 | ENTERPRISE INDUSTRIES, IN... | $20,000.00 | | Approved |
| View | 140530 | 11/29/20C Check Pay 42623 | CONSTRUCTION CONSULTING A... | $23,486.12 | Consultant Y | Approved |
| View | 140544 | 11/29/20C Check Pay 42643 | HINSHAW & CULBERTSON ... | $26,240.45 | Legal Fees Y | Approved |
| View | 140670 | 11/29/20C Check Pay 42666 | LEO & WEBER, P.C. | $5,899.03 | Legal Fees Y | Approved |
| View | 140531 | 11/28/20C Check Pay 42622 | CONSTRUCTION CONSULTING A... | $8,789.00 | Consultant Y | Approved |
| View | 140594 | 11/28/20C Check Pay 42649 | SAFECO INSURANCE COMPANY ... | $408.04 | Travel | Approved |
| View | 140522 | 11/23/20C Check Pay 41895 | Safeco Insurance Company ... | $701.09 | Travel | Approved |
| View | 139980 | 11/08/20C Check Pay 41777 | SAFECO INSURANCE COMPANY ... | $22.00 | Travel | Approved |
| View | 139555 | 10/28/20C Check Pay 41711 | CONSTRUCTION CONSULTING A... | $13,565.68 | Consultant Y | Approved |
| View | 139663 | 10/28/20C Wire Payment | U.S. Bank | $49,209.12 | | Approved |
| View | 139322 | 10/27/20C Check Pay 41658 | HINSHAW & CULBERTSON ... | $17,854.17 | Legal Fees Y | Approved |
| View | 139619 | 10/26/20C Check Pay 41716 | ENTERPRISE INDUSTRIES, IN... | $47,000.00 | | Approved |
| View | 139098 | 10/25/20C Cancel Chi 41560 | SURVEY INSTRUMENT CONSULT... | ($200.00) | | Approved |
| View | 139354 | 10/21/20C Wire Payment | U.S. Bank | $59,557.50 | | Approved |
| View | 139069 | 10/18/20C Cancel Chi 41871 | Atlas Concrete Products C... | ($63,000.00) | | Approved |
| View | 139207 | 10/18/20C Check Pay 41622 | A-1 LOCK, INC. | $33.19 | | Approved |
| View | 139210 | 10/18/20C Check Pay 41621 | A.E.C. FIRE SAFETY | $47.56 | | Approved |
| View | 139211 | 10/18/20C Check Pay 41620 | ARROW TRAILER & EQUIP... | $511.46 | | Approved |
| View | 139212 | 10/18/20C Check Pay 41619 | ATLAS CONCRETE PRODUCTS C... | $1,693.98 | | Approved |
| View | 139213 | 10/18/20C Check Pay 41618 | BANSAL OCCUPATIONAL SOLUT... | $320.00 | | Approved |
| View | 139214 | 10/18/20C Check Pay 41617 | BIG R OF SPRINGFIELD | $854.71 | | Approved |
| View | 139216 | 10/18/20C Check Pay 41616 | R. W. BRADLEY SUPPLY CO. | $3,041.33 | | Approved |
| View | 139218 | 10/18/20C Check Pay 41615 | BRAKE & CLUTCH EXCHAN... | $411.59 | | Approved |
| View | 139219 | 10/18/20C Check Pay 41614 | CERTIFIED LABORATORIES | $705.23 | | Approved |
| View | 139221 | 10/18/20C Check Pay 41613 | CHAMPION GAS & OIL | $11,263.91 | | Approved |
| View | 139223 | 10/18/20C Check Pay 41612 | COADY SUPPLY COMPANY | $91.90 | | Approved |
| View | 139224 | 10/18/20C Check Pay 41611 | CONTRACTORS LUMBER CITY | $2,131.93 | | Approved |
| View | 139141 | 10/14/20C Wire Payment | U.S. Bank | $55,876.44 | | Approved |
| View | 139097 | 10/13/20C Check Pay 41561 | SURVEY INSTRUMENT CONSULT... | $200.00 | | Approved |
| View | 139017 | 10/12/20C Check Pay 41565 | FAST MEDICAL DBA ZEE MEDI... | $651.34 | | Approved |
| View | 139021 | 10/12/20C Check Pay 41564 | WINGFOOT COMMERCIAL TIRE ... | $4,934.74 | | Approved |

