E-FILED
Thursday, 29 January, 2009  03:59:40 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SAFECO INSURANCE CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  06-3162 |
| | ) | |
| SICILIANO, INC., K&R | ) | |
| PROPERTIES, INC., RICHARD | ) | |
| E. LAWRENCE, and MARY KIM | ) | |
| LAWRENCE, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Plaintiff Safeco Insurance Company of America's Motion for Summary Judgment (d/e 28) and Defendants' Motion to Strike the Affidavit of Nicholas Hyslop (d/e 36).  Plaintiff Safeco Insurance Company of America (Safeco) issues surety bonds to construction contractors.  By law, contractors such as Defendant Siciliano, Inc. (Siciliano) often are required to obtain surety bonds, by which the bond issuer (the surety) guarantees that the contractor will satisfy its contractual obligations to a third party (the obligee).  Specifically, these surety bonds

reassure both the owner of a construction project that the contractor will complete the project as specified and the subcontractors, laborers, and material suppliers that they will receive payment. If the contractor does not satisfy these obligations, the surety must uphold the contractor's contractual promises.

Safeco issued numerous surety bonds for Siciliano's construction projects. In exchange for these bonds, Siciliano and Defendants K&R Properties, Inc., Richard E. Lawrence, and Mary Kim Lawrence entered into an indemnity agreement. In 2005, Siciliano encountered financial difficulties, and Safeco alleges that Siciliano could not complete several construction projects, which led numerous entities to make claims with Safeco on the bonds. In this lawsuit, Safeco claims that Defendants then refused to meet their obligations under the indemnity agreement. Safeco has now moved for summary judgment on its breach of contract claim. For the reasons stated below, both the Motion to Strike and the Motion for Summary Judgment are denied.

## APPLICABLE LAW

A motion for summary judgment must be granted "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Herman v. Nat'l Broad. Co., 744 F.2d 604, 607 (7th Cir. 1984). Evidence is key. The parties may not rely merely on allegations or denials; they must present competent evidence to support their positions. Fed. R. Civ. P. 56(e).

Once the moving party has produced evidence showing that it is entitled to summary judgment, the non-moving party must present evidence to show that issues of fact remain. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "Summary judgment is appropriately entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" McKenzie v. Ill. Dept. of Transp., 92 F.3d 473, 479 (7th Cir. 1996) (quoting Celotex, 477 U.S. at 322). It is not a discretionary remedy; if the non-moving party lacks sufficient evidence, summary judgment must be granted.

Jones v. Johnson, 26 F.3d 727, 728 (7th Cir. 1994).

To successfully oppose a motion for summary judgment, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts.  See Matsushita Elec. Indus. Co., 475 U.S. at 586.  It must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  Id. at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id.  In determining whether a genuine issue exists, courts should construe all facts and reasonable inferences in the light most favorable to the non-moving party.  Moser v. Ind. Dept. of Corr., 406 F.3d 895, 900 (7th Cir. 2005). Courts are "not required to draw every conceivable inference from the record.  [They] need draw only reasonable ones."  Tyler v. Runyon, 70 F.3d 458, 467 (7th Cir. 1995) (internal quotation marks omitted).

## FACTS

Because a case may proceed to trial only if a genuine issue of fact exists, at the summary judgment stage this Court must determine which material facts are undisputed.  Here, the parties neglected to follow two requirements of the Local Rules, which will affect the Court's findings.

First, in the Central District of Illinois, at summary judgment the parties must submit lists of facts they deem undisputed and material, and they must provide evidence in support of these proposed facts.  Cent. Dist. IL L.R. 7.1(D).  The opposing party then must state whether it disputes those facts or considers them immaterial.  Cent. Dist. IL L.R. 7.1(D)(2)(b)(2) & (3)(a).  Here, both parties indicated in numerous instances that they lacked sufficient information to dispute or concede a proposed fact.  See, e.g., Defendants' Opposition to Plaintiff's Motion for Summary Judgment (d/e 35) (Defendants' Opposition), Exhibit 1, Defendants' Responses to Plaintiff's Statement of Undisputed Material Facts and Defendants' Statement of Disputed Material Facts, ¶ 21; Safeco Insurance Company of America's Reply Brief in Support of Its Motion for Summary Judgment (ECF #28) (d/e 38), Exhibit A, Safeco Insurance Company of America's Response to the Defendants' Statement of Additional Material Facts, ¶ 2. This is not an acceptable position at summary judgment.  Where a party indicates that it lacks sufficient information to take a position on a proposed fact, the Court deems the fact undisputed.

Second, to dispute a proposed fact, the Central District Local Rules require a party to cite evidence in support of its denial.  Cent. Dist. IL L.R.

7.1(D)(2)(b)(2) & (3)(a). In responding to Defendants' proposed facts, Safeco denies numerous facts, but it fails to provide any evidentiary support for its denials. <u>See, e.g.,</u> <u>Safeco Insurance Company of America's Reply Brief in Support of Its Motion for Summary Judgment (ECF #28) (d/e 38)</u>, Exhibit A, <u>Safeco Insurance Company of America's Response to the Defendants' Statement of Additional Material Facts</u>, ¶ 1. Thus, where the Court finds those facts material and sees no obvious support for a denial in the evidence otherwise before it, it deems those facts undisputed. Without presenting evidence, a party cannot satisfy its burden at the summary judgment stage. Fed. R. Civ. P. 56(e). Bare denials are insufficient. <u>Id.</u>

Having clarified these procedural matters, the Court finds the following facts. At different points in a period from 2003 to 2005, Siciliano obtained 13 Illinois construction jobs for which it needed surety bonds under the Illinois Public Construction Bond Act. <u>See</u> 30 ILCS 550/1, 2. Safeco issued these bonds for Siciliano in favor of various Illinois state and municipal entities -- the obligees. In consideration for the bonds, Safeco and all four Defendants entered into a General Agreement of Indemnity for Contractors (Indemnity Agreement). Mary Kim Lawrence signed the Indemnity Agreement three times: as Secretary of Siciliano, as Secretary of

6

K & R Properties, Inc., and as an individual.  Richard E. Lawrence also signed the Indemnity Agreement three times: as President of Siciliano, as President of K & R Properties, Inc., and as an individual.  See Safeco Insurance Company of America's Memorandum in Support of Its Motion for Summary Judgment (d/e 30) (Plaintiff's Memorandum), Exhibit C, Indemnity Agreement, at 3.