| | | | | | | |
|---|---|---|---|---|---|---|
| View | 139022 | 10/12/20C Check Pay 41563 | DALE WILLIAMS TRUCKING, I... | $7,066.36 | | Approved |
| View | 139023 | 10/12/20C Check Pay 41562 | TUXHORN TOWING | $350.00 | | Approved |
| View | 139025 | 10/12/20C Check Pay 41560 | SURVEY INSTRUMENT CONSULT... | $200.00 | | Approved |
| View | 139028 | 10/12/20C Check Pay 41560 | SPRINGFIELD TRUCK TESTING | $200.00 | | Approved |
| View | 139028 | 10/12/20C Check Pay 41559 | SPRINGFIELD ELECTRIC SUPP... | $11.54 | | Approved |
| View | 139029 | 10/12/20C Check Pay 41558 | SPRINGFIELD BATTERY CO., ... | $23.38 | | Approved |
| View | 139032 | 10/12/20C Check Pay 41557 | SCHEER'S INC. | $4,568.00 | | Approved |
| View | 139033 | 10/12/20C Check Pay 41556 | ROLAND MACHINERY CO. | $834.31 | | Approved |
| View | 139034 | 10/12/20C Check Pay 41573 | ROANOKE CONCRETE PRODUCTS... | $8,394.64 | | Approved |
| View | 139036 | 10/12/20C Check Pay 41572 | PROFESSIONAL SERVICE IND... | $16,113.50 | | Approved |
| View | 139037 | 10/12/20C Check Pay 41571 | PORTABLE SANITATION SYSTE... | $230.00 | | Approved |
| View | 139038 | 10/12/20C Check Pay 41570 | NOONAN TRUE VALUE | $2,622.00 | | Approved |
| View | 139039 | 10/12/20C Check Pay 41569 | NEAL TIRE AUTO SERVICE | $877.72 | | Approved |
| View | 139040 | 10/12/20C Check Pay 41568 | NAPA AUTO PARTS, SPRINGFI... | $670.34 | | Approved |
| View | 139041 | 10/12/20C Check Pay 41567 | MR. AUTO ELECTRIC | $9.22 | | Approved |
| View | 139042 | 10/12/20C Check Pay 41566 | MOTION INDUSTRIES | $92.37 | | Approved |
| View | 139074 | 10/12/20C Check Pay 41574 | ATLAS CONCRETE PRODUCTS C... | $6,300.00 | | Approved |
| View | 138988 | 10/11/20C Check Pay 41554 | MERVIS IRON & SUPPLY | $1,251.00 | | Approved |
| View | 138989 | 10/11/20C Check Pay 41553 | MARTIN EQUIPMENT OF ILLIN... | $4,461.32 | | Approved |
| View | 138990 | 10/11/20C Check Pay 41552 | W.A. LASCODY TRUCKING, IN... | $296.00 | | Approved |
| View | 138991 | 10/11/20C Check Pay 41551 | JAMES MACHINERY CO. | $670.70 | | Approved |
| View | 138992 | 10/11/20C Check Pay 40850 | ILMO PRODUCTS COMPANY | $710.00 | | Approved |
| View | 138993 | 10/11/20C Check Pay 40849 | HILTI INC. | $1,042.23 | | Approved |
| View | 138994 | 10/11/20C Check Pay 40848 | VERNON L. GOEDECKE, INC. | $10,709.10 | | Approved |
| View | 138995 | 10/11/20C Check Pay 40847 | NELCH CONCRETE | $20,738.20 | | Approved |
| View | 138996 | 10/11/20C Check Pay 40846 | FASTENAL COMPANY | $450.92 | | Approved |
| View | 138997 | 10/11/20C Check Pay 40845 | CROSSROADS FORD TRUCK | $597.30 | | Approved |
| View | 138998 | 10/11/20C Check Pay 40844 | GREAT RIVER SPEC MIX, LLC | $5,330.02 | | Approved |
| View | 139000 | 10/11/20C Check Pay 40842 | HOME CITY ICE CO. | $523.45 | | Approved |
| View | 139010 | 10/11/20C Check Pay 41555 | MIDWEST, LTD. | $410.92 | | Approved |
| View | 138955 | 10/10/20C Check Pay 41873 | LAKESIDE CONTRACTORS SUPP... | $22,275.00 | | Approved |
| View | 138956 | 10/10/20C Check Pay 41872 | Ambassador Steel Corp | $22,709.02 | | Approved |
| View | 138958 | 10/10/20C Check Pay 41871 | Atlas Concrete Products C... | $63,000.00 | | Approved |
| View | 138959 | 10/10/20C Check Pay 41870 | LONG ELEVATOR & MACHI... | $6,282.00 | | Approved |
| View | 138960 | 10/10/20C Check Pay 41869 | County Materials Corp | $5,490.72 | | Approved |
| View | 138961 | 10/10/20C Check Pay 41868 | NEGWER MATERIALS INC. | $15,889.50 | | Approved |
| View | 138962 | 10/10/20C Check Pay 41867 | Flowers Sanitation | $616.50 | | Approved |
| View | 138963 | 10/10/20C Check Pay 41866 | NELCH CONCRETE | $6,750.00 | | Approved |
| View | 138964 | 10/10/20C Check Pay 41865 | Imperial Design | $44,331.93 | | Approved |
| View | 138965 | 10/10/20C Check Pay 41864 | DALE WILLIAMS TRUCKING | $7,831.00 | | Approved |
| View | 138850 | 10/07/20C Wire Payment | U.S. Bank | $67,388.53 | | Approved |
| View | 138654 | 10/03/20C Check Pay 40804 | SAFECO INSURANCE COMPANY ... | $11.50 | Travel | Approved |
| View | 138579 | 09/30/20C Wire Payment | U.S. Bank | $69,398.33 | | Approved |