Under the Indemnity Agreement, the Defendants agreed to pay Safeco "upon demand:"

1.  All loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Undersigned to make arrangements for Surety's legal representation), consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this agreement by any of the Undersigned.

    In addition the Undersigned agrees to pay to Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement;

2.  An amount sufficient to discharge any claim made against Surety on any Bond.  This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any bond;

    3.     Any original, additional or renewal premium due for any bond.

Id., Exhibit C, Indemnity Agreement, at 1. Moreover, the Indemnity Agreement specifies that a contractor shall be deemed to be in default if it:

(1)    Is declared to be in default by the Obligee of any Bond;
(2)    Actually breaches or abandons any Contract;
(3)    Fails to pay, to the extent due in whole or in part, claims, bills or other indebtedness incurred in connection with the performance of any Contract;
(4)    Becomes the subject of any agreement or proceeding of liquidation or receivership, or actually becomes insolvent;
(5)    If an individual, dies, is adjudged mentally incompetent, is convicted of a felony or disappears and cannot be immediately found by Surety by use of usual methods;
(6)    Breaches, fails to perform, or comply with, any provision of this agreement.

Id.

In the event claims were filed with Safeco, the Indemnity Agreement provided Safeco the right "to determine in good faith whether any claim or suit upon any Bond shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed." Id. The Indemnity Agreement also provides that in the event of default, Safeco had the right, "at its sole discretion, to . . . [t]ake possession of the work under any and all Contracts and to arrange for its completion by others or by the Obligee of any Bond." Id. Finally the Indemnity Agreement provides that

8

"[a]n itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned." <u>Id</u>.

At the same time that Siciliano was engaged in the 13 construction projects for which Safeco issued surety bonds, Siciliano also was working on another major construction project -- the Lincoln Museum and Lincoln Library in Springfield, Illinois.  At some point during this construction project, the State of Illinois Capitol Development Board declared Siciliano in default on its contract.  It then informed Siciliano's bank, Carrollton Bank, that it would make no further payments to Siciliano, and on September 14, 2005, Carrollton Bank closed Siciliano's account.  Siciliano had no remaining funds to continue its construction projects.

On September 15, 2005, Siciliano asked Safeco for financial assistance.  On September 19, 2005, officers of both companies met to discuss Siciliano's request for assistance.  Safeco stated that it would provide assistance only if the money Siciliano obtained in the future on its bonded projects could not be accessed by Carrollton Bank.  To prevent the bank from obtaining this money, Safeco proposed that the parties set up a joint

trust account.

On this same day, the parties also discussed insurance problems Siciliano was experiencing.  At this time, Siciliano lacked sufficient funds to pay its insurance premiums or its project vendors on any of its jobs. Siciliano asked Safeco to fund its insurance premiums so that it could maintain coverage.  On September 29, 2005, Safeco paid a large portion of Siciliano's outstanding insurance premiums.

On October 14, 2005, the parties entered into two additional contracts.  Under one of the contracts, the Joint Control Trust Account Agreement, the parties agreed to establish the joint trust account they had discussed on September 19, 2005.  Under the other contract, the Assignment of Contract Agreement, the parties agreed that Safeco could access and use contract balances on the bonded projects.  Safeco demanded these two contracts and a series of identical pre-signed default letters from Siciliano before it would fund Siciliano's current payroll obligations.

In the pre-signed default letters, Mr. Lawrence informed each owner of the 13 bonded projects that Siciliano was unable to complete its work or comply with its contractual obligations on the project.  <u>See</u> <u>Plaintiff's Memorandum</u>, Exhibit D, <u>Hyslop Affidavit</u>, Exhibit 2, <u>Default Letters</u>.  In

these letters, Mr. Lawrence also stated that Siciliano voluntarily waived the owners' rights to declare Siciliano in default and Siciliano's rights to cure such defaults, and he informed the owners that Siciliano abandoned and terminated its right to complete their projects.  Id.  Under the Joint Trust Account Agreement, Safeco had authority to issue these letters only if: (1) Siciliano consented; (2) Siciliano or the other Defendants sought bankruptcy protection; (3) Siciliano failed to progress with the completion of six specific bonded projects; (4) Safeco ceased to provide its own funds to finance completion of the bonded projects; or (5) Siciliano entered into a material breach of any of the contracts, even if such breach were caused by Safeco withdrawing financial support.  Defendants' Opposition, Exhibit 3, Lawrence Affidavit, Exhibit C, Joint Trust Account Agreement, ¶ I.5.

On October 25, 2005, Siciliano asked Safeco again to pay its insurance premiums.  Safeco never responded, but Siciliano's insurer canceled its policies for non-payment.  The parties agree that once Siciliano lost insurance coverage, Safeco stopped advancing Siciliano funds to cover Siciliano's payroll on the 13 bonded jobs, as Safeco had done previously. Siciliano was then unable to pay its workers, except during two payroll periods, which Siciliano covered after the Lawrences liquidated Siciliano's

emergency reserve investments and sold personal assets.