| View | | | | | |
|---|---|---|---|---|---|
| View | 138581 | 09/29/20C Check Pay 41852 | A.I. Credit Companies | $82,511.74 | Approved |

**Total Payments** $9,744,477.00

| Receipts | | | | | |
|---|---|---|---|---|---|
| View | 160092 | 01/08/20C Check Rec 3102023 | DIEBOLD | $2,145.00 | Approved |
| View | 159313 | 12/11/20C Check Rec 76894539 | DANIEL W. HYNES | $49,983.49 | Approved |
| View | 159312 | 12/06/20C Check Rec 76894540 | DANIEL W. HYNES | $34,304.80 | Approved |
| View | 157323 | 09/19/20C Check Rec 5084835 | DANIEL W. HYNES | $61,233.06 | Approved |
| View | 157106 | 09/12/20C Check Rec 4955375 | DANIEL W. HYNES | $148,407.70 | Approved |
| View | 156201 | 08/08/20C Check Rec 4606373 | DANIEL W. HYNES | $175,991.84 | Approved |
| View | 155365 | 07/11/20C Check Rec 4169811 | DANIEL W. HYNES | $321,736.93 | Approved |
| View | 154814 | 06/13/20C Check Rec 3834844 | DANIEL W. HYNES | $275,487.81 | Approved |
| View | 154484 | 05/24/20C Wire Receipt | SICILIANO, INC. | $253.50 | Approved |
| View | 153852 | 04/30/20C Check Rec 3264286 | DANIEL W. HYNES | $188,702.24 | Approved |
| View | 153459 | 04/10/20C Check Rec 2936939 | DANIEL W. HYNES | $166,042.39 | Approved |
| View | 152765 | 03/08/20C Check Rec 2448001 | DANIEL W. HYNES | $379,838.01 | Approved |
| View | 151885 | 01/25/20C Check Rec 1922297 | DANIEL W. HYNES | $130,590.99 | Approved |
| View | 151737 | 01/18/20C Check Rec 6232 | TYLK GUSTAFSON RECKERS WI... | $175.00 | Approved |
| View | 151131 | 12/19/20C Check Rec 1454555 | DANIEL W. HYNES | $401,497.35 | Approved |
| View | 150862 | 12/13/20C Check Rec 1235336 | DANIEL W. HYNES | $196,803.90 | Approved |
| View | 150127 | 11/06/20C Check Rec 834575 | DANIEL W. HYNES | $504,578.13 | Approved |
| View | 149206 | 09/29/20C Check Rec 448876 | DANIEL W. HYNES | $997,350.40 | Approved |
| View | 148469 | 08/29/20C Check Rec 75331 | DANIEL W. HYNES | $298,719.50 | Approved |
| View | 147651 | 07/27/20C Check Rec 9644434 | DANIEL W. HYNES | $732,435.40 | Approved |
| View | 146968 | 06/30/20C Check Rec 9281586 | DANIEL W. HYNES | $776,321.07 | Approved |