After Siciliano began experiencing financial difficulty, Safeco received claims against the bonds on at least some of Siciliano's 13 bonded projects. Neither of the parties specifies which of the 13 projects produced claims.

Safeco contends that Siciliano defaulted on three specific bonded projects.  In support, it offers the pre-signed letters on the Sysco, Camp Lincoln, and Butler School projects.  The parties do not specify when Safeco mailed these three letters, but they agree that it did issue them.  Defendants assert that the letters did not trigger defaults.  Defendants' Opposition, Exhibit 1, Defendants' Responses to Plaintiff's Fact Statements and Defendants' Statement of Disputed Facts, ¶ 20(b).  Safeco was authorized to issue the letters only if one of 5 incidents had occurred, and Defendants deny that any of the first three conditions did; they fail to indicate whether the fourth or fifth condition did occur, however.  Id.

After issuing the default letters in the Sysco, Butler School, and Camp Lincoln projects, Safeco arranged for other contractors to complete these projects.  To process the bond claims and enforce the Indemnity Agreement, Safeco also hired a construction consulting company and two law firms. Additionally, under the surety payment bonds, Safeco paid some of

Siciliano's subcontractors and suppliers.  Safeco asserts that including consulting and attorneys' fees it had to pay, and accounting for money it received on the construction jobs, it had a total loss of $1,523,317.56 on all of the 13 jobs as of July 10, 2008.  In support of this figure, Safeco produced a listing of its expenditures and receipts on the bonded projects, which is verified by Safeco Assistant Vice President Nicholas Hyslop.  Defendants dispute this figure.  They assert that Safeco has incurred no losses because after Safeco took over the projects, the owners paid it the construction fees, which exceeded the money it had to pay to complete the projects.  The parties disagree over how much money Safeco received on these jobs.  Additionally, Safeco fails to indicate which portion of its claimed $1,523,317.56 loss relates to legal and consulting fees or to specify what legal and consulting work those fees funded.  Defendants argue that they cannot assess the accuracy of these fee amounts without such information.

The parties agree, however, that Safeco has made demands with Defendants for reimbursement under the Indemnity Agreement.  Defendants deny that they have refused to reimburse Safeco, but they support their position only with evidence suggesting that for various reasons, they believed Safeco was not entitled to reimbursement.

<u>Defendants' Opposition</u>, Exhibit 1, <u>Defendants' Responses to Plaintiff's</u>
<u>Fact Statements and Defendants' Statement of Disputed Facts</u>, ¶ 26 (citing
Exhibit 3, <u>Lawrence Affidavit</u>, ¶¶ 23, 36, and Exhibit 5, <u>Moore Affidavit</u>, ¶¶
4-36). Thus, the Court finds that Defendants have not responded to
Safeco's demands for reimbursement with any form of payment.

On July 31, 2006, Safeco filed the pending suit. Its Complaint raises
claims of breach of contract and exoneration and *quia timet*. It also asks the
Court to order specific performance of the Indemnity Agreement and to
issue a declaratory judgment. Safeco has requested summary judgment on
the breach of contract claim.

ANALYSIS

The Motion to Strike and the Motion for Summary Judgment here are
interrelated. Because resolution of the Motion to Strike will affect analysis
of the Motion for Summary Judgment, the Court addresses the Motion to
Strike first. Analysis of the Motion for Summary Judgment follows.

I.      <u>MOTION TO STRIKE</u>

In support of its Motion for Summary Judgment, Safeco submitted the
Affidavit of Nicholas Hyslop.  <u>See</u> <u>Plaintiff's Memorandum</u>, Exhibit D,
<u>Hyslop Affidavit</u>. Safeco relies on this Affidavit as its evidence on numerous

14

proposed issues of undisputed fact.  Defendants contend that the Affidavit

fails to comply with Federal Rule of Civil Procedure 56(e) and therefore

should be stricken.  The Court finds the Affidavit sufficient, however, and

it has considered this evidence in finding the facts above.

Defendants first argue that the Hyslop Affidavit fails to affirmatively

demonstrate that Hyslop has personal knowledge of the matters set forth.

Under Rule 56(e), affidavits submitted at summary judgment "must be

made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant is competent to testify on the matters

stated."  In Hyslop's Affidavit, he avers that he has been a Safeco Assistant

Vice President for four years, before which he worked at Safeco in other

roles for 7 years.  He states:

> In my capacity as Assistant Vice-President, I am aware of the
> business dealings between Siciliano, Inc. ("Siciliano"), and
> Safeco in connection with Siciliano's performance of
> construction services on a variety of construction projects.
> Further, I have served in a representative capacity for Safeco
> with respect to, and during the course of, Siciliano's
> performance on certain bonded construction projects, Siciliano's
> subsequent default on those projects, Safeco's response to
> Siciliano's default, and Safeco's attempts to recover from certain
> indemnitors.

Id., Exhibit D, Hyslop Affidavit, ¶ 3.  Additionally, Hyslop attached to his

Affidavit Exhibit 3, the itemized list of Safeco's alleged expenditures and receipts on the Siciliano bonded projects as of July 10, 2008.  See Id., Exhibit D, Hyslop Affidavit, Exhibit 3, List of Losses.  He claims "personal knowledge of the losses and expenses identified in" this statement.  Id., Exhibit D, Hyslop Affidavit, ¶ 14.