| View | 146499 | 06/20/20C Check Rec 9056615 | DANIEL W. HYNES | $270,464.49 | Approved |
| View | 145392 | 05/09/20C Check Rec 8587345 | DANIEL W. HYNES | $321,874.81 | Approved |
| View | 144240 | 03/28/20C Check Rec 8098075 | DANIEL W. HYNES | $150,715.83 | Approved |
| View | 144000 | 03/20/20C Check Rec 8012038 | COMPTROLLER-STATE OF ILLI... | $274,629.83 | Approved |
| View | 143389 | 02/28/20C Check Rec 7740169 | STATE OF ILLINOIS | $197,878.14 | Approved |
| View | 142875 | 02/10/20C Check Rec 7528216 | COMPTROLLER-STATE OF ILLI... | $428,146.54 | Approved |
| View | 138622 | 10/07/20C Check Rec 5761620 | DANIEL W. HYNES | $388,888.83 | Approved |

**Total Receipts** $7,875,196.98

**Net Loss** $1,869,280.02

| Claim Number | Claims Office | Estimated Loss | Net Paid | Loss Reserve | Salvage Reserve | Net Paid AE |
|---|---|---|---|---|---|---|
| 05266950 |  |  |  |  |  |  |
| 2* | Dallas | $1,339,000.00 | $1,869,280.02 | $96,776.16 | $627,056.18 | $760,618.94 |
| 52729508 | Dallas | ($45,000.00) | ($286,702.28) | $241,702.28 | $0.00 | $0.00 |
| 52729509 | Dallas | $80,000.00 | $26,074.30 | $53,925.70 | $0.00 | $0.00 |
| 52729510 | Dallas | $106,000.00 | $62,667.05 | $43,332.95 | $0.00 | $0.00 |
| 52729511 | Dallas | $94,000.00 | $27,732.38 | $67,406.89 | $1,139.27 | $0.00 |
| 52729512 | Dallas | ($245,000.00) | ($134,974.82) | $0.00 | $110,025.18 | $0.00 |
| 52729513 | Dallas | $27,000.00 | $13,604.29 | $13,395.71 | $0.00 | $0.00 |
| 52729514 | Dallas | $30,000.00 | $6,585.61 | $23,414.39 | $0.00 | $0.00 |
| 52729515 | Dallas | $30,000.00 | $20,773.03 | $9,226.97 | $0.00 | $0.00 |
| 52729516 | Dallas | ($2,000.00) | $0.00 | $0.00 | $2,000.00 | $0.00 |
| 52729517 | Dallas | $53,000.00 | $299.80 | $52,700.20 | $0.00 | $0.00 |
| 52729518 | Dallas | $2,000.00 | ($82,261.66) | $84,720.97 | $459.31 | $0.00 |
| 52729519 | Dallas | $31,000.00 | $239.84 | $30,760.16 | $0.00 | $0.00 |
| 52929501 | Dallas | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Account |  |  |  |  |  |  |
| Total |  | $1,500,000.00 | $1,523,317.56 | $717,362.38 | $740,679.94 | $760,618.94 |

Net Loss from previous sheets          $1,523,317.56