According to Defendants, these statements by Hyslop do not affirmatively demonstrate that he has personal knowledge of the matters in his Affidavit.  In support, they cite a decision striking the affidavit of a party's attorney in which the attorney set forth his personal knowledge only by stating that he was "'fully familiar with the facts and circumstances of this case.'" Carnrite v. Granada Hosp. Group, Inc., 175 F.R.D. 439, 438 (W.D.N.Y. 1997).  The affidavit in Carnrite is not analogous to the Hyslop Affidavit.  An attorney is expected to be familiar with the facts and circumstances of a case without having personal knowledge of the events at issue.  A bare averment that counsel is familiar with the facts does not suggest personal knowledge, while an averment that a party's corporate officer has personal knowledge of the circumstances underlying the case does.

Moreover, as Safeco points out, absent evidence to the contrary,

16

courts may presume that a corporate representative has personal knowledge of the corporation's actions.  <u>Catawba Indian Tribe of South Carolina v. State of South Carolina</u>, 978 F.2d 1334, 1342 (4th Cir. 1992); <u>see also Central States Indus. Supply Inc. v. McCullough</u>, 279 F.Supp.2d 1005, 1022 (N.D. Iowa 2003).  Defendants offer Affidavits from Siciliano officers indicating that the only interaction they ever had with Hyslop consisted of a one-line email asking for bank information, yet such evidence does not rebut Hyslop's sworn statement that he possesses personal knowledge of Safeco's dealings with Siciliano.  First, the officers concede a limited interaction with Hyslop, which alone suggests some personal involvement in Siciliano's business dealings.  Second, Defendants' evidence that Hyslop had very little personal interaction with Siciliano's officials says nothing about his involvement behind the scenes at Safeco.  Despite what Defendants contend, affidavits based on personal knowledge gained through review of records satisfy Rule 56(e); meetings and phone conversations are unnecessary.  <u>Londrigan v. FBI</u>, 670 F.2d 1164, 1174 (D.C. Cir. 1981); <u>Washington Cent. R. Co., Inc. v. Nat'l Mediation Bd.</u>, 830 F.Supp. 1343, 1353 (E.D. Wash. 1993).  Defendants have not demonstrated that Hyslop's affirmative claim to personal knowledge is false.

Defendants also argue that Hyslop's Affidavit sets forth bare conclusions without foundation.  Specifically, they contend that Exhibit 3, the Exhibit listing Safeco's alleged expenditures and receipts on the Siciliano bonded projects, lacks a foundation.  Under Federal Rule of Evidence 602, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony."  In the Affidavit, Hyslop states that he has "personal knowledge of the losses and expenses identified in" Exhibit 3.  Id., Exhibit D, Hyslop Affidavit, ¶ 14.  Based on his averment, the Court finds that he has personal knowledge of the content of the Exhibit.

The question, then, is whether Exhibit 3 has been authenticated.  Under Federal Rule of Evidence 901, a document is admissible only if the offeror provides "evidence sufficient to support a finding that the matter in question is what its proponent claims."  Hyslop avers that Exhibit 3 "is an itemized statement of Safeco's losses for the Bonded Projects as of July 10, 2008."  Id., Exhibit D, Hyslop Affidavit, ¶ 14.  He also states that it "provides a detailed listing of each check paid by Safeco and each amount recovered by Safeco in connection with the costs and expenses Safeco

incurred to discharge its obligations under the Bonds and in enforcing the terms of the Indemnity Agreement." Id., Exhibit D, Hyslop Affidavit, ¶ 16. Under Rule 901(b)(1), the testimony of a witness that the "matter is what it is claimed to be" suffices for authentication. Thus, Hyslop's averments serve to authenticate the Exhibit. Safeco has laid a foundation for Hyslop's Exhibit 3. Because Hyslop's Affidavit satisfies Rule 56(e), Defendants' Motion to Strike is denied.

II.    MOTION FOR SUMMARY JUDGMENT

In its Motion for Summary Judgment, Safeco argues that no genuine issue of fact exists on its breach of contract claim, and it is entitled to judgment as a matter of law. The Court finds that Safeco has established a prima facie case of liability on breaches related to the Sysco and Butler School projects. Defendants have raised numerous affirmative defenses, however, and the Court also finds that a genuine issue of fact remains on its sixth affirmative defense, which alleges bad faith regarding the issuance of the pre-signed default letters. For these reasons, the Motion for Summary Judgment is denied.

A.    PRIMA FACIE BREACH OF CONTRACT

Under Illinois law, indemnity agreements are governed by contract

law.  See Gay v. S.N. Nielsen Co., 152 N.E.2d 468, 471 (Ill.App. 2d Dist. 1958).  Contract construction is an issue for the Court, and one that may be decided at summary judgment.  Central Illinois Light Co. v. Home Ins. Co., 821 N.E.2d 206, 213 (Ill. 2004); ECHO, Inc. v. Whitson Co., Inc., 52 F.3d 702, 705 (7th Cir. 1995).  "If a contract is unambiguous, there is no issue of material fact and the court must determine the contract's meaning as a matter of law."  ECHO, 52 F.3d at 705.  To prove a breach of contract, the plaintiff must establish that: (1) a valid and enforceable contract existed; (2) the plaintiff performed all required conditions; (3) the defendant breached a provision; and (4) as a result, the plaintiff suffered damages. Burrell v. City of Mattoon, 378 F.3d 642, 651 (7th Cir. 2004).  Safeco has established each of the elements required to prove a prima facie case of breach of contract related to the Sysco and Butler School projects.

### 1.   VALIDITY OF THE CONTRACT

The parties do not dispute the validity or enforceability of the Indemnity Agreement.  Thus, Safeco has established the first element of its claim.

### 2.   SAFECO'S PERFORMANCE

Neither party directly addresses whether Safeco performed all required

conditions under the Indemnity Agreement, but the Court finds no genuine issue of fact on this element either.  The undisputed facts contain numerous instances of Safeco's compliance with various provisions of the Indemnity Agreement, such as the fact that at various times it paid Siciliano's vendors and subcontractors before taking over the projects, and that after, it ensured completion of the projects with other contractors.  Defendants claim that Safeco acted in bad faith in several instances, but they have not claimed that Safeco failed to perform any required conditions of the Indemnity Agreement.  Therefore, the Court finds that Safeco has established this element.

### 3. DEFENDANTS' BREACH OF A PROVISION

Whether Defendants breached a provision of the contract is a more complicated issue, but again, the Court finds that Safeco has met its burden. Under the Indemnity Agreement, Defendants agreed to pay Safeco:

> All loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees . . . , consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this agreement by any of the Undersigned.

Plaintiff's Memorandum, Exhibit C, Indemnity Agreement, at 1.  Thus,

21

under the contract, if Siciliano entered into default, it owed Safeco all of

Safeco's costs and expenses, including reasonable attorney and consulting

fees, resulting from that default. A failure to make such payments would

constitute the breach of a contract provision. Thus, in determining whether

Defendants did in fact breach a contract provision, the Court must decide

whether Siciliano defaulted on a bonded project and if so, whether it failed

to pay Safeco its resulting costs.

a.   <u>DEFAULT</u>

First, the Court considers the issue of default. The Indemnity

Agreement sets forth a number of methods by which a contractor will be

deemed to be in default. Two of these clearly apply, so the Court will

confine its analysis to these two methods:

> Default: Contractor shall be deemed to be in default under this
> agreement in the event it:
> . . . .
> (2) Actually Breaches or abandons any Contract;
> (3) Fails to pay, to the extent due in whole or in part, claims,
> bills or other indebtedness incurred in connection with the
> performance of any Contract.

<u>Plaintiff's Memorandum</u>, Exhibit C, <u>Indemnity Agreement</u>, at 1.

Under the second method, the Court finds that Siciliano's pre-signed

letters to the owners of the Sysco, Camp Lincoln, and Butler school projects

22

effected defaults on those three projects.  In the letters, Mr. Lawrence clearly stated that Siciliano was abandoning the projects, which falls squarely within the "abandons any Contract" language of the Indemnity Agreement.  Id.  The only issue on this matter is whether Safeco was authorized to issue the letters on Siciliano's behalf.

Defendants argue that Safeco was not authorized to issue the letters, but they rely on Mr. Lawrence's Affidavit, which states that the letters were authorized only in the event that one of five events occurred.  Mr. Lawrence averred that three of the events never did, but he failed to indicate whether the fourth or fifth did.  Other evidence establishes that at least one of these other events did occur.  According to the Lawrence Affidavit, Safeco was authorized to send out the default letters if it ceased to provide its own funds to finance completion of the bonded projects.  It is undisputed that Safeco did withdraw its financial support after Siciliano lost insurance coverage.  Thus, Safeco had authority to send the letters.  Once it did, Siciliano was in default on the Sysco, Camp Lincoln, and Butler school projects.

Under the third method, the Court finds that Siciliano's failure to pay its workers on the bonded projects after Safeco stopped advancing it funds

also effected defaults.    Workers' wages clearly constituted bills or indebtedness incurred in connection with the performance of the construction contracts.  By failing to pay those wages, Siciliano became in default.  While it is undisputed that Siciliano failed to pay its workers on bonded projects, neither party has presented evidence on whether workers went unpaid on all 13 of the projects, or only on some of them.  Thus, while the Court finds that a default occurred under the third method, from the evidence at summary judgment, it is impossible to determine which projects were defaulted in this manner.  For summary judgment purposes, then, Safeco has established only that Siciliano defaulted on the Sysco, Camp Lincoln, and Butler school projects.

b.    <u>REFUSAL TO COVER COSTS</u>

After finding that Siciliano was in default on these three projects, the next issue for the Court is whether Defendants refused to cover Safeco's costs resulting from these defaults.  It is undisputed that Safeco has made demands for indemnification, and it is undisputed that Defendants have made no payments to Safeco.  Defendants contend that they refused to indemnify Safeco as Safeco demanded because the funds Safeco recovered on the bonded construction jobs after taking them over more than covered

24

Safeco's losses.  Yet, the Indemnity Agreement provides that in the event of a default, an "itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned."   Plaintiff's Memorandum, Exhibit C, Indemnity Agreement, at 1.  In this suit, at least, Safeco has presented such an itemized statement of loss and expense -- Exhibit 3 to the Hyslop Affidavit.  While the losses and expenses listed in this Exhibit apparently are not limited to the Sysco, Camp Lincoln, and Butler school projects, losses and expenses related to these three jobs are included.  Thus, Safeco provided Defendants with prima facie evidence of their "loss, costs and expenses" on these three jobs.  Id.

Illinois courts have upheld prima facie evidence provisions of indemnity agreements.  See, e.g., Amwest Surety Ins. Co. v. Szabo, 2003 WL 21789033, at *4-5 (N.D. Ill. July 23, 2003); U.S. Fidelity and Guar. Co. v. Klein Corp., 190 Ill.App.3d 250, 258 (Ill. App. 1st Dist. 1989).  A party may rebut such a prima facie evidence provision with "counteraffidavits, or other evidence" establishing the inaccuracy of the prima facie evidence.  U.S. Fidelity and Guar. Co., 190 Ill.App. 3d at 258.

Here, Defendants have challenged the accuracy of Exhibit 3 to the Hyslop Affidavit, but they failed to produce evidence in support of their arguments.

In response to Safeco's proposed undisputed fact establishing a total loss on the bonded projects of $1,523,317.56, Defendants state that they "do not possess sufficient unprivileged knowledge to form a belief of the truth of the statement." <u>Defendants' Opposition</u>, Exhibit 1, <u>Defendants' Responses to Plaintiff's Fact Statements and Defendants' Statement of Disputed Facts</u>, ¶ 24.  That is not an acceptable position at summary judgment.  Defendants assert that "[d]espite being requested to provide Siciliano with documentation of its expenditures, Safeco has refused to provide that information to Siciliano except under the 'umbrella' of 'Settlement Discussions.'" <u>Id.</u>  They fail to reference any formal document requests for supporting evidence or interrogatories or depositions regarding the basis of Safeco's prima facie evidence, however.  The discovery process allows parties to pursue the evidence they need to prove their positions; if Defendants failed to do so, they must suffer the consequences at summary judgment.

Defendants also argue that on the Butler School and Sysco projects, Safeco realized a net excess of cash, but in support of their argument, they

provide only the Lawrence Affidavit.  In his Affidavit, Mr. Lawrence states that on these two projects, "Safeco also realized a net excess of cash, meaning no loss for which indemnification would be required." Defendants' Opposition, Exhibit 3, Lawrence Affidavit, ¶ 29.  This is a conclusion for which Mr. Lawrence offers no explanation.  From the "also" in his statement, the Court assumes that he reached this conclusion after following the same method of analysis he describes in the previous paragraph, regarding other bonded jobs.

Regarding those jobs, Mr. Lawrence based his assessment of loss on "the data contained in Exhibit 3 to Hyslop's Affidavit" and "Siciliano's financial records for these projects." Defendants' Opposition, Exhibit 3, Lawrence Affidavit, ¶ 28.  He avers that based on these two sources of information, it is obvious that the "total project contract funds collected exceed the total subcontractor, supplier and union benefit payables for which Safeco disbursed funds for Siciliano's benefit." Id.  But, "subcontractor, supplier and union benefit payables" are not the only funds Safeco alleges it disbursed on these projects.  Safeco also claims legal and consulting fees, and the Indemnity Agreement allows it to collect such expenses from Defendants.  See Plaintiff's Memorandum, Exhibit C,

Indemnity Agreement, at 1.

Regarding legal and consulting fees, Defendants again claim that they cannot say whether Safeco's prima facie evidence is an accurate accounting of these fees, because Safeco has not provided them supporting documentation or a detailed breakdown of the work its lawyers and consultants did to earn such fees.  Yet, as above, Defendants fail to reference any formal discovery requests for this evidence.  If they neglected to pursue it in discovery, they must do without at summary judgment. Defendants have not successfully rebutted Safeco's prima facie evidence of loss on the Butler School and Sysco projects.  On these two defaulted projects, Safeco has established that Defendants refused to cover its losses.

Regarding the third project on which Safeco has proved default -- the Camp Lincoln project -- Defendants have more successfully rebutted Safeco's prima facie evidence.  It is undisputed that Safeco has not yet collected all the receipts it is owed on the Camp Lincoln project.  Thus, any statement of loss on that project now is only speculation.  Because Safeco's prima facie evidence on this project is incomplete, it has not established that it actually suffered a loss.  Thus, Safeco has not proven that Defendants refused to cover its costs resulting from the Camp Lincoln default.

While Safeco has not proven that Defendants refused to cover its costs on the Camp Lincoln default, its proof on the Sysco and Butler School projects suffices for this element.  Safeco has established that Siciliano defaulted on the Sysco and Butler School projects and that Defendants then refused to cover its losses on those projects.  Safeco has proven that Defendants breached a provision of the Indemnity Agreement.

### 4.  SAFECO'S DAMAGES

The final element in a breach of contract claim is proof that the plaintiff suffered damages because of the defendants' breach.  In this case, proof of damages overlaps with proof of a breach.  Based on the undisputed facts, the Court concluded that Defendants refused to cover Safeco's costs resulting from the Sysco and Butler School defaults.  These same facts establish that Safeco suffered damages because of Defendants' breach. Thus, Safeco has proven a prima facie case of breach of contract.

Before addressing Defendants' affirmative defenses, however, it is worth noting that while Safeco has made a prima facie case for liability, it has not proven a particular figure in damages.  Exhibit 3 to the Hyslop Affidavit suffices to establish that Safeco suffered damages on the Sysco and Butler School defaults, but it does not break down exactly what percentage

of Safeco's costs and expenses relate to those particular jobs.  While Exhibit 3 contains sections designated "Payments" and "Receipts" for both projects, it concludes with several pages of additional payments, including legal and consulting fees, that are not attributed to any particular project.  <u>Plaintiff's Memorandum</u>, Exhibit D, <u>Hyslop Affidavit</u>, Exhibit 3, <u>List of Losses</u>, at 15, 18, 22-32.  Thus, even on these two projects, an issue of fact remains on the amount of damages for which Defendants may be liable.

## B.   AFFIRMATIVE DEFENSES

Defendants have asserted 11 affirmative defenses.  Because they bear the burden of proof on these issues, to defeat Safeco's prima facie case of liability, they must establish each element as a matter of law or demonstrate that an issue of material fact remains.  See <u>ITOFCA, Inc. v. MegaTrans Logistics, Inc.</u>, 322 F.3d 928, 933 (7th Cir. 2003); <u>Howard v. Lear Corp. EEDS and Interiors</u>, 234 F.3d 1002, 1004-05 (7th Cir. 2000).  While they have not done so on 10 of the defenses, on the sixth affirmative defense, the Court finds that a genuine issue of material fact exists.

### 1.   IMPOSSIBILITY OF PAYMENT

In Defendants' first affirmative defense, they argue that from the time Safeco demanded indemnification through the present date, Safeco has

known that Defendants have no ability to pay it.  In support, they cite Illinois-American Water Co. v. City of Peoria, 774 N.E.2d 383, 391 (Ill.App. 3d Dist. 2002).  In this case, the court held that the doctrine of impossibility will render a contract unenforceable "if there is an unanticipated circumstance that has made the performance of the promise vitally different from what should reasonably have been within the contemplation of the parties when the contract was entered."  Id.  The doctrine applies only if "the circumstances creating the impossibility were not and could not have been anticipated by the parties," if "the party asserting the doctrine did not contribute to the circumstances," and if the party asserting the doctrine has "demonstrate[d] that it has tried all practical alternatives available to permit performance."  Id.

Defendants have not met their burden on this defense.  They have offered no evidence that the difficulties they experienced on the Lincoln Museum and Lincoln Library project and their resulting financial crisis were unforeseeable by the parties when the contract was signed.  Moreover, even if those circumstances were unforeseeable, Defendants have not shown that they did not contribute to them or that they tried everything practical to come up with the money to pay Safeco.

2.    <u>MITIGATION OF DAMAGES</u>

In their second affirmative defense, Defendants argue that Safeco incurred unreasonable expenses, including attorneys fees, in performing its bond obligations.  Thus, they assert, Safeco failed to mitigate its damages. As noted above, however, Defendants have failed to offer any evidence that the legal fees Safeco incurred were unreasonable.  They claim to lack the information they need to assess Safeco's legal fees, but again, they have not shown that they formally requested such evidence during discovery.

In their fourth affirmative defense, Defendants argue that Plaintiff failed to mitigate its damages on the Camp Lincoln, Sysco, and Butler School projects by refusing to allow Siciliano to complete these projects. Yet, the Indemnity Agreement specifically allowed Safeco to "[t]ake possession of the work under any and all Contracts and to arrange for its completion by others or by the Obligee of any Bond."  <u>Plaintiff's Memorandum</u>, Exhibit C, <u>Indemnity Agreement</u>, at 1.  In surety cases, courts have concluded that where the surety took particular actions permitted under the agreement, a defendant's claim of failure to mitigate damages based on those actions is not a defense.  <u>See, e.g.</u>, <u>Continental Cas. Co. v. Guterman</u>, 708 F.Supp. 953, 954 (N.D. Ill. 1989) (holding that

where the indemnification agreement called for full indemnification regardless of whether the surety sold the collateral, the surety's failure to sell the collateral cannot support a failure to mitigate affirmative defense); <u>Am. Fidelity Fire Ins. Co. v. Gen. Ry. Signal Co.</u>, 540 N.E.2d 557, 566-67 (Ill.App. 1st Dist. 1989) (discussing cases in which courts have held that after a breach of contract, the breaching party may not demand that the non-breaching party take action contrary to the terms of the contract to mitigate damages).   Thus, regardless of whether Siciliano could have performed these jobs at lower costs than those Safeco actually incurred, the Indemnity Agreement allowed Safeco to retain other contractors.  The fact that they exercised this right under the contract cannot form the basis for a mitigation of damages defense.

### 3.   WRONGFUL INDUCEMENT

In their seventh affirmative defense, Defendants argue that Safeco wrongfully induced Siciliano to pre-sign the default letters in return for financial assistance when Safeco had no intention of living up to its promise of assistance.  Essentially, Defendants' argument appears to be that Safeco wrongfully induced Siciliano to give Safeco the power to declare it in default.  Defendants offer no legal authority establishing this theory as a

valid affirmative defense to a breach of contract claim.  Based on the Court's own research, only the defense of economic duress approximates Defendants' argument.  See Resolution Trust Corp. v. Ruggiero, 977 F.2d 309, 313 (7th Cir. 1992).

In Illinois, economic duress exists "'where one is induced by a wrongful act of another to make a contract under circumstances which deprive him of the exercise of free will, and a contract executed under duress is voidable.'"  Id.  But, "the mere fact that one is in a difficult bargaining position due to desperate financial circumstances does not support a defense of economic duress."  Id. at 314.  A defendant cannot charge a plaintiff with duress where the pressures on the defendant "are the result of his own business decisions and economic conditions."  Id.  Defendants have offered no evidence that Safeco had anything to do with its financial difficulties before it signed the default letters; the fact that Safeco may have taken advantage of its financial circumstances does not constitute economic duress.  Thus, Defendants have not established this affirmative defense.

### 4.   IDOT CLINTON FACILITY PROJECT COSTS

In their eighth affirmative defense, Defendants argue that Safeco is improperly seeking indemnification for costs related to the Illinois

Department of Transportation Clinton Maintenance Facility roof replacement job despite the fact that the project owner rescinded its award of the contract and released Safeco from its bond. Because the Court has not found a prima facie case of liability on this project, Defendants' eighth affirmative defense is irrelevant at this stage.

### 5.   SYSCO PROJECT INDEMNIFICATION

In their ninth affirmative defense, Defendants assert that Safeco "had sufficient contract funds available to it on the SYSCO project to fully indemnify and collateralize [Safeco] against its claimed losses on said project for which it seeks indemnification and collateralization from Defendants." Defendants' Answer and Affirmative Defenses (d/e 16), at page 10, ¶ 9. In support of their defense, Defendants offer only the evidence discussed above regarding whether Defendants refused to cover Safeco's costs resulting from these defaults. Because Defendants have not successfully rebutted Safeco's prima facie evidence of loss on the Sysco project, they also have not established this affirmative defense

### 6.   SAFECO'S RECEIPTS ON VARIOUS PROJECTS

In their eleventh affirmative defense, Defendants claim that Safeco will recover additional funds on the City of Springfield, Metro Sanitary

District, Village of Heyworth, Village of Forsyth, Willard Ice, City of Beardstown, and IDOT District #5 jobs, which will cover its losses on those jobs. Again, because the Court has not found a prima facie case of liability on these projects, this affirmative defense is irrelevant at this stage.

       7.   <u>BAD FAITH</u>

Defendants' third, fifth, sixth, and tenth affirmative defenses all raise allegations of bad faith. The Court finds that an issue of fact exists on the sixth affirmative defense.

Under Illinois law, surety contracts are considered contracts of insurance. <u>Windowmaster Corp. v. Morse/Diesel, Inc.</u>, 722 F.Supp. 1532, 1534 (N.D. Ill. 1988); <u>Fisher v. Fidelity & Deposit Co. of Md.</u>, 466 N.E.2d 332, 339 (Ill.App. 5th Dist. 1984). Under an insurance contract, an insurer owes the insured a duty of fair treatment once the insurer's conduct creates a risk that the insured will bear some of the loss under the contract. <u>Windowmaster Corp.</u>, 722 F.Supp. at 1534 (citing <u>Cernocky v. Indemnity Ins. Co. of N. Am.</u>, 216 N.E.2d 198, 204 (Ill.App. 2d Dist. 1966)). In surety contracts, the insured bears almost all the risk of loss incurred by the insurer, so in determining whether the insured has defaulted, the insurer must act in good faith. <u>Id.</u> In exercising its discretion under the contract,

the insurer "must give the interests of the insured equal consideration with its own interests and it must in all respects deal fairly with the insured." Id.

To prove that Safeco failed to do so, Defendants must show that Safeco exercised its discretion unreasonably, arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties at the time of contracting.  Continental Mobile Telephone Co., Inc. v. Chicago SMSA Ltd, 587 N.E.2d 1169, 1174 (Ill.App. 1st Dist. 1992); see also Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting, 908 F.2d 1351, 1357 (7th Cir. 1990) ("'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties.").  Under Illinois law, the question of whether the insurer has acted in good faith is a question of fact. Windowmaster Corp., 722 F.Supp. at 1535; Progressive Ins. Co. v. Universal Cas. Co., 807 N.E.2d 577, 589-90 (Ill.App. 1st Dist. 2004); Powell v. Prudence Mut. Cas. Co., 232 N.E.2d 155, 158 (Ill.App. 1st Dist. 1967).  Thus, if Defendants put forth any evidence to support their argument, they are entitled to proceed to trial.

In their third affirmative defense, Defendants argue that Safeco paid

37

legal bills and other expenses in violation of its own billing guidelines, which demonstrates that Safeco acted in bad faith.  As Defendants have offered no evidence of Safeco's own billing guidelines, they cannot establish this defense.

In their fifth affirmative defense, Defendants allege that Safeco's refusal to defend Siciliano's right to continue work on the Camp Lincoln project after the project owner terminated its contract constituted bad faith. Because Safeco has not established a prima facie case of liability regarding the Camp Lincoln project, this defense is irrelevant at summary judgment.

In their tenth affirmative defense, Defendants allege that Safeco's claimed costs understate the receipts it gained on the bonded jobs and overstate its expenses.  As the Court found on the issue of whether Defendants breached a provision of the Indemnity Agreement by refusing to pay Safeco the funds it requested, however, Defendants have produced no evidence to rebut Safeco's prima facie statement of loss.  Without such evidence, Defendants cannot establish this affirmative defense.

In their sixth affirmative defense, Defendants allege that by sending the pre-signed default letters, Safeco violated its obligation to act in good faith.  They argue that Safeco obtained and then issued the letters only to

38

seize and control all future income on the bonded jobs.  They also claim

that Mr. Lawrence would not have signed the letters if they had known that

Safeco intended to stop providing financial assistance so that it could place

Siciliano in default and then obtain the money Siciliano would have earned

on the projects.

Siciliano has presented circumstantial evidence that when Safeco

issued the pre-signed letters, it acted unreasonably and in a manner

inconsistent with the reasonable expectations of the parties at contracting.

Specifically, Siciliano has presented evidence from which a jury could

conclude that Safeco convinced it to enter into the Joint Trust Account

Agreement and pre-sign the default letters in exchange for financial

assistance, when it always intended to cut off financial assistance and

thereby effect defaults on the bonded projects.  If Safeco did mislead

Siciliano into providing it the means to obtain control of the projects, then

it acted unreasonably.  Certainly, Defendants would not have expected such

deception at the time they agreed on the methods of default set out in the

Indemnity Agreement.  Defendants have presented enough evidence to raise

an issue of fact on their sixth affirmative defense.

While Safeco established a prima facie case of liability arising from the

Sysco and Butler School defaults, Defendants' evidence on their sixth affirmative defense creates a genuine issue of material fact for the jury. Summary judgment is not warranted on this issue, or, for the reasons stated above, any of the other issues in this case.

THEREFORE, Defendants' Motion to Strike the Affidavit of Nicholas Hyslop (d/e 36) and Safeco Insurance Company of America's Motion for Summary Judgment (d/e 28) are DENIED.

IT IS THEREFORE SO ORDERED.

ENTER:   January 29, 2009

FOR THE COURT:

_____ s/  Jeanne E. Scott _____
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE